United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERINATA HEALTH, INC., BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY and ILLUMINA, INC.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>　　　　　Defendant. | Case No. 12-cv-05501-SI<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 250, 251, 261 |

Now before the Court is Illumina's motion to compel arbitration, currently set for oral argument on September 4, 2015. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and **VACATES** the hearing. For the reasons stated below, the Court **DENIES** Illumina's motion.

**BACKGROUND**

This is a patent infringement action. Plaintiffs Illumina, Inc., Verinata Health, Inc. and the Board of Trustees of the Leland Stanford Junior University (collectively "Illumina") accuse Ariosa's Harmony™ Prenatal Test of infringing U.S. Patent No. 8,296,076 ("the '076 patent"), U.S. Patent No. 8,318,430 ("the '430 patent"), and U.S. Patent No. 7,955,794 (the '794 Patent). Defendant Ariosa has filed a counterclaim for breach of contract.

In May 2013, Ariosa filed petitions for *inter partes* review, requesting that the Patent Trial and Appeal Board ("PTAB") review claims 1-30 of the '430 patent and claims 1-13 of the '076 patent. On October 25, 2013, the PTAB instituted *inter partes* review of claims 1-30 of the '430 Patent on obviousness grounds. On November 20, 2013, PTAB instituted *inter partes* review of

claims 1-13 of the '076 Patent on anticipation and obviousness grounds. On October 23, 2014, the PTAB issued two orders holding that Ariosa had failed to show that claims 1-30 of the '430 Patent are unpatentable. *See Ariosa Diagnostics, Petitioner*, IPR2013-00276, 2014 WL 5454541(Oct. 23, 2014); *Ariosa Diagnostics, Petitioner*, IPR2013-00277, 2014 WL 5454542 (Oct. 23, 2014). On November 19, 2014, the PTAB issued an order finding that the challenged claims of the '076 Patent are unpatentable. *See Ariosa Diagnostics, Petitioner*, IPR2013-00308, 2014 WL 6617697 (Nov. 19, 2014). These PTAB rulings have all been appealed to the Federal Circuit. On January 8, 2015, PTAB instituted *inter partes* review of claims 1-22 of the '794 Patent. *See Ariosa Diagnostics, Inc., Petitioner*, IPR2014-01093, 2015 WL 153677 (Jan. 8, 2015).

In June, 2014, Illumina filed a motion to dismiss Ariosa's counterclaim, based on an arbitration clause in the underlying contract between the parties. On August 7, 2014, this Court denied the motion to dismiss, holding that Ariosa was entitled to pursue its counterclaims for breach of contract and the convenant of good faith and fair dealing in a judicial forum, notwithstanding the arbitration clause. Case No. 14-cv-1921, Docket No. 40. These counterclaims are of central importance to Ariosa's defense because they relate to its assertion that Illumina granted Ariosa an express or implied license to practice the '794 Patent. *Id.* at 5. On September 8, 2014, Illumina appealed this Court's denial of its motion to dismiss to the Federal Circuit. C. 14-cv-1921, Docket No. 56.

On February 2, 2015, this Court granted Ariosa's third motion to stay pending the final exhaustion of the *inter partes* review proceedings to which the '794 Patent is subject, the Federal Circuit appeals from *inter partes* review to which the '430 and '076 Patents are subject, and the appeal from the Court's order finding that it has subject matter jurisdiction to hear Ariosa's breach counterclaims. Docket No. 229.[1]

On June 23, 2015, the Federal Circuit issued a two-sentence opinion, finding that it did not have jurisdiction to hear Illumina's appeal of this Court's order denying its motion to dismiss the counterclaim. Illumina had appealed this Court's order under 9 U.S.C. § 16(a)(1), which permits

---

[1] Unless otherwise noted, all Docket Nos. refer to Case No. 12-cv-5501.

direct interlocutory appeal of a court's order denying a motion to compel arbitration. While the substance of Illumina's motion had asked the court to compel arbitration, it was styled as a motion to dismiss Ariosa's counterclaims. The Federal Circuit found this formality divested it of jurisdiction to hear the appeal, ruling that "[i]n order to resolve uncertainty affecting our jurisdiction, we remand the case to the district court to afford [Illumina] the opportunity to move to compel arbitration. The district court may take such action as is appropriate." Docket No. 249, Exh. 3.

On July 30, 2015, this Court granted the parties' motions for a limited lift of stay for the purpose of ruling on a renewed motion to compel arbitration. Docket No. 257. Now before the Court, is Illumina's motion to compel arbitration. Docket No. 250.

The legal arguments advanced by Illumina in its current motion to compel are substantially identical to those raised in its motion to dismiss Ariosa's counterclaims in favor of arbitration. Illumina acknowledges that its arguments are "similar, albeit evolved" in light of "natural focusing and issue development that took place as part of the appeal process." Mot. at 3. However, Illumina primarily uses the "issue development" to argue the merits of Ariosa's counterclaims, rather than the scope of the arbitration clause that is at issue. *See e.g.* Mot. at 7, nt. 3.

In short, there has been no change in the law, nor any newly emerged material facts since the Court issued its prior order denying Illumina's motion to dismiss Ariosa's counterclaims. Indeed, Illumina's motion does not cite a single case published since the Court's prior order. Given that the material facts and legal framework are unchanged, the Court sees no reason to revise its prior conclusion.

## LEGAL STANDARD

Arbitration is a matter of contract, and there is a liberal federal policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). In determining whether the parties agreed to arbitrate the present dispute, the Court must determine "(1) whether a valid

3

agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"The Supreme Court has emphasized that the 'first principle' of its arbitration decisions is that '[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741-42 (9th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010)). When determining whether parties have agreed to submit a particular dispute to arbitration, the court should apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Id.* at 742; *see also AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) ("'[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'").

> This policy, however, "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" Accordingly, the Supreme Court "[has] never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' Nor [has the Court] held that courts may use policy considerations as a substitute for party agreement."

*Id.* (emphasis in original) (quoting *Granite Rock*, 130 S. Ct. at 2859).

**DISCUSSION**

**I.    Motion to Compel Arbitration**

Here, the parties do not dispute the existence of a valid agreement to arbitrate. Rather, the parties dispute whether the agreement encompasses Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. Illumina argues that Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing must be arbitrated because the counterclaims are subject to an arbitration provision, and Ariosa

4

failed to pursue arbitration before filing suit. In response, Ariosa argues that its counterclaims are not subject to the arbitration clause under the terms of the parties' agreement.

Section 31(c) of the relevant agreement contains the arbitration provision at issue and provides in pertinent part:

> Subject to the terms and conditions of this Section 31(c), any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement, shall be determined by arbitration in San Diego California[.] . . . This Section 31(c) shall not apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights.[2]

C. 14-cv-1921 Docket No. 31-2, Walter Decl. Ex. 1 at 17 § 31(c). Ariosa argues that its breach counterclaims do not fall within the scope of this arbitration provision because its breach counterclaims relate to issues of infringement of a patent. The Court agrees.

In the second amended answer and counterclaims, Ariosa alleges that it entered into a sales and supply agreement with Illumina on January 4, 2012 ("the Agreement"). C. 14-cv-1921 Docket No. 68. Ariosa alleges that based on Illumina's representations in the Agreement, Illumina granted Ariosa an express or implied license to the '794 patent. *Id.* ¶ 28. Ariosa further alleges that the Agreement obligates Illumina to refrain from asserting the '794 patent against Ariosa in connection with the accused product, and that Illumina has breached the Agreement by bringing the present lawsuit for infringement of the '794 patent. *Id.* ¶¶ 66-68. Therefore, Ariosa's breach counterclaims are centered on its contention that it has been granted an express or implied license to the patent-in-suit. Indeed, Illumina agrees with this characterization of the counterclaims. In its reply brief to its prior motion to dismiss, Illumina stated: "In a nutshell, Ariosa's breach counterclaims boil down to the contention that Section 4(a) of the supply agreement grants Ariosa a license (either express or implied) to every single patent Illumina owns. Ariosa thus contends that Illumina breached the supply agreement by merely by suing Ariosa for patent infringement."

---

[2] "Intellectual Property Rights" is defined in the Agreement as "all rights in patent, copyrights, trade secrets, know-how, trademark, service mark and trade dress rights and other intellectual property rights, current or future, under the laws of any jurisdiction, together with all application therefor and registrations thereto." C. 14-cv-1921 Docket No. 31-2, Walter Decl. Ex. 1 at 4 § 1.

C. 14-cv-1921 Docket No. 38-4. Its present motion to compel arbitration echoes that same understanding. Mot. at 10.

Because Ariosa's breach counterclaims are centered on its contention that it has been granted an express or implied license to the '794 patent, the counterclaims clearly relate to[3] issues of patent infringement. Under 35 U.S.C. § 271, a defendant can only be liable for infringement if the allegedly infringing acts are carried out "without authority." 35 U.S.C. §§ 271(a), (f), (g). Therefore, whether an accused infringer has been granted an express or implied license is an issue that is directly relates to whether a patent has been infringed. *See Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003) ("[A]ll or part of a patentee's right to exclude others from making, using, or selling a patented invention may be waived by granting a license, which may be express or implied."); *McCoy v. Mitsuboshi Cutlery*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("[A] patent or trademark owner may contract to confer a license on another party. . . A licensee, of course, has an affirmative defense to a claim of patent infringement.").

Illumina argues that Ariosa's counterclaims can be resolved solely by looking at the terms of the supply agreement. However, that the dispute can be resolved through an examination of an agreement rather than an examination of the accused product does not change the fact that the dispute is related to the determination of whether the patent has been infringed. Because Ariosa's breach counterclaims unambiguously relate to issues of patent infringement, the counterclaims are, by the specific provisions of the arbitration clause itself, outside of the scope of the arbitration agreement ("This Section 31(c) shall not apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights."); hence, the presumption of arbitrability has been rebutted. Therefore, the Court declines to compel arbitration of Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. Accordingly, Illumina's motion is **DENIED**.

---

[3] The Supreme Court has noted that the phrase "relate to" has a "'broad common-sense meaning,'" such that "relate to," in the normal sense of the phrase, means to have "'a connection with or reference to.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *accord Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983) (citing Black's Law Dictionary 1158 (5th ed. 1979)).

## II. Motions to Seal

With the exception of a narrow range of documents that are "traditionally kept secret," courts begin their sealing analysis with "a strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "A stipulation, or a blanket protective order that allows a party to designate documents as sealable, will not suffice to allow the filing of documents under seal." Civ. L.R. 79-5(a). When applying to file documents under seal in connection with a dispositive motion, the party seeking to seal must articulate "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal quotations and citations omitted). Where a party seeks to seal documents attached to a non-dispositive motion, a showing of "good cause" under Federal Rule of Civil Procedure 26(c) is sufficient. *Id*. at 1179-80; *see also* Fed. R. Civ. P. 26(c). In addition, all requests to file under seal must be "narrowly tailored," such that only sealable information is sought to be redacted from public access. Civ. L.R. 79-5(b). Because a motion to compel arbitration is not dispositive, the "good cause standard applies."

The parties seek to seal portions of Illumina's motion to compel arbitration, Ariosa's opposition, and attached exhibits. The Court **DENIES** the parties' motion as it relates to Exhibit 2 to Ariosa's opposition, and Exhibits 6, 9, 10, 11, and 12 to Illumina's motion. Docket Nos. 251, 261. The parties argue that this information is designated as highly confidential pursuant to the terms of the protective order in this case. But good cause "cannot be established simply by showing that the document is subject to a protective order or by stating in general terms that the material is considered to be confidential." *Bain v. AstraZeneca LP*, 2011 U.S. Dist. LEXIS 15965, at *2 (N.D. Cal. Feb. 7, 2011); *see* Civil L.R. 79-5(d)(1)(A).

Additionally, these documents have been sealed in their entirety, and therefore fail to meet

7

the "narrow tailoring" requirement. This deficiency is especially troubling given that the parties have filed dozens of motions to seal in this action and related actions, and have been reminded of their failure to comply with the narrow tailoring requirement on many occasions. *See* Docket No. 109 ("[I]t does not appear that Ariosa's request to seal the exhibit is narrowly tailored. Even assuming that the exhibit contains some sealable confidential information, that would only be good cause to seal certain portions of the exhibit, not the entire document."); *see also* Docket No. 162. These exhibits were not considered for purposes of ruling on this motion and are therefore not part of the record. *See* Civil Local Rule 79-5(f).

The parties' motions to seal are **GRANTED** as to the remaining documents, as the Court has previously found this information to be sealable.

**IT IS SO ORDERED**.

Dated: August 31, 2015

SUSAN ILLSTON
United States District Judge