1  EDWARD R. REINES (Bar No. 135960)
   edward.reines@weil.com
2  DEREK C. WALTER (Bar No. 246322)
   derek.walter@weil.com
3  MICHELE A. GAUGER (Bar No. 281769)
   michele.gauger@weil.com
4  WEIL, GOTSHAL & MANGES LLP
   Silicon Valley Office
5  201 Redwood Shores Parkway
   Redwood Shores, CA  94065
6  Telephone: (650) 802-3000
   Facsimile: (650) 802-3100
7
8  Attorneys for Plaintiff/Counterclaim
   Defendants ILLUMINA, INC. and VERINATA
   HEALTH, INC.
9
                 **UNITED STATES DISTRICT COURT**
10
                **NORTHERN DISTRICT OF CALIFORNIA**
11
                   **SAN FRANCISCO DIVISION**
12

13  VERINATA HEALTH, INC.,

14  and

15  THE BOARD OF TRUSTEES OF THE
    LELAND STANFORD JUNIOR
16  UNIVERSITY

17                       Plaintiffs and
                         Counterclaim-Defendants,
18
          v.
19
    ARIOSA DIAGNOSTICS, INC.,
20
    and
21
    LABORATORY CORPORATION OF
22  AMERICA HOLDINGS,

23                       Defendants and
                         Counterclaim-Plaintiffs.

24  ILLUMINA, INC.,

25                       Plaintiff,

26        v.

27  ARIOSA DIAGNOSTICS, INC.,

28                       Defendant.

Case No. 3:12-cv-05501-SI (consolidated
with Case No. 3:14-cv-01921-SI and Case
No. 3:15-02216-SI)

**ILLUMINA, INC.'S NOTICE OF
MOTION AND SPECIAL ANTI-SLAPP
MOTION TO STRIKE ARIOSA
DIAGNOSTICS, INC.'S SECOND AND
THIRD COUNTERCLAIMS**

**JURY TRIAL DEMANDED**

**PUBLIC REDACTED VERSION**

Judge Hon. Susan Illston

 Hearing Date: October 12, 2017
 Hearing Time: 10:00 am

1   ILLUMINA, INC.,

2                    Plaintiff,

3       v.

ARIOSA DIAGNOSTICS, INC., AND
4   ROCHE MOLECULAR SYSTEMS, INC.,

5                    Defendants.

1

## <u>TABLE OF CONTENTS</u>

2
**PAGE**

3  I.    ARIOSA'S BREACH COUNTERCLAIMS SHOULD BE STRICKEN ...........................1

4  II.   FACTUAL BACKGROUND ....................................................................................2

5  III.  THE LEGAL FRAMEWORK .................................................................................3

6  IV.   ARGUMENT ..........................................................................................................5

7        A.    Ariosa's Counterclaims Should Be Stricken In Their Entirety Under
              California's Anti-SLAPP Statute ................................................................5
8
              1.    Illumina's Filing Of This Lawsuit Is Protected Activity ...........................5
9
              2.    Ariosa's Breach Of Contract Counterclaim Arises From Illumina
10                   Filing This Lawsuit ....................................................................................6

11            3.    Ariosa's Breach Of Good Faith And Fair Dealing Counterclaim
                    Also Arises From Illumina's Filing Of This Lawsuit ...............................7
12
        B.    Ariosa Cannot Establish A Probability Of Prevailing On The Merits For
13            Each Counterclaim ...............................................................................................8

14            1.    Ariosa Cannot Prevail On Its Breach Of Contract Counterclaim ...............9

15            2.    Ariosa Cannot Prevail On Its Breach Of Good Faith And Fair
                    Dealing Counterclaim .................................................................................12
16
        C.    This Motion Is Timely Under Rule 56 ...................................................................14
17
        D.    Illumina Is Entitled To Recover its Attorney's Fees.............................................15
18
   V.   CONCLUSION .............................................................................................................15
19

20

21

22

23

24

25

26

27

28

---

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bhambra v. True,*
No. C 09-4685 CRB, 2010 WL 1758895 (N.D. Cal. Apr. 30, 2010) ........................................ 4

*Briggs v. Eden Council for Hope & Opportunity,*
19 Cal. 4th 1106 (1999) ..................................................................................................... 5

*Caraccioli v. Facebook, Inc.,*
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ................................................................................ 9

*Equilon Enterprises, LLC v. Consumer Cause, Inc.,*
29 Cal. 4th 53 (2002) ......................................................................................................... 4

*Fox Searchlight Pictures v. Paladino,*
89 Cal. App. 4th 294 (2001) .............................................................................................. 6

*Guz v. Bechtel Nat. Inc.,*
24 Cal. 4th 317 (2000) ..................................................................................................... 12

*Hilton v. Hallmark Cards,*
599 F.3d 894 (9th Cir. 2010)............................................................................................... 4

*Inter–Mark USA, Inc. v. Intuit, Inc.,*
No. C-07-04178 JCS, 2008 WL 552482 (N.D. Cal. Feb.27, 2008)........................................ 13

*Kashian v. Harriman,*
98 Cal. App. 4th 892 (2002) ............................................................................................ 3, 7

*Kearney v. Foley & Lardner,*
553 F. Supp. 2d 1178 (S.D. Cal. 2008)................................................................................ 4

*Ketchum v. Moses,*
24 Cal. 4th 1122 (2001) .................................................................................................... 4

*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.,*
34 Cal. 4th 960 (Cal. 2004)............................................................................................... 11

*Martinez v. Metabolife Int'l, Inc.,*
113 Cal. App. 4th 181 (Cal. Ct. App. 2003) ....................................................................... 6

*Metabolife Int'l v. Wornick,*
213 F. Supp. 2d 1220 (S.D. Cal. 2002).......................................................................... 14, 15

*Metabolife Int'l, Inc. v. Wornick,*
264 F.3d 832 (9th Cir. 2001)............................................................................................. 14

*Mory v. City of Chula Vista,*
No. 07-CV-0462, 2008 U.S. Dist. LEXIS 9911 (S.D. Cal. Feb. 11, 2008) .............................. 5

*Nygard, Inc. v. Uusi-Kerttula,*
159 Cal. App. 4th 1027 (2008) .......................................................................................... 8

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,*
133 Cal. App. 4th 658 (2005) ............................................................................................ 6

*Powertech Tech., Inc. v. Tessera, Inc.*,
  872 F. Supp. 2d 924 (N.D. Cal. 2012) ...................................................................... 6

*Roots Ready Made Garments v. Gap Inc.*,
  No. C 07-03363 CRB, 2008 WL 4078437 (N.D. Cal. Aug. 29, 2008).................................... 13

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016)............................................................................. 4, 14

*Scott v. Pacific Gas & Electric Co.*,
  11 Cal.4th 454 (Cal. 1995).............................................................................. 12

*Smith v. Fireside Thrift Co.*,
  No. C 07-03883 WHA, 2007 WL 2729329 (N.D. Cal. Sept. 18, 2007).............................. 5, 15

*Song Fi v. Google Inc.*,
  No. 14-cv-5080, 2015 U.S. Dist. Lexis 75272 (N.D. Cal. June 10, 2015) ........................... 13

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
  682 F. Supp. 2d 1003 (N.D. Cal. 2010) ................................................................ 5

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
  190 F.3d 963 (9th Cir. 1999)............................................................................. 4, 15

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
  830 F.3d 1335 (Fed. Cir. 2016)........................................................................... 7

**STATUTES**

Cal. Code Civ. P. § 3301 ................................................................................. 12

Cal. Code Civ. P. § 425.16(a) ............................................................................ 3, 4

Cal. Code Civ. P. § 425.16(b) ............................................................................ 4, 7

Cal. Code Civ. P. § 425.16(b)(1) ......................................................................... 3, 8

Cal. Code Civ. P. § 425.16(c) ............................................................................ 4, 15

Cal. Code Civ. P. § 425.16(e)(1).......................................................................... 5

Cal. Code Civ. P. § 425.16(f)............................................................................. 4, 14

Fed. R. Civ. P. 56 ...................................................................................... 10, 14

Fed. R. Civ. P. 56(d) .................................................................................... 14

## NOTICE OF MOTION AND MOTION

TO DEFENDANT ARIOSA DIAGNOSTICS, INC. AND ALL ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on October 12, 2017, Plaintiffs Illumina, Inc. and Verinata Health, Inc. (collectively "Illumina") will move the Court for an order granting its Special Anti-SLAPP Motion to Strike Ariosa Diagnostics, Inc.'s ("Ariosa") second counterclaim for breach of contract and third counterclaim for breach of the covenant of good faith and fair dealing (together, the "Counterclaims").

This motion to strike is based on the grounds that the Counterclaims arise from protected litigation-related activities that implicate Illumina's constitutional rights of petition or free speech and thus are subject to California's anti-SLAPP Statute, Code of Civil Procedure section 425.16 ("Cal. Civ. Proc. Code § 425.16"). Because the Counterclaims constitute a SLAPP ("Strategic Lawsuit Against Public Participation"), Cal. Civ. Proc. Code § 425.16(b) requires that the Counterclaims be stricken unless Ariosa demonstrates a probability of prevailing on each cause of action against Illumina at trial. Ariosa cannot do so.

This motion is based on the following Memorandum, the supporting materials, the pleadings in this action, and any other matters the Court deems proper.

The relief requested is dismissal with prejudice of Ariosa's Counterclaims and reimbursement of Illumina's attorneys' fees incurred as a result of the Counterclaims.

## I.  ARIOSA'S BREACH COUNTERCLAIMS SHOULD BE STRICKEN

Ariosa's countersuit against Illumina is a reflexive action to retaliate against Illumina for seeking access to this Court to protect its patent rights.   Specifically, Ariosa's second counterclaim for breach of contract and third counterclaim for breach of the covenant of good faith and fair dealing (the "Counterclaims") seek damages *because* Illumina filed this patent infringement case.

Ariosa is essentially arguing that, because Illumina disputes that Ariosa has a license, Illumina somehow breached the parties' contract by nevertheless filing suit, exposing Illumina to a claim for $100 million in consequential damages.  This is an extraordinary attempt to prevent Illumina from pursing its patent infringement claim by alleging that access to the Court is precluded because of Ariosa's allegation that it has a license.   But a dispute over whether a particular patent is licensed is a far cry from the type of $100 million dollar breach of contract claim that Ariosa has asserted in response.  The California Legislature enacted Cal. Civ. Proc. Code § 425.16, the anti-SLAPP statute, precisely to put an end to retaliatory lawsuits such as this, which are based on a party's valid exercise of its rights to petition for the redress of grievances.

Under California law, to reduce the proliferation of SLAPP suits, such claims must be dismissed unless the retaliating party establishes a *reasonable probability of prevailing*.  Well-established Ninth Circuit precedent confirms that these anti-SLAPP protections apply with equal force in federal court.  The analysis is straightforward.  Illumina, as the moving party, bears the initial burden of establishing that Ariosa's Counterclaims arise from protected activity.  Here, the facts alleged in Ariosa's Counterclaims and admissions in discovery establish that the Counterclaims arise from protected activities under the anti-SLAPP statute:  Illumina's institution of this patent infringement action.  Because the Counterclaims arise from protected petitioning activities, the Counterclaims must be stricken unless Ariosa proves that it has a reasonable probability of prevailing.   As established below, Ariosa cannot meet its burden and the Counterclaims should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Illumina, Inc. ("Illumina") is a global leader in the field of genomics.  Over the last few years, Illumina has played a key role in expanding the availability of new techniques for non-invasive prenatal testing ("NIPT") based on sophisticated DNA techniques.

Beginning in early 2012, four companies, one of which was Ariosa, began offering testing services that allowed expectant mothers to determine early in pregnancy whether their child was suffering from a range of genetic disorders, including Down syndrome.  These new tests all used Illumina's DNA sequencing technology to analyze DNA from a maternal blood sample, which also includes DNA from the fetus.  Unlike traditional amniocentesis, these tests are non-invasive and pose no threat to the growing fetus.

On January 4, 2012, Illumina entered into a three-year Sale and Supply Agreement (the "Agreement") with Ariosa, pursuant to which Illumina would supply Ariosa with sequencing equipment and reagents so that Ariosa could perform its prenatal test, which it marketed as "Harmony."

In early 2013, Illumina acquired Verinata Health, Inc.—one of the earliest entrants in the NIPT market—for $350 million.  Illumina acquired not just Verinata's clinical laboratory facilities and technical know-how, but also Verinata's rich and early intellectual property portfolio related to NIPT technology.  At the time of the acquisition, Verinata had already filed a patent infringement action against Ariosa, asserting that Ariosa's sequencing-based Harmony Prenatal Test infringed U.S. Patent No. 8,318,430 ("the '430 patent," together with the '076 patent, the "Verinata Patents").

After Illumina acquired Verinata, Ariosa maintained its refusal to take a license to the Verinata intellectual property.  Illumina also determined that Ariosa was infringing foundational Illumina IP, including U.S. Patent No. 7,955,794 ("the '794 patent"), related to techniques for analyzing hundreds of DNA sequence fragments at the same time independent of the DNA sequencing itself.  The '794 patent includes as inventors Ariosa co-founders Jonathan Stuelpnagel and Arnold Oliphant, who helped develop the '794 patent while employed by Illumina in the early 2000s.

On January 10, 2014, Illumina's Vice President Charles M. Moehle wrote Ariosa's CEO, Dr. Ken Song, to notify Ariosa that is was breaching under the Agreement.  Illumina informed Ariosa that it did not have the proper intellectual property licenses for the Harmony Prenatal Test as required by section 3(a) of the Agreement.  After negotiations between the parties failed, Illumina sent another letter to Ariosa on April 24, 2014 reiterating that Ariosa was in breach.  The next day, Illumina filed a complaint against Ariosa for infringement of the '794 patent. *See* Ex. 1 ¶¶ 11-18.

Ariosa counterclaimed for breach of contract and breach of the covenant of good faith and fair dealing (the "Counterclaims"). *See* Ex. 2 ¶¶ 71-87.  Ariosa alleges that Illumina breached the Agreement by "bringing a lawsuit against Ariosa for infringement of the '794 patent." *Id.* ¶ 75. Notably, the Agreement does not contain a covenant not to sue or any other provision prohibiting Illumina from suing Ariosa.  Ariosa alleges that Illumina was obligated to disclose "Secondary IP" that Ariosa was using and that the failure to do so somehow gives rise to an implied license. As to the covenant of good faith and fair dealing, Ariosa alleges that Illumina breached in two ways: (1) "by filing the '794 patent infringement claim against Ariosa;" and (2) "by asserting pretextual claims of 'breach' of the Agreement." *Id.* ¶ 85.

### III.   THE LEGAL FRAMEWORK

When enacting the anti-SLAPP statute, the California Legislature declared that there was a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Civ. Proc. Code § 425.16(a).  Under California's anti-SLAPP statute, a cause of action against any person arising from any act taken "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).  The filing of a lawsuit is "an exercise of one's constitutional right of petition, and statements made in connection with or in preparation of litigation are subject to Section 425.16." *Kashain v. Harriman*, 98 Cal. App. 4th 892, 908 (2002).  California's legislature has also made

clear in the statute's text that the protections of this statute are to be "construed broadly."  § 425.16(a)

Courts employ a two-prong analysis in ruling on a motion to strike under Cal. Civ. Proc. Code § 425.16.  First, the moving party must make a prima facie showing that the cause of action "arise[s] from an act in furtherance of the constitutional right to petition or free speech." *Equilon Enterprises, LLC v. Consumer Cause, Inc*., 29 Cal. 4th 53, 59 (2002) (internal citation omitted). Once the moving party has made a prima facie showing that a cause of action falls within the definition of a SLAPP, the cause of action must be stricken unless the non-moving party can establish a probability of prevailing on the merits at trial.  Cal. Civ. Proc. Code § 425.16(b).

To deter lawsuits that chill exercise of the right of free speech or petition, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Cal. Civ. Proc. Code § 425.16(c).  "Thus, it is well-settled that an award of attorney's fees and costs to a successful anti-SLAPP movant is mandatory."  *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001)).

The Ninth Circuit has long held that the anti-SLAPP statute, in particular the aspects related to special motions to strike under Cal. Civ. Proc. Code § 425.16(b) and the availability of fees and costs under Cal. Civ. Proc. Code § 425.16(c) applies to state law claims brought in federal courts.[1]  *See e.g., Hilton v. Hallmark Cards,* 599 F.3d 894, 900 n.2 (9th Cir. 2010) ("[The Ninth Circuit has] long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction.") (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 970–73 (9th Cir. 1999)).

Courts in this district exercising supplemental jurisdiction over state law claims frequently apply the anti-SLAPP statute to strike pendent state claims.  *See, e.g., Bhambra v. True*, No. C 09-4685 CRB, 2010 WL 1758895, at *2 (N.D. Cal. Apr. 30, 2010) ("Because the identified claims in Plaintiff's complaint are 'based on the defendants' protected free speech or petitioning

---

[1] As discussed in more detail below, certain aspects of the anti-SLAPP statute do not apply in federal court including the time limitation for filing a special motion to strike under Cal. Civ. Proc. Code § 425.16(f).  *See, e.g., Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).

activity,' and because Plaintiff enjoys no probability of success, Defendants' motion to strike must be GRANTED." (internal citation omitted)); *Smith v. Fireside Thrift Co.*, No. C 07-03883 WHA, 2007 WL 2729329, at *6 (N.D. Cal. Sept. 18, 2007) ("[D]efendants' special motion to strike plaintiff's third and fifth claims is Granted.").

## IV.    ARGUMENT

### A.    Ariosa's Counterclaims Should Be Stricken In Their Entirety Under California's Anti-SLAPP Statute

Ariosa's Counterclaims arise from Illumina's exercise of its constitutional right to petition the court, specifically, Illumina's right to assert the '794 patent in this Court.  Because the Counterclaims arise from protected activity and Ariosa cannot establish a probability of prevailing on the merits, the Counterclaims must be dismissed in their entirety.

### 1.    Illumina's Filing Of This Lawsuit Is Protected Activity

Illumina's lawsuit is "protected activity" under the California anti-SLAPP statute.  Section 425.16(e)(1) defines protected activity to include: "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law."  This Court has made clear that the "anti-SLAPP statute protects any act in furtherance of a person's right of petition or free speech [] including, without limitation, the filing of a complaint [and] the assertion of allegations therein . . . ."  *Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1015 (N.D. Cal. 2010) (internal citation omitted).  The statute does not require a showing that the filing concerns a matter of public interest.  *Mory v. City of Chula Vista*, No. 07-CV-0462, 2008 U.S. Dist. LEXIS 9911, at *28 (S.D. Cal. Feb. 11, 2008) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1117-18 (1999)).

There can thus be no dispute Illumina's filing of the instant action for patent infringement is a protected exercise of its right to petition under Cal. Civ. Proc. Code § 425.16(e)(1).

1

2

### 2.    Ariosa's Breach Of Contract Counterclaim Arises From Illumina Filing This Lawsuit

3    Ariosa's counterclaim for breach of contract "arises from" protected activity.    To

4    determine if the challenged conduct is constitutionally protected under the anti-SLAPP statute,

5    the court evaluates the "principle thrust or gravamen" of the claim.  *Tuck Beckstoffer Wines LLC,*

6    682 F. Supp. 2d at 1015 (citing *Martinez v. Metabolife Int'l, Inc.,* 113 Cal. App. 4th 181, 193

7    (Cal. Ct. App. 2003)).  "The principal thrust or gravamen test serves the legislative intent that the

8    anti-SLAPP statute be interpreted broadly, because a plaintiff cannot deprive a defendant of anti-

9    SLAPP protection by bringing a [cause of action] based upon both protected and unprotected

10   conduct."  *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 933 (N.D. Cal. 2012)

11   (internal quotation marks omitted).  "[W]here a cause of action alleges both protected and

12   unprotected activity, the cause of action will be subject to § 425.16 unless the protected conduct

13   is merely incidental to the unprotected conduct."  *Peregrine Funding, Inc. v. Sheppard Mullin*

14   *Richter & Hampton LLP*, 133 Cal. App. 4th 658, 670 (2005) (internal citations omitted).  In

15   addition, the moving party need not prove that the plaintiff intended to chill the exercise of

16   protected rights—a plaintiff's specific intent is irrelevant to enforcement of the anti-SLAPP

17   protections.  *Fox Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294, 307 (2001)

18   ("'directives' of section 425.16 are inconsistent with a requirement the defendant prove the

19   challenged lawsuit was brought to chill her First Amendment rights").

20   Ariosa explicitly alleges that the counterclaim arises directly from Illumina's filing of this

21   lawsuit:

22   •    "The Agreement obligates Illumina to refrain from asserting the '794 patent
          against Ariosa in connection with the Harmony Prenatal Test.  Illumina breached
23        the Agreement *by bringing a lawsuit* against Ariosa for infringement of the '794
          patent." Ex. 2 ¶ 75 (emphasis added).

24

25   •    "*[A]s a result of Illumina's lawsuit*, Ariosa's IPO could not proceed as planned
          and the IPO was withdrawn." *Id.* ¶ 76 (emphasis added).

26   •    Ariosa incurred damages in the form of "lost expenditures on an IPO that never
          occurred *because Illumina initiated the Infringement Action in breach* of its
27        contractual obligations." *Id.* (emphasis added).

28

- Ariosa incurred further damages because "[p]otential partners did not agree to distribute the Harmony Prenatal Test, despite that test's unmatched accuracy, efficiency, and cost, in part *due to Illumina's Infringement Action against Ariosa*." *Id.* ¶ 78 (emphasis added).

These allegations underscore that Illumina's patent suit against Ariosa is the lynchpin of its breach of contract counterclaim.  To avoid having its contract counterclaims sent to arbitration, Ariosa alleged that its "Counterclaims are *inextricably linked* to questions of patent infringement . . . ." Dkt. No. 260 at 8 (emphasis added and in original).  This Court accepted Ariosa's arguments to this effect, declining to order arbitration and stating that "Ariosa's breach counterclaims unambiguously relate[d] to issues of patent infringement . . . ." Ex. 3 at 6:10-12; *see also* Ex. 5 [Ariosa's Fed. Cir. Resp. Brief, Case No. 15-1970, Dkt. No. 21] at 38 ("[T]he underlying factual allegations addressed in Ariosa's Counterclaims center on Illumina's *infringement* allegations against Ariosa based on the '794 patent") (emphasis in original).  When Illumina appealed this Court's ruling that the parties' dispute was not arbitrable, Ariosa convinced the Federal Circuit that the "nucleus of Ariosa's counterclaims is the patent infringement lawsuit filed by Illumina."  *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1341 (Fed. Cir. 2016).

Accordingly, Ariosa cannot avoid application of the California anti-SLAPP statute by now contending that its contract counterclaims do not arise from Illumina's protected right to assert the '794 patent.  The gravamen of Ariosa's breach of contract claim is that Illumina breached by filing suit.  That allegation is *not* incidental to the claim. Illumina has established a prima facie case that Ariosa's breach of contract counterclaim arises from acts in furtherance of Illumina's right to petition or free speech.  Therefore, the burden shifts to Ariosa to establish the probability that it will prevail on the merits of this claim.  Cal. Civ. Proc. Code § 425.16(b); *see also Kashian*, 98 Cal. App. 4th at 905.

### 3.  Ariosa's Breach Of Good Faith And Fair Dealing Counterclaim Also Arises From Illumina's Filing Of This Lawsuit

Ariosa's third counterclaim for breach of the covenant of good faith and fair dealing also arises from Illumina's filing of this lawsuit.

Here, the gravamen of Illumina's breach of the covenant of good faith and fair dealing counterclaim is Illumina's filing of this action for patent infringement.

Ariosa alleges that "Illumina has breached the covenant of good faith and fair dealing **by filing the '794 patent infringement claim against Ariosa** in an attempt to unreasonably deprive Ariosa of the benefits of the Agreement." *See* Ex. 2 ¶ 85.  While Ariosa also alleges that Illumina breached the covenant of good faith and fair dealing "by asserting pre-textual claims of 'breach' of the Agreement" (*Id.*), in seeking to avoid arbitration, as set forth above, Ariosa freely acknowledged (and courts have found) that the Counterclaims were really filed "in response to Illumina's infringement allegations." Dkt. No. 260 at 1.  Even if Ariosa is able to set forth some additional facts in support of its good faith and fair dealing claim that do not implicate protected activity, that would not change the conclusion.  The filing of this action is not incidental or collateral to Ariosa's breach of the covenant of good faith and fair dealing counterclaim as alleged; as Ariosa has repeatedly admitted, it is the core basis for this lawsuit.  Accordingly, Illumina has established a prima facie case that Ariosa's Counterclaims arise from acts in furtherance of Illumina's right to petition and the burden shifts to Ariosa to show that it will prevail on the merits of its claims.

> **B.      Ariosa Cannot Establish A Probability Of Prevailing On The Merits For Each Counterclaim**

"In order to establish a probability of prevailing on the claim (§ 425.16(b)(1)), a plaintiff responding to an anti-SLAPP motion must state and substantiate a legally sufficient claim." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1044 (2008) (internal quotation marks omitted).  This means that "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (internal quotation marks omitted).

As established in Illumina's Motion for Summary Judgment filed concurrently herewith (the "Rule 56 Motion"), Ariosa cannot show that there any genuine issues of material fact

precluding summary judgment in Illumina's favor on the Counterclaims, let alone show a probability of prevailing on the merits of the Counterclaims at trial.

### 1.   Ariosa Cannot Prevail On Its Breach Of Contract Counterclaim[2]

Although the parties had a valid contract, Ariosa cannot establish the other elements required to prevail on its breach of contract claim.

It is black-letter law that, to prove a breach of contract, a plaintiff must point to a specific obligation or prohibition under the contract that has been breached. *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) ("To properly plead breach of contract, the complaint must identify the specific provision of the contract allegedly breached by the defendant.") (internal quotations omitted).  Ariosa does not dispute that Illumina performed its obligations under the Agreement by providing Ariosa with the sequencing equipment and reagents it agreed to supply for the three-year supply period.  *See* Ex. 6 § 2, 3; Ex. 7 (reminding Ariosa that the Agreement expires January 4, 2015, and providing notice that Illumina did not intend to renew the Agreement and will cease supplying the Goods only upon its expiration).

Instead, the alleged breach is that Illumina filed a patent infringement lawsuit, asserting a patent that is not expressly licensed under the Agreement.  As discussed in more detail in the Rule 56 Motion, which Illumina incorporates by reference, the grant to Core IP Rights in Goods in section 3(a) is the ***only*** express grant of IP rights in the Agreement, and Ariosa's own technical expert ██████████████████████████████████████████████ ████████████████  The Agreement also specifically ***disclaims any implied licenses***.  *See* Ex. 6 § 3(c).  Accordingly, the foundation of Ariosa's breach claim—that Illumina improperly asserted a licensed patent—plainly fails because the '794 patent was not licensed.  Accordingly, Ariosa cannot establish that the assertion of the '794 patent deprived them of a contractual license grant

---

[2] To succeed on its breach of contract claim under California law, Ariosa must prove: (1) the existence of a valid contract, (2) Ariosa's performance or excuse for non-performance, (3) that all conditions required by the contract for Illumina's performance occurred or were excused, (4) that Illumina (i) failed to do something the contract required it to do or (ii) did something the contract prohibited it from doing, and (5) ascertainable damages to Ariosa as the result of that failure. *See* CACI Jury Instruction No. 303.

under the Agreement.  Regardless, if there is a dispute whether a license exists based on Ariosa's representations regarding "Secondary IP," Ariosa would have a license defense, which is how such issues are normally resolved.[3]  Every license dispute does not give rise to a breach of contract claim.  Moreover, there is no provision of the Agreement that Ariosa can point to that prohibited Illumina from filing suit; there is no requirement to meet and confer, engage in mediation or any other pre-condition to filing a lawsuit.

Ariosa also cannot prove harm caused by Illumina's alleged breach of the Agreement—the filing of the instant lawsuit.  Ariosa claims that it lost upwards of $100 million because it had to cancel its IPO because of Illumina's filing of this lawsuit.  Yet, any alleged loss in company value from not moving forward with an IPO, for instance, cannot have been caused by Illumina's lawsuit because discovery has shown ████████████████████████████████████ ████████████████████████████████████████████████████████████ The filing of the lawsuit, then, could not have been the cause of Ariosa's alleged harm.

Ariosa's inability to establish relationships with other potential distribution partners was likewise not caused by Illumina's lawsuit.  *See* Ex. 2 ¶ 78.  ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████

Ariosa also cannot prove that Illumina's lawsuit forced it to divert resources to accelerate its transition to from a sequencing platform to a microarray platform.  *See* Ex. 2 ¶¶ 77.  Ariosa cannot dispute that the impetus for its transition to a microarray product was not Illumina's lawsuit, ███████████████████████████████████.  *See* Ex. 12 [Sparks Tr.] at 186:4-187:7; Ex. 13 [Zahn 10/17/15 Tr.] at 416:15-417:14; Ex.14 [Song Tr.] at 210:21-212:15.  It is also indisputable that Ariosa did not actually accelerate launching the microarray platform as it

---

[3] For the reasons discussed herein and in the Rule 56 Motion, Ariosa's license defense also fails as a matter of law because the Agreement did not grant Ariosa an express or implied license to any of the patents-in-suit.

1    contends ███████████████████████████████████████

2    ████████████████████████████████████████████. *See*

3    Ex. 15 [Oliphant Tr.] at 132:7-17; *see also* Ex. 16 [Ariosa 7th Resp. to Interrog. No. 27] at 13.

4    Therefore, Ariosa cannot prevail on its breach of contract claim because Ariosa cannot prove that

5    its damages *resulted from* Illumina's alleged failure to perform under the Agreement.

6          Importantly, even if it could establish causation, Ariosa's claimed damages are barred by

7    the plain language of the Agreement.   Ariosa seeks to recover losses that would, at most,

8    constitute special, indirect or consequential damages which are expressly precluded by section 18,

9    which provides:



16   Ex. 6 § 18.

17         All the losses Ariosa claims—lost proceeds or lost business value that may have resulted

18   from the IPO, the cost of the IPO, lost profits related to the failure to secure distribution partners,

19   and costs associated with accelerating certain substitute products—are expressly disclaimed in

20   this section, which precludes recovery of "costs of procurement of substitute products or services,

21   lost profits, data or business." *Id.*

22         Ariosa's claimed losses are barred for the additional reason that they constitute special and

23   consequential damages, which are also expressly disclaimed in section 18.  Under California law,

24   special or consequential damages are "those losses that do not arise directly and inevitably from

25   any similar breach of any similar agreement.  Instead, they are secondary or derivative losses

26   arising from circumstances that are particular to the contract or to the parties." *Lewis Jorge*

27   *Const. Management, Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 968 (Cal. 2004).  It

28   cannot be disputed that Ariosa's claimed $100 million losses from a failed IPO would not "arise

directly and inevitably" from any breach of a sale and supply agreement.  The measure of direct damages which would generally be available under such an agreement is the value of the goods promised to be supplied—not collateral losses relating to Ariosa's IPO or its business dealings with third parties.  As a result, Ariosa's Counterclaims are barred by the Agreement's limitation of liability clause.

Moreover, even if Plaintiffs' alleged damages are not foreclosed by the Agreement, Ariosa cannot predict the stock market, and thus cannot show that any loss in company value as the result of the failed IPO is "clearly ascertainable," as required to prevail on a breach of contract claim.  Cal. Civ. Proc. Code § 3301; *see also Scott v. Pacific Gas & Electric Co.,* 11 Cal.4th 454, 473 (Cal. 1995) ("It is fundamental that [contract] damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.").  Accordingly, under the express terms of the Agreement and California law, Ariosa cannot point to any breach of the Agreement and is not entitled to the damages it seeks.  Ariosa cannot show that it is likely to prevail on its breach of contract claim.

### 2.  Ariosa Cannot Prevail On Its Breach Of Good Faith And Fair Dealing Counterclaim[4]

Ariosa cannot prevail on its counterclaim for breach of the covenant of good faith and fair dealing because it cannot prove that Illumina unfairly interfered with Ariosa's right to receive the benefits of the Agreement.  To succeed on its breach of good faith and fair dealing claim, Ariosa must prove that Illumina unfairly interfered with Ariosa's "right to receive the *benefits of the agreement actually made*."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original).  Further, "the scope of conduct prohibited by the covenant of good faith is

---

[4] To succeed on its breach of the implied covenant of good faith and fair dealing claim under California law, Ariosa must prove: (1) the existence of a valid contract, (2) Ariosa's performance or excuse for non-performance, (3) that all conditions required by the contract for Illumina's performance occurred or were excused, (4) that Illumina unfairly interfered with Ariosa's right to receive the benefits of the contract; and (5) ascertainable damages to Ariosa as the result of Illumina's unfair conduct. *See* CACI Jury Instruction No. 325.

1    circumscribed by the purposes and express terms of the contract." *Inter–Mark USA, Inc. v. Intuit,*

2    *Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at *7 (N.D. Cal. Feb.27, 2008).

3         Illumina's filing of the '794 patent infringement action is in no way prohibited by the

4    express terms of the Agreement.  Ariosa cannot use a good faith and fair dealing claim to expand

5    Illumina's bargained-for obligations under the Agreement, and the law is clear that such an

6    allegation cannot support Ariosa's claim here.  *Roots Ready Made Garments v. Gap Inc.*, No. C

7    07-03363 CRB, 2008 WL 4078437, at *7 (N.D. Cal. Aug. 29, 2008) ("[W]here an implied

8    covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is

9    invalid.").

10        Ariosa also cannot show that it was a breach of good faith and fair dealing for Illumina to

11   inform Ariosa that it was in breach of the Agreement because section 29(c)(ii) of the Agreement

12   expressly allows Illumina to provide such notice.  *See Song Fi v. Google Inc.,* No. 14-cv-5080

13   SC, 2015 U.S. Dist. Lexis 75272, at *16-17 (N.D. Cal. June 10, 2015) ("[I]f defendants were

14   given the right to do what they did by the express provisions of the contract there can be no

15   breach.") (citations omitted).

16        Ariosa also cannot prove that it did not receive the benefits of the Agreement as the result

17   of Illumina filing this lawsuit.  Here, the only benefit the parties intended Ariosa to receive under

18   the Agreement was the right to purchase the Goods from Illumina for a three-year period (*see* Ex.

19   6 § 2, 3) and it is undisputed that Ariosa continued to purchase and Illumina continued to supply

20   the Goods until the Agreement expired by its terms in January 2015.   Further, the Agreement did

21   not grant Ariosa a license to any of the patents-in-suit so Ariosa cannot prevail on the theory that

22   Illumina interfered with Ariosa's license rights by asserting the '794 patent.  *See supra* n. 3.  For

23   these reasons, Ariosa cannot prevail on its breach of good faith and fair dealing counterclaim.

24        Finally, the Agreement also unambiguously precludes Ariosa from recovering damages

25   for its good faith and fair dealing claim.  Section 18 of the Agreement limits Ariosa's damages

26   ████████████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████  Ex. 6 § 18.  And as described above, all of the losses Ariosa claims

28   in this case constitute either "costs of procurement of substitute products or services, lost profits,

1    data or business" or special, indirect or consequential damages which are expressly disclaimed in

2    the Agreement. *See id.*; *see also supra* Part B.1.  Therefore, Ariosa's good faith and fair dealing

3    claim is clearly barred by the plain language of the Agreement.

4         ***In sum***, Ariosa cannot show that it is likely to prevail on the merits of its claims.

5    Therefore, the Counterclaims should be stricken and dismissed with prejudice as they are based

6    on protected activity and Ariosa cannot meet its burden of proof under the anti-SLAPP statute.

7         **C.      This Motion Is Timely Under Rule 56**

8         Illumina's special motion to strike is timely because the Ninth Circuit has held that the

9    time limitation in subsection (f) of the anti-SLAPP statute does not apply in federal court.[5]  *See*

10   *Sarver*, 813 F.3d at 900.

11        The Ninth Circuit has determined that the time limitation of subsection (f) "directly

12   collides" with Federal Rule of Civil Procedure 56.  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d

13   832, 845 (9th Cir. 2001) (recognizing that § 425.16(f) "directly collide[s]" with Rule 56(d) and

14   holding that "[p]rocedural state laws are not used in federal court if to do so would result in a

15   direct collision with a Federal Rule of Civil Procedure.").  Due to the clear conflict between the

16   state and federal rule, the 60-day deadline is inapplicable and courts must follow the time limits

17   provided under Federal Rule of Civil Procedure 56(b) to determine whether a special motion to

18   strike is timely.  *See Sarver*, 813 F.3d at 900 ("Although section 425.16(f) does not prohibit the

19   filing of an anti-SLAPP motion after 60 days, it certainly restricts a party's ability to do so in a

20   way Rule 56 would not. We therefore decline to apply the statute's 60–day time frame in federal

21   court, and we refer instead to our own rules of procedure.").

22        Rule 56 allows a party to file a motion for summary judgment at any time until 30 days

23   after the close of all discovery, or at some other time set "by local rule or the court." Fed. R. Civ.

24   P. 56.  Here, Illumina's special motion to strike was filed within the time limit provided by the

25   Court for dispositive motions and is hence timely.  *See Sarver*, 813 F.3d at 900 (holding that anti-

26

---

27    [5] This provision provides that "[t]he special motion may be filed within 60 days of the service of
     the complaint or, in the court's discretion, at any later time upon terms it deems proper." Cal. Civ.
     Proc. Code § 425.16(f).

28

1    SLAPP motion brought nearly one year after the filing of the complaint was timely and that the

2    district court did not err in granting the motion).

3         **D.    Illumina Is Entitled To Recover its Attorney's Fees**

4         "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or

5    her attorney's fees and costs."  Cal. Civ. Proc. Code § 425.16(c).  "The fee provision of the anti-

6    SLAPP statute is applied in federal court."  *Kearny*, 553 F. Supp. 2d at 1181 (citing *Metabolife*

7    *Int'l v. Wornick*, 213 F. Supp. 2d 1220 (S.D. Cal. 2002) and *United States v. Lockheed Missiles &*

8    *Space Co., Inc.*, 190 F.3d 963, 972–73 (9th Cir. 1999)).  Illumina therefore requests that the Court

9    award his attorney's fees and costs incurred in bringing this motion.  *See Smith*, 2007 WL

10   2729329, at *6 ("[D]efendants' special motion to strike plaintiffs third and fifth claims is

11   Granted. Defendants are awarded attorney's fees pursuant to California Civil Procedure Code

12   § 427.16(c)").

13                           **V.    CONCLUSION**

14        For the foregoing reasons, Illumina respectfully requests that the Court grant its motion

15   and award it the fees and costs in defending against the Counterclaims.

16   Dated: September 1, 2017                    WEIL, GOTSHAL & MANGES LLP

17

18                                        By:  _____*/s/ Edward R. Reines*_____

19                                             Edward R. Reines
                                             Attorneys for Plaintiffs and
20                                           Counterclaim Defendants

21

22

23

24

25

26

27

28