1  IRELL & MANELLA LLP
   David I. Gindler (117824)
2  dgindler@irell.com
   Andrei Iancu (184973)
3  aiancu@irell.com
   Sandra L. Haberny (260977)
4  shaberny@irell.com
5  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
6  Telephone:    (310) 277-1010
   Facsimile:    (310) 203-7199
7
8  Attorneys for Defendant and
   Counterclaim-Plaintiff
9  ARIOSA DIAGNOSTICS, INC.
10

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14  VERINATA HEALTH, INC.,                 )  Lead Case No. 3:12-cv-05501-SI
                                           )  Case No. 3:14-cv-01921-SI
15          Plaintiff and                  )  Case No. 3:15-cv-02216-SI
            Counterclaim-Defendant,        )
16                                         )  **ARIOSA DIAGNOSTICS, INC.'S**
        vs.                                )  **OPPOSITION TO ILLUMINA, INC.'S**
17                                         )  **ANTI-SLAPP MOTION [D.I. 400]**
    ARIOSA DIAGNOSTICS, INC.,              )
18                                         )  Judge:  Hon. Susan Illston
            Defendant and                  )
19          Counterclaim-Plaintiff.        )  Date:      October 12, 2017
                                           )  Time:      10:00 a.m.
20  ILLUMINA, INC.,                        )  Ctrm.:     1, 17th Floor
                                           )
21          Plaintiff and Counterclaim-    )
            Defendant                      )
22                                         )
        vs.                                )
23                                         )
    ARIOSA DIAGNOSTICS, INC.,              )
24                                         )
            Defendant and Counterclaim-    )
25          Plaintiff.                     )
                                           )
26
27
28

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION

10279028

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1   ILLUMINA, INC.,                         )

                                             )

2                Plaintiff and Counterclaim-   )
                Defendant                   )

3                                         )

             vs.                              )

4                                         )

   ARIOSA DIAGNOSTICS, INC.,         )

5                                         )

                Defendant and Counterclaim-   )

6                Plaintiff.                    )

                                         )

7                                         )

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION

10279028

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

III.  THE ANTI-SLAPP PROCEDURE IS INAPPLICABLE TO ARIOSA'S
      CLAIMS, WHICH ARE SUBJECT TO EXCLUSIVE FEDERAL
      JURISDICTION ..................................................................................................... 6

IV.   ILLUMINA DOES NOT SATISFY THE ANTI-SLAPP STANDARD ............ 9

      A.    Ariosa's Contract Counterclaims ............................................................ 10

            1.    Illumina Breached The SSA's Express License And
                  Representations Regarding "Illumina Intellectual Property" ...... 11

            2.    Ariosa Was Harmed By Illumina's Breaches ............................. 14

            3.    Ariosa's Covenant Of Good Faith And Fair Dealing Claim ...... 17

      B.    Illumina Has Failed To Show That The Good Faith And Fair
            Dealing Claim Arises Solely From Protected Activity ........................ 18

V.    ILLUMINA'S REQUEST FOR ATTORNEYS' FEES IS IMPROPER ........... 19

VI.   CONCLUSION ..................................................................................................... 20

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Airis SFO, LLC v. City & Cty. of S.F.*,
5
    No. A121855, 2010 WL 3687508 (Cal. Ct. App. Sept. 22, 2010) ............................................. 17

6

*Alexsam, Inc. v. Green Dot Corp.*,
    No. 15-cv-05742, 2015 U.S. Dist. LEXIS 134689 (C.D. Cal. Sept. 28, 2015) ........................... 8

7

*Baral v. Schnitt*,
8
    1 Cal. 5th 376 (2016) ................................................................................................................... 19

9

*BlueGem Security, Inc. v. Trend Micro Inc.*,
10
    No. 09-1492, 2010 WL 11505702 (C.D. Cal. June 8, 2010) ...................................................... 16

11

*City of Montebello v. Vasquez*,
    1 Cal. 5th 409 (2016) ............................................................................................................. 9, 10

12

*Civic Ctr. Dr. Apts. Ltd. P'ship v. S.W. Bell Video Servs.*,
13
    295 F. Supp. 2d 1091 (N.D. Cal. 2003) .................................................................................... 16

14

*Erie R.R. Co. v. Tompkins*,
15
    304 U.S. 64 (1938) ....................................................................................................................... 7

16

*Gasperini v. Ctr. for Humanities*,
    518 U.S. 415 (1996) ..................................................................................................................... 7

17

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
18
    63 F. Supp. 2d 1127 (N.D. Cal. 1999) ........................................................................................ 7

19

*Gunn v. Minton*,
20
    568 U.S. 251 (2013) .................................................................................................................. 7, 8

21

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ..................................................................................................................... 7

22

*Hebert v. Rapid Payroll, Inc.*,
23
    No. 02-4144, 2005 WL 6172659 (C.D. Cal. Feb. 9, 2005) ....................................................... 17

24

*Hilton v. Hallmark Cards*,
25
    599 F.3d 894 (9th Cir. 2010) ....................................................................................................... 7

26

*Immunocept, LLC v. Fulbright & Jaworski LLP*,
    504 F.3d 1281 (Fed. Cir. 2007) ................................................................................................... 8

27

*Levi Strauss & Co. v. Aqua Dynamics Sys.*,
28
    No. 15-cv-04718, 2016 U.S. Dist. LEXIS 46738 (N.D. Cal. Apr. 6, 2016) ............................... 8

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028

- ii -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified School Dist.*,
   34 Cal. 4th 960 (2004).......................................................................................................16

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013)..............................................................................................9

*Makaeff v. Trump Univ., LLC*,
   736 F.3d 1180 (9th Cir. 2013)............................................................................................9

*MedImmune, Inc. v. Centocor, Inc.*,
   409 F.3d 1376 (Fed. Cir. 2005).........................................................................................13

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002).........................................................................................................10

*Park v. Bd. of Trs. of Cal. State Univ.*,
   2 Cal. 5th 1057 (2017).......................................................................................................10

*Parrish v. Latham & Watkins*,
   3 Cal. 5th 767 (2017)...........................................................................................................1

*Racine & Laramie, Ltd. v. Dep't of Park & Recreation*,
   11 Cal. App. 4th 1026 (1992)......................................................................................17, 18

*Roberts v. McAfee, Inc.*,
   660 F.3d 1156 (9th Cir. 2011)...........................................................................................10

*S. B. Beach Props. v. Berti*,
   39 Cal. 4th 374 (2006).......................................................................................................19

*Sheley v. Harrop*,
   9 Cal. App. 5th 1147 (2017)..............................................................................................19

*Storek & Storek Inc. v. Citicorp Real Estate*,
   100 Cal. App. 4th 44 (2002)..............................................................................................18

*TransCore LP v. Elec. Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009).........................................................................................13

*Travelers Cas. Ins. Co. v. Hirsh*,
   831 F.3d 1179 (9th Cir. 2016)............................................................................................9

*U.S. Valves, Inc. v. Dray*,
   212 F.3d 1368 (Fed. Cir. 2000)...........................................................................................8

*Varian Med. Sys., Inc. v. Delfino*,
   113 Cal. App. 4th 273 (2003)..............................................................................................1

*Verinata Health, Inc. v. Ariosa, Inc.*,
   830 F.3d 1335 (Fed. Cir. 2016).............................................................................6, 7, 8, 9

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION

10279028

- iii -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1 (1995)............................................................................................................18

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004)............................................................................................14

**Statutes**

Cal. Civ. Code § 1668 ...........................................................................................................16

Cal. Civ. Code § 3360 ...........................................................................................................14

Cal. Code Civ. Proc. § 425.16.....................................................................................1, 6, 9, 19

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION

10279028

- iv -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

## I.    **INTRODUCTION**

More than three years after Ariosa filed its Counterclaims, after a motion to dismiss, a motion to compel arbitration, two trips to the Federal Circuit, and extensive fact and expert discovery, Illumina now moves to dismiss Ariosa's Counterclaims pursuant to California Code of Civil Procedure section 425.16 (the "anti-SLAPP" procedure). As the California Supreme Court has explained, the anti-SLAPP procedure's purpose is to enable defendants sued for exercising their First Amendment rights to "promptly rid themselves of meritless lawsuits" which lack "even minimal merit." *Varian Med. Sys., Inc. v. Delfino*, 113 Cal. App. 4th 273, 310 (2003), *rev'd on other grounds*, 35 Cal. 4th 180 (2005). Illumina's motion is entirely disconnected from both the purpose and requirements of the California anti-SLAPP procedure, and should be denied.

As an initial matter, the anti-SLAPP procedure is established by the California Code of Civil Procedure, and has no application to Ariosa's Counterclaims, which present issues of patent law and therefore arise under federal law. Illumina does not even address this dispositive issue.

Even if the Court could properly reach the merits of Illumina's anti-SLAPP motion, Illumina falls far short of demonstrating that Ariosa's claims lack "even minimal merit." As discussed in Ariosa's concurrently filed Opposition to Plaintiffs' Motion for Summary Judgment ("Opp. to Pls.' MSJ"), there are, at a minimum, genuine disputes of fact for the jury to decide. Illumina's failure to carry its burden on summary judgment mandates denial of the instant motion. *Parrish v. Latham & Watkins*, 3 Cal. 5th 767, 778 (2017) (denial of summary judgment establishes probable cause for bringing the claims).

The Sale and Supply Agreement ("SSA") that forms the basis for Ariosa's Counterclaims obligated Illumina to provide a three-year supply of Goods to be used in Ariosa's Harmony™ Prenatal Test, along with IP rights pertaining to Ariosa's use of the Goods. Those rights include an express license to Illumina's "Core IP" rights, as well as an express representation ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028
- 1 -
Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1    After Illumina acquired Verinata in 2013 and became a competitor to Ariosa, the Illumina-

2  Ariosa relationship significantly deteriorated. Illumina began sending a series of letters with

3  pretextual assertions that Ariosa was in breach of the SSA, and ultimately threatened Ariosa with

4  the possibility of termination (which would cut off Ariosa's supply of sequencers and reagents).

5  Then, the day after Ariosa announced the pricing for its forthcoming IPO, Illumina sued Ariosa for

6  infringement of the '794 patent in breach of the express and implied licenses to IP rights that

7  Illumina granted under the SSA. Both the pretextual assertions of breach and the filing of the

8  lawsuit clearly violate both the letter and the intent of the SSA, which required Illumina to provide

9  a three-year supply of the Goods along ██████████████████████████████████

10 ████████████████████

11    Illumina's argument that the SSA conferred no rights to the '794 patent because that patent

12 supposedly does not "pertain to" Ariosa's use of the goods supplied by Illumina has no merit. It

13 flies in the face of Illumina's own infringement contentions. Indeed, Illumina's infringement

14 expert *relies solely on Ariosa's use of Illumina's sequencers* to meet steps (f) and (g) of claim 1,

15 the only independent claim of the '794 patent. To meet the other steps of the claim, Illumina's

16 expert relies on Ariosa's DANSR library preparation assay, the purpose of which is to produce

17 *inputs to Illumina's sequencers*. As such, the notion that the '794 patent, as Illumina itself has

18 interpreted it, does not "pertain to" Ariosa's use of Illumina's sequencers lacks credibility.

19 Ariosa's claims that Illumina breached the SSA and the covenant of good faith and fair dealing

20 thus significantly exceeds the "potential merit" bar to overcome an anti-SLAPP challenge.

21    Ariosa respectfully requests that Illumina's anti-SLAPP motion be denied.

22 **II.    FACTUAL AND PROCEDURAL BACKGROUND**

23    Ariosa began development of a non-invasive prenatal screening test for fetal chromosomal

24 abnormalities, the Harmony™ Prenatal Test, in 2008. As part of this process, Ariosa raised capital

25 from a number of investors, including Illumina. Ariosa entrusted Illumina with detailed technical

26

27

28

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028                                                          - 2 -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1  and financial documents and information about its product, in its capacity as an investor. Ex.[1] 45

2  (AD-VER-00019238) at -249.

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ███████████████████  Ariosa demonstrated how the sequencing-based Harmony Prenatal test

6  worked, and gave Illumina a presentation that contained highly confidential and propriety

7  information about Ariosa's technology. *Id*. Ariosa disclosed████████████████████████

8  ███████  details concerning its target enrichment assay, which it called "DANSR" ("Digital

9  ANalysis of Selected Regions"). Ex. 48 (ILMNA00241191) at -202-205; Ex. 41 (Song Tr.) at

10 140:3-7, 142:15-143:3. The DANSR assay produces a library of amplification products that were,

11 in turn, the inputs to an Illumina sequencer for DNA analysis. Ex. 48 (ILMNA00241191) at -203.

12 As Ariosa's CEO Ken Song testified, at this meeting, Ariosa was "actually providing details

13 around what the format of the assay is and showing where—where it is, at least in the overall

14 testing process." Ex. 41 (Song Tr.) at 143:13-144:16; *see also* Ex. 22 (Stuelpnagel Tr.) at 226:11-

15 227:15 (testifying that Ariosa informed Illumina that the assay was its "go-forward strategy" for

16 the commercial Harmony product); 228:23-229:21 (same).

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████

24

25 ————————————————

26 [1] "Ex." herein refers to the exhibits (nos. 1-19) filed with the 9/1/2017 Declaration of Sandra L. Haberny, D.I. 404 and 409, and the exhibits (nos. 20-68) concurrently filed with the 9/15/2017

27 Declaration of Sandra L. Haberny In Support Of Ariosa Diagnostics, Inc.'s Oppositions To Plaintiffs And Counterclaim Defendants Illumina, Inc. And Verinata Health, Inc.'s Motion For

28 Summary Judgment And Illumina, Inc.'s Anti-SLAPP Motion.

1    Illumina also was a key supplier to Ariosa. Before Harmony's commercial launch in 2012,

2  Ariosa and Illumina entered into the SSA. Under the SSA, Ariosa agreed to purchase Illumina's

3  sequencing equipment and chemical reagents to be used in performing the Harmony Test

4  (collectively referred to as the "Goods"). Ex. 44 (SSA) at §§ 1-2. ████████████████

5  ████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████ *Id*. In return, Illumina was required,

7  for the three-year term, to provide the Goods and a related bundle of IP rights, for the use of the

8  Goods in the Customer Field of Use, defined in pertinent part as "commercial services for the cell-

9  free detection of fetal chromosomal abnormalities . . . using DNA sequencing . . ." *Id.* § 1.

10    The SSA divides all intellectual property rights that pertain to the use of the Goods into

11  two categories: "Core IP Rights" and "Secondary IP Rights." *Id.*, §§ 3(a), 4(a). The SSA defines

12  "Core IP Rights" as "those Illumina Intellectual Property Rights that pertain to the Goods (and use

13  thereof in accordance with their Documentation) other than Secondary Illumina IP Rights in

14  Goods[.]" *Id.*, § 1. The SSA grants Ariosa the right to use "Core IP Rights in Goods to use and

15  import . . . the Goods only in the Customer Field of Use." *Id.*, § 3(a).

16    The SSA defines "Secondary IP Rights" as "the secondary Illumina Intellectual Property

17  Rights that pertain to the Goods (and use thereof) only with regard to particular field(s) or

18  application(s), and are not common to the Goods in all applications and fields." *Id.* Ariosa had the

19  responsibility to "identify and ensure" that it had any such necessary rights from third parties and

20  Illumina. *Id.*, § 4(a). Satisfying that responsibility was of significant importance to Ariosa. Ariosa

21  accordingly ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████Ariosa did not need an additional

23  license from Illumina to Secondary IP Rights for its Harmony test.████████████████

24  ████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████

28

1 [REDACTED]

2 [REDACTED]

3    Thus, with respect to all use by Ariosa that "pertain[s] to the Goods," the SSA grants

4 Ariosa either an express license or [REDACTED]

5 [REDACTED] does not require a license to any Illumina IP. As noted above, under the

6 SSA, "Core" and "Secondary" IP Rights in Goods together encompass "Illumina Intellectual

7 Property Rights that *pertain to the Goods (and use thereof)*." *Id.*, § 1 (emphasis added).

8    A year after executing the SSA, on January 7, 2013, Illumina acquired Verinata Health,

9 Inc., and entered into the non-invasive prenatal testing ("NIPT") market as a competitor to Ariosa.

10 Thereafter, Illumina began making pretextual claims of breach against Ariosa, including an

11 allegation that Ariosa was not permitted to report fetal sex to patients. Ex. 51 (ILMNA00242150-

12 2151, dated 1/10/14). Illumina knew this assertion had no merit; indeed, fetal sex was necessarily

13 revealed by testing for aneuploidy of sex chromosomes, which was expressly permitted under the

14 SSA [REDACTED]. *See* Ex. 44 (SSA) at § 1

15 ("Customer Field of Use" defined as "cell-free detection of fetal chromosomal aneuploidies

16 having a length greater than one megabase"); Ex. 48 (ILMNA00241191) at -208 [REDACTED]

17 [REDACTED]

18 [REDACTED] (emphasis added). The assertion therefore had no purpose

19 other than to intimidate Ariosa and disrupt Ariosa's operations. Illumina also claimed, without

20 basis and in [REDACTED], that Ariosa did not have

21 the proper intellectual property licenses necessary to use the Goods. Ex. 51 (ILMNA00242150-

22 2151, dated 1/10/14).

23    On April 24, 2014, Ariosa made an SEC filing that announced pricing for its IPO. Within

24 hours of this filing, Illumina sent a letter to Ariosa stating that it was revoking all offers to amend

25 the SSA and raising the specter of potential termination. Ex. 52 (AD-VER-01270726) [REDACTED]

26 [REDACTED]

27 [REDACTED] The letter made no

28 mention of the '794 patent, nor indicated any need for Ariosa to license the patent. The next day,

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028
- 5 -
Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1  Illumina filed the '794 infringement action and issued a press release to maximize the public

2  impact. The timing of Illumina's actions was not a coincidence. Illumina intended to, and did,

3  disrupt Ariosa's operations and its plans to launch an IPO. Now embroiled in a patent

4  infringement lawsuit brought by its sole supplier of sequencers and reagents, Ariosa was forced to

5  cancel its IPO, ultimately depressing the company's value.

6  On June 11, 2014, Ariosa filed its Counterclaims for breach of contract and the implied

7  covenant of good faith and fair dealing. Case No. 14-cv-01921, D.I. 26-4. Illumina moved to

8  dismiss the Counterclaims, including pursuant to the SSA's arbitration provision. *Id.*, D.I. 31. In

9  response, Ariosa invoked the exception to the SSA's arbitration provision, which provides that

10 disputes regarding "issues of scope, infringement, validity and/or enforceability of any Intellectual

11 Property Rights" are nonarbitrable. *Id.*, D.I. 35-5; *see also* Case No. 3:12-cv-05501, D.I. 251. This

12 Court denied Illumina's motion, holding that the Counterclaims are subject to the exception

13 because they "unambiguously relate to issues of infringement of a patent." Case No. 14-cv-01921,

14 D.I. 40, at 5. Illumina appealed to the Federal Circuit, which initially found that it did not have

15 appellate jurisdiction. Illumina then re-filed the same arguments as a motion to compel arbitration.

16 Case No. 3:12-cv-05501, D.I. 250, at 5-6. This Court denied Illumina's motion on the same

17 grounds as it had denied the motion to dismiss, D.I. 266, and Illumina again appealed. On July 26,

18 2016, the Federal Circuit affirmed this Court's order. *Verinata Health, Inc. v. Ariosa, Inc.*, 830

19 F.3d 1335 (Fed. Cir. 2016).

20 On September 1, 2017, more than a year after the Federal Circuit's opinion, more than

21 three years after the Counterclaims were originally filed, and after several years of fact and expert

22 discovery, Illumina filed its anti-SLAPP motion.

23 **III.    THE ANTI-SLAPP PROCEDURE IS INAPPLICABLE TO ARIOSA'S CLAIMS,**
24 **WHICH ARE SUBJECT TO EXCLUSIVE FEDERAL JURISDICTION**

25 Illumina's motion ignores the threshold issue: whether California Code of Civil Procedure

26 section 425.16 is applicable to the challenged Counterclaims. It is not. As Illumina admits, this

27 Court has already held that the "Counterclaims are inextricably linked to questions of patent

28 infringement." Mtn. at 7:5-9. The portion of Illumina's Counterclaims based on Illumina's filing

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028                                      - 6 -
Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1   of the instant suit in violation of the SSA's IP provisions require the resolution of substantial

2   patent issues, including the scope of the licensed patents, and are thus federal question claims.[2]

3   Accordingly, California's state law anti-SLAPP procedure is simply inapplicable. *See Hilton v.*

4   *Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("the anti-SLAPP statute does not apply to

5   federal law causes of action"); *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 63 F. Supp.

6   2d 1127, 1130 (N.D. Cal. 1999) ("Globetrotter argues that the anti-SLAPP statute should be

7   applied to federal question claims . . . This argument is not supported by the *Erie* rationale").[3]

8        Supreme Court precedent dictates that a state law claim "arises under" federal law if a

9   patent issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of

10  resolution in federal court without disrupting the federal-state balance approved by Congress."

11  *Gunn v. Minton*, 568 U.S. 251, 257-58 (2013) (purely hypothetical patent issues in malpractice

12  claims not "substantial" as they did not impact scope or validity and would not "stand as binding

13  precedent for any future patent claim"). *Id*. at 264. Each element of the *Gunn* test is met here.

14        ***First***, the Federal Circuit has already held that the Counterclaims necessarily raise

15  questions of patent scope. *Verinata*, 830 F.3d at 1341 ("The counterclaims all rise or fall on the

16  scope determination of licensed intellectual property rights[.]"). Further, this Court previously

17  held that the Counterclaims at issue "unambiguously relate to issues of infringement of a patent."

18  Case No. 14-cv-01921, D.I. 40, at 5; Case No. 3:12-cv-05501, D.I. 266, at 5; *see also Verinata*,

19  830 F.3d at 1340 ("Ariosa's counterclaims are not about licensing or a license defense in the

20

21

22  _____

[2] Ariosa's claim for breach of the covenant of good faith and fair dealing based on Illumina's
23  pretextual assertions of breach in connection with fetal sex determination, in contrast, does not
    arise under federal law. However, as discussed in Section IV.B, Illumina does not contend that this
24  claim is subject to the anti-SLAPP procedure, nor can it.

[3] The *Erie* doctrine takes its name from *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The "twin
25  aims" of *Erie* are to ensure that state law is applied in federal court where to do otherwise would
    encourage "forum-shopping" and "inequitable administration of the laws." *Hanna v. Plumer*, 380
26  U.S. 460, 468 (1965); *see also Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 462 n.8 (1996).
    These considerations are not relevant to claims arising under patent law, which can only be filed in
27  federal court. Notably, none of the cases cited by Illumina involved application of the anti-SLAPP
    procedure to federal question claims.

28

1  abstract"); *id*. at 1341 ("Illumina fails to articulate how to separate as discrete the patent

2  infringement issues involved in the contract counterclaims.").

3      The Counterclaims allege breach by Illumina of its express license to "Core IP" and

4  representation that Illumina ████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████████

6  ████████████████████  As discussed further below and in the parties' summary judgment briefs, this

7  dispute turns on whether the '794 patent "pertains to" Illumina's Goods and Ariosa's use thereof.

8  *See* Pls.' MSJ [D.I. 395] at 9-11, 13-14; *See* concurrently-filed Ariosa Diagnostics, Inc.'s

9  Opposition to Plaintiffs and Counterclaim Defendants Illumina, Inc. and Verinata Health, Inc.'s

10  Motion for Summary Judgment, at § III.B. The scope of Illumina's Core and Secondary IP Rights,

11  including how the '794 patent claims relate to Illumina's sequencers and reagents and Ariosa's use

12  thereof, thus are at the center of the Counterclaims.

13      **Second**, these patent questions are disputed, as the Federal Circuit also confirmed.

14  *Verinata*, 830 F.3d at 1340 ("Illumina put the scope of licensed patent rights in issue by suing

15  Ariosa for patent infringement."). Indeed, a review of Illumina's pending Motion for Summary

16  Judgment indicates that Illumina disputes virtually every aspect of Ariosa's Counterclaims.

17      **Third**, the issues in dispute—scope of the licensed patents and relationship of the '794

18  patent to Ariosa's use of the Goods—are substantial patent issues. *U.S. Valves, Inc. v. Dray*, 212

19  F.3d 1368, 1372 (Fed. Cir. 2000) (claim for beach of license subject to exclusive federal

20  jurisdiction where infringement issues implicated); *Immunocept, LLC v. Fulbright & Jaworski*

21  *LLP*, 504 F.3d 1281, 1285 (Fed. Cir. 2007) ("As a determination of patent infringement serves as

22  the basis of § 1338 jurisdiction over related state law claims, so does a determination of claim

23  scope."), *limited on other grounds by Gunn*, 568 U.S. at 258 (limiting the use of hypothetical

24  claim analysis as the basis for federal jurisdiction); *Levi Strauss & Co. v. Aqua Dynamics Sys*.,

25  No. 15-cv-04718, 2016 U.S. Dist. LEXIS 46738, at *13-14 (N.D. Cal. Apr. 6, 2016) (breach of

26  license agreement claim presented a federal question); *Alexsam, Inc. v. Green Dot Corp*., No. 15-

27  cv-05742, 2015 U.S. Dist. LEXIS 134689, at *9 (C.D. Cal. Sept. 28, 2015) ("Just as in *Dray*, any

28  determination of whether the Agreement was breached will require the Court to interpret the []

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028                                                          - 8 -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1  patents"). Unlike the patent-related issues in *Gunn* which were purely "hypothetical," here the

2  issues are directly linked to the live infringement claims at issue, and will have a real-world

3  impact on the asserted patents.

4         **Fourth**, the issues are "capable of resolution in federal court." Indeed, it is law of the case

5  that resolution of the Counterclaims in federal court is proper. Case No. 14-cv-01921, D.I. 40;

6  Case No. 3:12-cv-05501, D.I. 266; *Verinata*, 830 F.3d at 1340-41.

7         Because the Counterclaims at issue on this motion do not arise under state law, but rather

8  are subject to exclusive federal jurisdiction, California state anti-SLAPP procedure is simply

9  inapplicable. Illumina's motion can and should be rejected at the outset on this basis.[4]

10 **IV.**     **ILLUMINA DOES NOT SATISFY THE ANTI-SLAPP STANDARD**

11        Even if the anti-SLAPP procedure were applicable to Ariosa's Counterclaims arising under

12 federal law (which it is not), Illumina falls far short of the anti-SLAPP standard.

13        A motion pursuant to California Code of Civil Procedure section 425.16 involves a two-

14 step process: "First, the moving defendant must make a prima facie showing 'that the act or acts of

15 which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or

16 free speech under the United States or California Constitution in connection with a public issue,'

17 as defined in the statute." *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 420 (2016) (citation

18 omitted). "If the defendant makes this initial showing of protected activity, the burden shifts to the

19 plaintiff at the second step to establish a probability it will prevail on the claim." *Id.* "The plaintiff

20 need only state and substantiate a legally sufficient claim [for which t]he plaintiff's evidence is

21

22 [4] Ariosa also preserves for appeal the question of whether the anti-SLAPP procedure ever can be
   properly applied in federal court and, if so, whether it is improper to do so piecemeal without

23 retaining key features such as the 60-day provision. *Travelers Cas. Ins. Co. v. Hirsh*, 831 F.3d
   1179, 1186 (9th Cir. 2016) (Gould, J., concurring) ("anti-SLAPP motion has no proper place in

24 federal court in light of the Federal Rules of Civil Procedure"); *Makaeff v. Trump Univ., LLC*, 715
   F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J. concurring) ("The California anti-SLAPP statute

25 cuts an ugly gash through [the FRCP's] orderly process" by implementing new timelines,
   standards, and awards of attorneys' fees); *id.* at 275 (Paez, J., concurring) ("California's anti-

26 SLAPP statute is 'quintessentially procedural,' and its application in federal court has created a
   hybrid mess that now resembles neither the Federal Rules nor the original state statute"); *Makaeff*

27 *v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of
   *en banc* hearing joined by Kozinski, C.J., Paez, J., and Bea, J.).

28

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028
   - 9 -
Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1  accepted as true [and] the defendant's evidence is evaluated to determine if it defeats the plaintiff's

2  showing as a matter of law." *Id.* (citations omitted). "Only a [claim] that satisfies both prongs of

3  the anti-SLAPP statute—*i.e.*, that arises from protected speech or petitioning and lacks even

4  minimal merit—is a SLAPP, subject to being stricken under the statute." *Navellier v. Sletten*, 29

5  Cal. 4th 82, 89 (2002); *see Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1061 (2017)

6  (holding same).

7       As explained in Ariosa's concurrently-filed Opposition to Plaintiffs' Motion for Summary

8  Judgment, the Counterclaims clearly possess "potential merit"—all that is required to defeat an

9  anti-SLAPP motion. *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011). A court

10  may not grant an anti-SLAPP motion unless "as a matter of law, the defendant's evidence

11  supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim."

12  *Id.* (citation omitted). "In the anti-SLAPP context, 'probability [of success]' is a low bar." *Id.* at

13  1163. Ariosa significantly exceeds this bar.

14       **A.      Ariosa's Contract Counterclaims**

15       The elements of breach of contract are (1) a valid contract, (2) substantial performance by

16  the plaintiff, (3) the defendant's failure to perform or action in violation of the contract, and (4) a

17  showing that such failure or action was a substantial factor in harm to the plaintiff. CACI Jury

18  Instruction No. 303.

19       Here, there is no dispute that the first two elements are met. The SSA is a valid contract.

20  Mtn. at 9. Further, Ariosa has substantially performed its obligations under the SSA, which were

21  to purchase ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 44 (SSA) at §§ 1-2.

23  Mtn. at 10 ("Ariosa continued to purchase . . . the Goods until the Agreement expired by its terms

24  in January 2015"). As discussed below, and in further detail in the Opposition to Illumina's

25  Motion for Summary Judgment, hereby incorporated by reference, the two disputed elements are

26  also met.

27

28

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028                                               - 10 -
Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

**1. Illumina Breached The SSA's Express License And Representations Regarding "Illumina Intellectual Property"**

The SSA defines "Core IP Rights" as "those Illumina Intellectual Property Rights that pertain to the Goods (and use thereof in accordance with their Documentation) other than Secondary Illumina IP Rights in Goods[.]" Ex. 44 (SSA) at § 1. The SSA expressly grants Ariosa a license to "Core IP Rights in Goods to use and import . . . the Goods only in the Customer Field of Use." *Id.*, § 3(a).

The SSA defines "Secondary IP Rights" as "the secondary Illumina Intellectual Property Rights that pertain to the Goods (and use thereof) only with regard to particular field(s) or application(s), and are not common to the Goods in all applications and fields." *Id.* Ariosa had the responsibility to "identify and ensure" that it had any necessary rights from third parties and Illumina. *Id.*, § 4(a). Ariosa specifically negotiated █████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████

As noted above, under the SSA, "Core" and "Secondary" IP Rights in Goods together encompass all "Illumina Intellectual Property Rights that ***pertain to the Goods (and use thereof)***" in the Customer Field of Use. *Id.*, § 1 (emphasis added). Thus, with respect to all use by Ariosa that "pertain[s] to the Goods (and use thereof)," the SSA grants Ariosa either an express license or a representation ██████████████████████████████████████████████████ There is no dispute the '794 patent fell within the definition of "Illumina Intellectual Property" as of the effective date of the SSA. *See* Case No. 3:14-cv-01921, D.I. 1 at ¶¶ 3, 12-13. Further, there is no dispute that ██████████████████████████████████████████████████ ███████████████████████████

Thus, the question presented is whether the '794 patent "pertains to" Ariosa's "use" of Illumina's HiSeq instrument and reagents. If it does, then Ariosa either had an express license to the patent (as "Core IP Rights in Goods") or a representation ████████████████████████

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028

- 11 -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1   ███████████████████████████████████████████████████ Ariosa

2 believes that the '794 patent is best understood as falling under "Core IP."[5] If the '794 patent is

3 instead "Secondary IP," however, Ariosa's claims are equally meritorious. In either case, Illumina

4 wrongfully sued Ariosa on a patent to which it was already granted rights pursuant to the SSA.

5       Illumina's own infringement contentions and expert report demonstrate that the '794 patent

6 does in fact "pertain to" Ariosa's use of Illumina's sequencers under Illumina's own infringement

7 theory, and therefore necessarily constitutes Core IP or Secondary IP Rights. Claim 1 of the '794

8 patent, the only independent claim in the patent, claims a method comprising steps (a) through (g).

9 In its infringement contentions and expert report, Illumina claims that aspects of Ariosa's "target

10 region enrichment" process and "detection (sequencing)" process, ***using Illumina sequencers***,

11 together satisfy method steps (a) through (f) of the '794 patent. In particular, Illumina's

12 infringement expert, Dr. Cooper, ***relies solely on Ariosa's use of Illumina's sequencers*** to meet

13 steps (f) and (g). Ex. 40 (Cooper Rpt.) at ¶¶ 127 (alleging that step (f) performed by "sequencing

14 on an Illumina HiSeq instrument" ███████████████████ 136 (alleging that

15 for step (g), "the sequence identities of each amplicon are read via Illumina sequencing

16 chemistry"). To meet the other steps of the claim, Dr. Cooper relies on Ariosa's target region

17 enrichment, which comprises the DANSR library preparation assay. This assay provides the input

18 to the Illumina sequencer. According to Dr. Cooper, it is precisely the DANSR assay's enrichment

19 and amplification—the purpose of which is to produce amplification products for ultimate

20 sequencing in an Illumina sequencer—that Illumina contends practices the '794 patent. *See, e.g.*

21 Ex. 40 (Cooper Rpt.) at ¶¶ 77, 82-106, 116, 121-125, 126-143; *see also* Opp. to Pls.' MSJ at

22

23

---

24 [5] "Core IP Rights" are defined negatively: "Illumina Intellectual Property Rights that pertain to the Goods (and use thereof . . .) *other than Secondary Illumina IP Rights*." Ex. 44 (SSA) § 1

25 (emphasis added). In its co-pending Motion for Summary Judgment, Illumina maintains that the '794 patent "does not even fall under th[e] category" of "Secondary IP Rights." [D.I. 395] at 13-

26 14. The sole basis for Illumina's argument that the '794 patent is not a Core IP Right is that it supposedly does not "pertain to" Ariosa's "use" of the Goods at all. *See* Ex. 62 (Illumina's

27 Response to Interrogatory No. 13) (█████████████████████████████████████

28 ████████████████████████████████████████████

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP           Case No. 3:12-cv-05501-SI
MOTION                                             Case No. 3:14-cv-01921-SI
10279028                  - 12 -                  Case No. 3:15-cv-02216-SI

1     § III.B.1. In summary, the '794 patent, by Illumina's own assertions in its infringement action,

2     "pertain[s] to" the Illumina HiSeq instrument.

3         The plain language of the SSA is further bolstered by the negotiation history. ███

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ███████████████████████████

16         In summary, Ariosa has presented significantly more than the requisite minimal evidence

17 that the SSA includes a license to the '794 patent and representation that Ariosa had all necessary

18 license rights to the Illumina Intellectual Property, including the '794 patent.

19         Illumina violated these terms of the SSA by, among other things, filing this lawsuit.

20 Illumina's only counterargument made in its anti-SLAPP motion is an assertion that a license

21 would not prohibit it from filing suit. Mtn. at 10. Illumina cites no authority for this proposition,

22 and it is directly contrary to Federal Circuit law. "[A] license is, by its nature, an agreement not to

23 litigate. A licensor agrees to receive royalties or other consideration from the licensee in exchange

24 for a covenant not to sue or disturb the licensee's activities." *MedImmune, Inc. v. Centocor, Inc.*,

25 409 F.3d 1376, 1379 (Fed. Cir. 2005), *vacated on other grounds*, 549 U.S. 1163 (2007). *See also*

26 *TransCore LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) ("As

27 a threshold matter, a patent license agreement is in essence nothing more than a promise by the

28 licensor not to sue the licensee.").

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028
- 13 -
Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

## 2. Ariosa Was Harmed By Illumina's Breaches

Illumina's damages arguments fare no better than its attempts to evade the plain language of the SSA. As an initial matter, there is no obligation for a party opposing an anti-SLAPP motion to "produce evidence supporting each theory of damages asserted in connection with the plaintiff's claims." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 906 (2004) ("An anti-SLAPP-suit motion is not a vehicle for testing the strength of a plaintiff's case, or the ability of a plaintiff, so early in the proceedings, to produce evidence supporting each theory of damages asserted in connection with the plaintiff's claims. It is a vehicle for determining whether a plaintiff, through a showing of minimal merit, has stated and substantiated a legally sufficient claim."). Further, even had Ariosa not suffered substantial, quantifiable monetary damages—which it certainly has—Ariosa would still be entitled to move forward on its breach of contract claim because a litigant aggrieved by a breach of contract is entitled at the very minimum to nominal damages. *See* Cal. Civ. Code § 3360 ("When a breach of a duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages.").

Moreover, Illumina does not even mention, much less present evidence contradicting, the extensive damages opinions presented by Ariosa's expert, Ryan Sullivan. *See* Ex. 53 (Sullivan Rpt.) at ¶¶ 133-144 ███████████ 145-176 ███████████ 177, 195-195 (excerpts from ███████████ 196-201 ███████████ 202, 208-209 (excerpts from ███████ ██████ 212. Instead, Illumina asserts only conclusory, scattershot arguments about Ariosa's damages theories. To the extent they have any merit, they go to the weight of the evidence. Notably, Illumina does not argue that Mr. Sullivan's opinions are inadmissible, and did not file a *Daubert* motion seeking to challenge any of his opinions.

Further, Ariosa has provided evidence demonstrating that it had promising partnership prospects with multiple third party partners prior to April 24, 2014. *Id*. at ¶ 140. These partnerships fell through after the filing of the lawsuit, as a result of the prospective partners' hesitation over becoming dependent on Ariosa, given the lawsuit and its implications. *Id*. at ¶¶ 69, 141; Ex. 54 (Puckett Tr.) at 165:14-166:1, Ex. 55 (Mullarkey Tr.) at 169:23-173:9; Ex. 56 (Whitson Tr.) at 164:2-166:6, 170:14-21. Indeed, it is axiomatic that the filing of litigation and

1  threat to cut off the sole source of supply for a component chills a third party's eagerness to

2  associate with the target of a lawsuit. Illumina's conclusory argument that "there were numerous

3  and more substantial reasons why potential partners . . . were hesitant to enter a partnership with

4  Ariosa," Mtn. at 10, is at best an argument for the jury, and not one that entitles Illumina to

5  overcome Ariosa's evidence as a matter of law.

6       Similarly, Ariosa's evidence demonstrates that Illumina's misconduct resulted in a need to

7  abandon use of the Goods and accelerate its transition from the sequencing platform. Illumina's

8  argument that ███████████████████████████████████████████████████████

9  Mtn. at 10 (citing out-of-context deposition testimony). These events roughly coincided with

10  Illumina's ███████████ only because Illumina's violations of the SSA commenced ██

11  ███████████████████████████████████████████████. In fact, until Illumina

12  breached the SSA's IP provisions by filing this lawsuit, ████████████████████

13  █████████████████████████████████. *See* Ex. 53 (Sullivan Rpt.) at ¶ 75; Ex.

14  41 (Song Tr.) at 223:14-19, 224:20-225:5; Ex. 57 (Pls' Answer to Third Amended Counterclaims)

15  at¶¶ 34-35.

16       Illumina also argues that Ariosa cannot demonstrate damages associated with the IPO

17  cancellation because ████████████████████████████████ Mtn. at 10 (emphasis

18  removed). This is untrue. Ariosa ██████████████████████████████████████

19  █████████████████████████ *cancelled* it once the lawsuit was filed. *See, e.g.*, Ex. 41 (Song

20  Tr.) at 195:2-10, 197:6-25, 200:8-17; Ex. 58 (Gilliam Tr.) at 123:4-12, 155:8-10. ████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████ resolution of

23  a patent infringement lawsuit is more complex. ███████████████████████

24  ████████████████████████████████████████████████████████████████

25  Ariosa could not guarantee a quick resolution to any infringement allegations, which would

26  materially limit any IPO it launched while litigating with its sole supplier. It is clear that Ariosa's

27  decision to *cancel* its IPO was as a direct result of Illumina's infringement lawsuit under the '794

28  patent in breach of the license rights to that patent Illumina granted Ariosa under the SSA.

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028
- 15 -
Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1    Finally, Illumina argues that section 18 of the SSA precludes Ariosa from recovering any

2    damages. That argument fails on multiple levels.

3    As an initial matter, Illumina simply ignores that, under the SSA, Ariosa paid Illumina at

4    least ████████ for Goods that it ultimately had to abandon after Illumina breached the licenses

5    it provided Ariosa by suing Ariosa for infringement based on its use of those very same Goods for

6    its Harmony test. Ex. 59 (Yee Decl.) at ¶ 3. These are indisputably ████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████████████████ There is

9    absolutely nothing in the limitation of liability clause that could foreclose recovery of those sums.

10   Further, under Illumina's apparent interpretation that section 18 bars *all* recovery of

11   damages, even reimbursement for the payments made for the Goods, section 18 is unenforceable.

12   This would render Illumina's obligations to deliver Goods wholly illusory. Further, so interpreted,

13   section 18 is unenforceable under California Civil Code section 1668, which provides that "[a]ll

14   contracts which have for their object, directly or indirectly, to exempt anyone from responsibility

15   for his own . . . willful injury to the person or property of another . . . are against the policy of the

16   law." *BlueGem Security, Inc. v. Trend Micro Inc.*, No. 09-1492, 2010 WL 11505702 at *7-8 (C.D.

17   Cal. June 8, 2010) (emphasis in original); *id.* at *11 (striking limitation of liability clause in

18   contract case as unlawful under section 1668 because it "effective[ly] exempt[s defendant] from

19   any true liability for wrongdoing."); *Civic Ctr. Dr. Apts. Ltd. P'ship v. S.W. Bell Video Servs.*, 295

20   F. Supp. 2d 1091, 1106 (N.D. Cal. 2003) (holding that section 1668 applies to breach of contract

21   claims and finding issues of fact as to enforceability of limitation of liability provision). A

22   reasonable factfinder could readily conclude that Illumina ████ injured Ariosa's business ████

23   ████████████████████████████████████████████████ *See*

24   Opp. to Pls.' MSJ at III.A.3.

25   Even if section 18 is deemed enforceable, it should be interpreted as merely imposing a

26   *cap* on damages. Section 18 states that ████████████████████████

27   ████████████████████████████████████████████████ Ex. 44

28   (SSA) at § 18. As noted above, while the SSA was in effect, Ariosa paid Illumina at least ████

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028                                                - 16 -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1    ████████ under the agreement. Ex. 59 (Yee Decl.) at ¶ 3. At a minimum, then, Ariosa may seek at

2    least ████████ in damages from Illumina under its counterclaims. Illumina's cited authority is

3    in agreement. *Hebert v. Rapid Payroll, Inc.*, No. 02-4144, 2005 WL 6172659, at *7 (C.D. Cal.

4    Feb. 9, 2005) (limitation of liability clause "limits Plaintiff's claimable damages to the *amount of*

5    *payments made* by Plaintiff to [defendant]") (emphasis added).

6    **3.    Ariosa's Covenant Of Good Faith And Fair Dealing Claim**

7        A claim for breach of covenant of good faith and fair dealing requires a showing of (1) a

8    valid contract, (2) performance or excuse for non-performance by the party asserting the breach,

9    (3) unfair interference of the rights conferred on the non-breaching party under the contract by the

10   breaching party, and (4) damages. CACI Jury Instruction No. 325. For the reasons discussed

11   above in connection with the breach of contract counterclaim, there is undisputed evidence

12   establishing all elements.

13       Illumina's argument that Ariosa "cannot prove that Illumina unfairly interfered with

14   Ariosa's right to receive the benefits of the Agreement" has no merit. The evidence reflects that

15   Illumina specifically and intentionally undermined the requirements and purpose of the SSA. Via

16   its pretextual assertions of breach culminating in its April 24, 2015 letter and its filing of the '794

17   litigation the very next day, Illumina intentionally frustrated the purpose of the SSA and the rights

18   Illumina granted Ariosa thereunder.

19       Illumina contends that there can be no breach as it never terminated Ariosa's right to

20   purchase Goods. This misses the point. The SSA provided for more than just a simple transfer of

21   sequencers and related products—it also involved the transfer of attendant rights needed to *use*

22   those products in the Harmony test. Illumina—which had become a competitor of Ariosa's after

23   acquiring Verinata—intentionally frustrated Ariosa's ability to use its sequencers for the Harmony

24   test, for which Ariosa had bargained and paid Illumina ████████ Illumina's actions clearly

25   frustrated the purpose and intent of the SSA and was motivated by Illumina's desire to drive

26   Ariosa from the marketplace, rather than cooperate. *See Racine & Laramie, Ltd. v. Dep't of Park*

27   *& Recreation*, 11 Cal. App. 4th 1026, 1031-32 (1992) (party breached covenant by frustrating

28   purpose of contract); *Airis SFO, LLC v. City & Cty. of S.F.*, No. A121855, 2010 WL 3687508, at

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028

- 17 -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1  *12 (Cal. Ct. App. Sept. 22, 2010) (party breached covenant by undertaking actions that were

2  "contrary to the contract's purposes and the parties' legitimate expectations"). Therefore, at the

3  very minimum, Ariosa is entitled to damages at least in the amount it paid Illumina.

4      Illumina's assertion that its "filing of the '794 patent infringement action is in no way

5  prohibited by the express terms of the Agreement" also fails. As discussed above, Illumina's filing

6  of the infringement action breached the express license and representations of sections 3(a) and

7  ███████████████  Further, the covenant of good faith and fair dealing does not require breach of an

8  express provision. Rather, California recognizes a covenant of good faith and fair dealing *implied*

9  into every contract. *Storek & Storek Inc. v. Citicorp Real Estate*, 100 Cal. App. 4th 44, 55 (2002).

10  This covenant is "based on general contract law and the long-standing rule 'that neither party will

11  do anything which will injure the right of the other to receive the benefits of the agreement.'"

12  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995). Indeed, the covenant is useful in exactly

13  situations as here, where a party attempts to "frustrate the other party's rights to the benefits of the

14  contract" even though they may claim that the conduct does "not technically transgress[] the

15  express covenant[s]" of the contract. *Racine & Laramie*, 11 Cal. App. 4th at 1031-32. Thus, even

16  if the SSA did not expressly prohibit Illumina's conduct (and it does), the express license and

17  representations that Ariosa's use of the Goods did not require any additional licenses would

18  plainly be frustrated by Illumina's conduct, including its filing of the '794 patent litigation.

19      **B.    Illumina Has Failed To Show That The Good Faith And Fair Dealing Claim
            Arises Solely From Protected Activity**

20

21      Illumina acknowledges that Ariosa's cause of action for breach of the covenant of good

22  faith and fair dealing arises only *in part* from Illumina's filing of this litigation. *See, e.g.,* Mtn. at 8

23  ("While Ariosa also alleges that Illumina breached the covenant of good faith and fair dealing 'by

24  asserting pre-textual claims of 'breach' of the Agreement' . . ."). Illumina presents no argument

25  that Illumina's pretextual claims of breach based on Ariosa's reporting of fetal sex determination

26  have anything to do with protected petitioning activity. Thus, Illumina has waived any argument

27  that Ariosa's claim based on that activity is subject to the anti-SLAPP procedure.

28

1    Illumina's attempt to lump all of Ariosa's claims of breach together merely because they

2    are captioned collectively as claims for Breach of the Covenant of Good Faith and Fair Dealing is

3    improper. Under California law, the anti-SLAPP procedure is applied separately to individual

4    "claims" or "instance[s] of alleged wrongdoing," whether or not they are collectively pled

5    together. *See Baral v. Schnitt*, 1 Cal. 5th 376, 394 (2016); *Sheley v. Harrop*, 9 Cal. App. 5th 1147,

6    1170 (2017). Where a cause of action is based on both protected and unprotected activity, the

7    claim based on protected activity may be subjected to an anti-SLAPP motion, but "[t]he remainder

8    of the cause of action shall remain undisturbed." *Id*. at 1173. In *Sheley*, the plaintiffs (and cross-

9    complaint defendants) "asserted that the act of filing a lawsuit was a protected activity within the

10   meaning of section 425.16 . . . [and] that the filing of the lawsuit was a 'core component[]' of the

11   cross-complaint, and observed that allegations related to the filing and maintaining the lawsuit

12   appeared in each cause of action." *Id*. at 1155.

13   **V.    ILLUMINA'S REQUEST FOR ATTORNEYS' FEES IS IMPROPER**

14   Even assuming away, arguendo, the numerous reasons discussed above that Illumina's

15   motion has no merit, Illumina's request for fees is also improper. A prevailing defendant on an

16   anti-SLAPP motion may seek only the reasonable fees and costs associated with the cost of its

17   filing of its anti-SLAPP motion. *See S. B. Beach Props. v. Berti*, 39 Cal. 4th 374, 381 (2006)

18   ("Consistent with this [Legislative purpose of the statute], the fee 'provision applies only to the

19   motion to strike, and not to the entire action.'") (quoting Sen. Com. on Judiciary, Analysis of Sen.

20   Bill No. 1264 (1991-1992 Reg. Sess.) as introduced Jan. 6, 1992, at 5). Accordingly, Illumina's

21   request for "the fees and costs in defending against the Counterclaims," Mtn. at 15, is clearly

22   improper. Indeed, Illumina does not—because it cannot—identify *any* fees uniquely attributable to

23   its anti-SLAPP motion to strike the counterclaims, as opposed to fees for other work that it

24   voluntarily chose to engage in over the last three years in which the counterclaims have been

25   pending.

26

27

28

ARIOSA'S OPPOSITION TO ILLUMINA'S ANTI-SLAPP
MOTION
10279028                                              - 19 -

Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

1 | VI.     **CONCLUSION**

2       For the reasons set forth above, Illumina's motion should be denied.

3

4 Dated: September 15, 2017             Respectfully submitted,

5                                         IRELL & MANELLA LLP

6

7                                By:   */s/ Sandra L. Haberny*

8                                     Sandra L. Haberny
                                    Attorneys for Defendant and Counterclaim-
                                    Plaintiff ARIOSA DIAGNOSTICS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28