UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VERINATA HEALTH, INC., et al.,

   Plaintiffs,

  v.

ARIOSA DIAGNOSTICS, INC, et al.,

   Defendants.

Case No.  12-cv-05501-SI

**ORDER RE MOTION TO PRECLUDE TESTIMONY OF JAMES MALACKOWSKI**

Re: Dkt. No. 418

   Defendant Ariosa Diagnostics, Inc. moves to exclude the testimony of plaintiffs Illumina, Inc. and Verinata Heath, Inc.'s damages expert, James Malackowski.  Dkt. No. 418.  Plaintiffs filed an opposition, and defendant filed a reply.  Dkt. Nos. 430, 446.  After reviewing the parties' arguments and materials, the Court DENIES the motion.

## LEGAL STANDARD

   Federal Rule of Evidence 702 permits expert testimony where "(a) a scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002) ("[Rule 702] consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.").

United States District Court
Northern District of California

The trial court is vested with the authority to make a "preliminary assessment of whether reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir. 2011) ("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."). The court is instructed to focus "on the principles and methodology" employed by the expert and "not the conclusions they generate." *Daubert*, 509 U.S. at 595; *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*") ("[T]he test under *Daubert* is not the correctness of the expert's conclusions, but the soundness of his methodology."). "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car*, *Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

When assessing the reliability component of an expert's testimony, courts are encouraged to examine "(1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community." *Daubert*, 509 U.S. at 593-594. It is important to note, however, that "the test of reliability is *flexible* and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks and citation omitted). "The 'list of factors was meant to be helpful, not definitive,' and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the 'particular circumstances of the particular case.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Kumho Tire*, 526 U.S. at 150-152). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* (citing *Daubert,* 509 U.S. at 596).

**DISCUSSION**

Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."   35 U.S.C. § 284.   "The two 'alternative categories of infringement compensation' under section 284 are 'the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1330 (Fed. Cir. 2015) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).   Defendant now seeks to preclude testimony from plaintiff's damages expert James Malackowski, arguing that his methodology was unreliable in determining both a reasonable royalty and lost profit damages.

**I.   Reasonable Royalty**

Malackowski's report offers a reasonably royalty calculation based on a per-test, rather than percentage of sales, basis for residual damages not captured in his lost profits analysis. Malackowski Report (Dkt. No. 405-24) at 116.   Defendant asks the Court to preclude Malackowski's reasonable royalty opinion for failure to apportion the value of the patented features from the unpatented features.[1]

Under 35 U.S.C. § 284, "damages awarded for patent infringement must reflect the value attributable to the infringing features of the product, and no more." *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.* ("*CISRO*"), 809 F.3d 1295, 1301 (Fed. Cir. 2015) (internal quotation marks omitted).   "This principle—apportionment—is the governing rule where multi-component products are involved." *Id.* (internal quotation marks omitted).   "Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Id.*   However, the entire market rule is a narrow

---

[1] Defendant's motion also complains generally that the reasonable royalty opinion is based on dissimilar license agreements and forecasted sales data, rather than defendant's actual revenue. However, defendant does not appear to move to preclude this testimony, and specifies in its reply that it is not moving to exclude licenses.  Reply at 5.  In any event, the Court agrees with plaintiffs that these complaints go to the weight rather than admissibility of Malackowski's testimony.

United States District Court
Northern District of California

exception under which "[a] patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013) (citation omitted).  "In the absence of such a showing, principles of apportionment apply." *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

"In each case, district courts must assess the extent to which the proffered testimony, evidence, and arguments would skew unfairly the jury's ability to apportion the damages to account only for the value attributable to the infringing features." *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1228 (Fed. Cir. 2014).  "[C]are must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product" because "disclosure of the end product's total revenue cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *CISRO*, 809 F.3d at 1302 (internal quotation marks omitted).  "Although the Federal Circuit has recognized that 'there may be more than one reliable method for estimating a reasonable royalty,' it has generally found that a reliable apportionment analysis should be conducted by adjusting the royalty base, not the royalty rate." *Fitness Anywhere LLC v. WOSS Enters. LLC*, No. 14-cv-1725-BLF, 2017 U.S. Dist. LEXIS 31505, at *34 (N.D. Cal. Mar. 6, 2017) (collecting cases; internal citations omitted).  "[T]he essential requirement for reliability under *Daubert* is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *CISRO*, 809 F.3d at 1301 (internal quotation marks omitted).  "This does not mean that an expert must always apportion; instead, the expert remains free to determine that this 'incremental value' and the value for the entire product are one in the same." *Fitness Anywhere*, 2017 U.S. Dist. LEXIS 31505, at *35.

Here, defendant asserts that Malackowski failed to apportion the value of the FORTE algorithm and other unspecified, unpatented features. Malackowski's report stated that

apportionment was not required, but in assessing the thirteenth *Georgia-Pacific* factor,[2] Malackowski stated:

> I recognize that Ariosa has also made contributions to the success of its accused NIPT products. For example, these contributions relate to aspects of the development of the product, validation testing, sales efforts, the normal business risks incurred, etc. I understand that Ariosa contends that value is also contributed by the FORTE algorithm and other aspects of the accused NIPT products that are not disclosed by the Patents-in-Suit.

> I note, however, that this apportionment between the contributions to the accused product from the patent-in-suit and the contributions to the accused product from the accused infringer would have been considered by the parties to the various agreements referenced throughout this report. As a result, this apportionment has largely already been taken into consideration through the selection of the quantitative royalty indicators that I have referenced.

> In order to be conservative and give full credit to Ariosa for its contributions, however, I find that this factor would tend to favor Ariosa in the hypothetical negotiations.

Malackowski Report at 112. Additionally, plaintiffs assert that apportionment of the royalty base is unnecessary because the patents-in-suit "are directed to virtually every aspect of the Accused Products" and cite several portions of their technical expert's report discussing the FORTE algorithm. Plaintiffs claim that "FORTE is part and parcel of the infringing Harmony Test and carries out infringing steps for both patents." Opp'n at 8. Because at the very least it is disputed whether there are unpatented features requiring apportionment, the Court declines to exclude Malackowski's reasonable royalty opinion at this stage. However, the Court may revisit this issue if evidence at trial shows the Harmony Test includes unpatented features for which apportionment is required..

## II. Lost Profits

Defendant argues that Malackowski's opinion on lost profits should be excluded for three reasons: (1) he improperly quantified each plaintiff's lost sales; (2) his economic analysis of the

---

[2] This refers to *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), which sets out fifteen factors bearing upon a hypothetically-negotiated reasonable royalty.

"but for" market is flawed; and (3) he failed to demonstrate an absence of non-infringing alternatives.

"To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citation omitted). "Once this reasonable probability is shown, the burden shifts to the infringer to show that the 'but for' causation analysis is unreasonable under the specific circumstances." *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1269 (Fed. Cir. 2008). The *Panduit* four-factor test is a useful, but non-exclusive, way for a patentee to show "but-for" causation. *Mentor Graphics Corporation v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017) (citation omitted); *see Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152 (6th Cir.1978). The *Panduit* test requires that a patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made. *Panduit*, 575 F.2d at 1156. "A showing under *Panduit* permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's *prima facie* case with respect to 'but for' causation." *Rite-Hite*, 56 F.3d at 1545 (citation omitted).

Here, to establish the first *Panduit* factor, Malackowski asserted that because the Harmony Test purportedly embodies the patents-in-suit, demand for the patented products is evidenced by the worldwide sales of the Harmony Tests. Malackowski Report at 49. For the second factor, Malackowski evaluated "potential design-arounds" to the patents-in-suit and "third-party non-infringing alternatives available in the market place." *Id.* at 50. Malackowski opines that "these potential alternatives do not constitute available commercially acceptable non-infringing alternatives to the [patents-in-suit] during the relevant periods." *Id.* For the third factor, Malackowski concludes that plaintiffs "either had, or could have acquired, sufficient capacity to manufacture and sell" the identified lost test units. *Id.* at 54-55. Finally, for the fourth factor, Malackowski offers a quantification of plaintiffs' lost profits.

United States District Court
Northern District of California

### A. Quantification of Lost Sales

Defendant makes several arguments to show that Malackowski's method of quantifying lost sales is flawed.  First, defendant argues that Malackowski impermissibly failed to quantify the specific sales lost by each plaintiff and does not quantify the lost profits attributable to each of the two patents.  In response, plaintiffs argue that both the '430 and '794 patents were integral to defendant's product, and the product could not have been offered in the form that it was without both patents.  Noting that Illumina eventually acquired Verinata, plaintiffs also contend that "all of the claimed lost profits are attributed to a parent and subsidiary, both of which are patentees, . . . have standing, . . . sold competing products or services, and . . . are parties to the litigation." Opp'n at 14.  Additionally, Malackowski's opinion already reflects a mechanism for separating the lost service fees and convoyed sales.  *See* Malackowski Report, Tables 21-22.  The Court finds that this is acceptable.

Next, defendant argues that Malackowski improperly included the lost profits of third parties by claiming revenue Illumina would have received under supply agreements with laboratories seeking to develop their own tests.  Plaintiffs assert that Illumina lost test fees and convoyed reagent sales because customers were purchasing infringing products from defendant instead of from Illumina's contracted partners.  Thus, plaintiffs argue they are not claiming lost profits on the sales of third parties, but lost profits on fees that Illumina itself did not receive because of the alleged infringement.

Defendant claims that this issue was addressed in *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365 (Fed. Cir. 2015), *judgment vacated on other grounds sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893 (2016).  In *Warsaw*, the plaintiff licensed its technology to related companies, who then paid royalties to the plaintiff on their sales. *Id.* at 1373.  The plaintiff argued that the defendant's infringement negatively affected those companies' sales, which in turn negatively affected the royalty payments made to plaintiffs.  *Id.* at 1376.  The Federal Circuit held that the lost royalty payments were not recoverable, stating that "[t]o be entitled to lost profits, we have long recognized that the lost profits must come from the lost sales of a product or service the patentee *itself* was selling."  *Id.* (emphasis added).  *Warsaw*

7

appears analogous to the circumstances here: plaintiffs argue that defendant's infringement negatively affected Illumina's contracted partners' sales, which in turn negatively affected the test fees paid to Illumina.  However, because the parties dispute whether lost test fees are equivalent to lost royalty revenue, the Court defers decision on whether plaintiffs may recover lost test fees until after hearing evidence on Illumina's agreements with third parties.

Lastly, defendant contends that a portion of the lost sales are foreign, and Illumina's overseas operations are conducted by and through foreign subsidiaries, which receive and reinvest all foreign revenue.  Defendant asserts that plaintiffs cannot recover the lost profits of Illumina's subsidiaries.  Plaintiffs dispute this contention, arguing that it was reasonable for Malackowski to conclude that plaintiffs would have processed the tests in the United States, or Illumina would have received a test fee from one of its partners for such tests.  The Court notes that if a portion of the estimated lost profits would have been captured by Illumina's subsidiaries, plaintiffs cannot claim those lost profits as their own.  *See Warsaw*, 778 F.3d at 1374 ("[a] patentee may not claim, as its own damages, the lost profits of a related company") (citing *Poly–America, L.P. v. GSE Lining Tech., Inc.,* 383 F.3d 1303, 1311 (Fed. Cir. 2004)).  However, because this contention is disputed in regard to whether the sales would have gone to Illumina's subsidiaries or Illumina itself, the Court defers decision until hearing evidence on whether Illumina captured profits on foreign sales.

### B. Economic Model of the "But For" Market

Defendant argues that Malackowski's analysis fails to provide a proper economic model of the "but for" market.  "The 'but for' inquiry . . . requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee 'would . . . have made.'"  *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (citation omitted).  The plaintiff must present "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Id*.  However, "[t]he patent holder does not need to negate *all* possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether.  The 'but for' rule

only requires the patentee to provide proof to a reasonable probability that the sale would have been made but for the infringement." *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984).

Defendant essentially contends that the analysis is improper because it is contrary to the law of demand. According to defendant, the analysis assumes that plaintiffs would have captured 100% of defendant's sales in the "but for" market. Defendant asserts that this is improper because Malackowski did not account for the price difference between the parties' products and improperly assumed that every customer would have bought plaintiff's product rather than electing to forego genetic testing or use one of the traditional (non-NIPT) screening tests. Additionally, defendant argues that it was a major contributor to the growth of the NIPT segment of the market, and Malackowski's analysis assumes that the market would have been exactly the same without defendant's contribution.

In response, plaintiffs note that Malackowski did not attribute 100% of defendant's sales to plaintiffs in the "but for" market. Plaintiffs further assert that Malackowski did consider the prices of different tests on the market, but concluded that the different prices would not have affected plaintiffs' ability to capture defendant's sales. Accordingly, they argue that Malackowski's assumption that price would not have affected purchasing decisions is a question as to the weight and not the admissibility of his opinion.

The Court finds that Malackowski has provided sufficient rationale of his "but-for" market opinion to withstand scrutiny under Federal Rule of Evidence 702. Whether that opinion is ultimately found credible is a question for the fact-finder.

### C. Non-Infringing Alternatives

"To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017). Defendant argues that plaintiffs have not met their burden of showing the absence of non-infringing alternatives. Defendant asserts that, as of today, no product on the market uses any

United States District Court
Northern District of California

feature of the '430 patent (including defendant and Verinata).  Similarly, defendant claims that the other competitors in the market do not use, and have never used, the '794 patent.  Lastly, defendant asserts that Malackowski provided no evidence for his assertion that these other alternatives would have infringed other patents (other than the fact that the third party competitors have supply agreements that include licenses to a patent pool).  Plaintiffs respond that although defendant may not now use the '430 patent, it does not change the fact that there was not an available alternative at the time of the alleged infringement of the '430 patent.  Additionally, plaintiffs argue that the other third party competitors in the market are paying patent license fees to use licensed patents and, thus, their products do not represent available non-infringing alternatives because if defendant had use them, defendant would have infringed other patents. The Court finds that defendant's objections go to the weight rather than the admissibility of the evidence, and declines to preclude such testimony.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion to preclude Malackowski's testimony.

**IT IS SO ORDERED**.

Dated:   January 4, 2018

SUSAN ILLSTON
United States District Judge