IRELL & MANELLA LLP
David I. Gindler (117824)
dgindler@irell.com
Alan J. Heinrich (212782)
aheinrich@irell.com
Lisa S. Glasser (223406)
lglasser@irell.com
Sandra L. Haberny (260977)
shaberny@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:     (310) 277-1010
Facsimile:     (310) 203-7199

Attorneys for Defendant and
Counterclaim-Plaintiff
ARIOSA DIAGNOSTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VERINATA HEALTH, INC.,<br><br>        Plaintiff and<br>        Counterclaim-Defendant,<br><br>vs.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>        Defendant and<br>        Counterclaim-Plaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| ILLUMINA, INC.,<br><br>        Plaintiff and Counterclaim-<br>        Defendant<br><br>vs.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>        Defendant and Counterclaim-<br>        Plaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Lead Case No. 3:12-cv-05501-SI
Case No. 3:14-cv-01921-SI
Case No. 3:15-cv-02216-SI

**ARIOSA DIAGNOSTICS, INC.'S
RENEWED MOTION TO PRECLUDE
THE TESTIMONY OF JAMES E.
MALACKOWSKI RE: ALLEGED LOST
TEST FEES**

Judge:  Hon. Susan Illston

1   ILLUMINA, INC.,                                )
                                                   )
2              Plaintiff and Counterclaim-         )
               Defendant                           )
3                                                  )
       vs.                                         )
4                                                  )
    ARIOSA DIAGNOSTICS, INC.,                      )
5                                                  )
               Defendant and Counterclaim-         )
6              Plaintiff.                           )
                                                   )
7   _____           )

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARIOSA'S RENEWED MOTION TO PRECLUDE THE
TESTIMONY OF JAMES E. MALACKOWSKI

On January 4, 2018, the Court ruled on Defendant Ariosa Diagnostic, Inc.'s ("Ariosa") Motion to Preclude the Testimony of James E. Malackowski, the damages expert for Plaintiffs Ilumina, Inc. and Verinata Health, Inc. (collectively, "Plaintiffs"). *See* D.I. 561. In its order, the Court deferred decision on a number of Ariosa's objections to Mr. Malackowski's method of calculating a reasonable royalty and lost profits because the Court perceived a dispute over certain facts, which, if proven true, would preclude Plaintiffs from presenting various aspects of Mr. Malackowski's opinions to the jury. *See, e.g., id.* at pp. 5, 8.

Among the facts that the Court identified as disputed was the issue of whether Plaintiffs' alleged lost test fees are properly characterized as royalties. *Id.* at p. 8. The Court "deferr[ed] decision" on this issue "until after hearing evidence on Illumina's agreements with third parties." *Id.* The Court, however, made clear that if the alleged lost test fees are royalties, they are not recoverable. *Id.* at p. 7. As the Court explained, the Federal Circuit specifically held in *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365 (Fed. Cir. 2015), that "lost royalty payments were not recoverable," because "[t]o be entitled to lost profits, . . . the lost profits must come from the lost sales of a product or service the patentee *itself* was selling." *Id.* (citing *Warsaw*, 778 F.3d at 1376).

The trial testimony of Dr. Jeffery Bird, who was an executive officer at Verinata and then at Illumina, confirms that test fees are not "a product or service" but rather are being presented by Illumina in this trial as being equivalent to royalties:

> **Q.** And this is referring to a **royalty opportunity**. So you're talking as Verinata to Illumina about selling Verinata to Illumina. What does royalty opportunity have [to] do with that?
> **A.** So we were having a discussion with Illumina about the idea that they could use our intellectual property to broadly make the test available, and that **they could receive a royalty or a per patient test fee from their customers**, as they – as they made that test available. One of the things that Jay and the management team were worried about was competing with their customers. And they did not necessarily want to be in the business of making and  selling the test the way Verinata was doing. And it seemed to be their preference, instead -- and we thought it was a reasonable idea, although it was a different business model than we had -- for us to potentially close the lab, and instead for them to license IP to lots of people to perform the tests. So this talks about financially what that might look like if you were to charge **a per-test fee, or you could also call it a royalty**.

1  Trial Tr. 235:24-236:18 (emphasis added).

2       Similarly, Dr. Nicholas Naclerio, another Illumina executive, also expressly presented the

3  test fees as royalties:

4       **Q.** Okay. And why do you prefer **the per-test fee structure for this large royalty
        – this large licensing program** that you just said is one piece of supplying the
5       equipment?

6       **A.** It's -- there are a lot of factors that go into it. I think at the end of the day, it's a
        relatively simple method. If – if – you know, **the alternatives are, we – we
7       calculate some kind of royalty based on sales … So the simple thing for us was
        just to say, "Look, we're going to get so much per test."**

8

9  Trial Tr. 458:23-459:16 (emphasis added).

10      Finally, Plaintiffs' counsel, when seeking to offer a document purporting to summarize

11 aspects of various Illumina Supply Agreements, again confirmed that Illumina is presenting the

12 Supply Agreement test fees as "royalties," stating **"we have many licensees who are paying per

13 test royalties**."  Trial Tr. 541:14-15 (emphasis added).

14      As the testimony from Drs. Bird and Naclerio and the arguments from Illumina's counsel

15 make clear, Illumina is affirmatively presenting in this trial the "test fees" charged to third parties

16 as "royalties." As this Court has already recognized, under *Warsaw*, the profits that a third party

17 allegedly would have realized and would have remitted to the plaintiff but for the defendant's

18 infringement are not collectable as lost profits. *Warsaw*, 778 F.3d at 1376; Dkt. 561 at pp. 7-8

19 ("*Warsaw* appears analogous to the situation here."). Thus, the portion of Mr. Malackoswki's lost

20 profits calculation that rests on Illumina's lost test fees cannot be presented to the jury. It is critical

21 that this issue be resolved now, before Mr. Malackowski testifies, as presenting the alleged lost

22 test fee theory will skew the damages horizon and confuse the jury. This is particularly important

23 given that Mr. Malackowski is separately presenting a "reasonable royalty" theory at trial. *See

24 Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1320 (Fed. Cir. 2011) (granting a new trial

25 after plaintiff's expert presented damages numbers to the jury that were based on legally flawed

26 theories because inaccurate numbers "cannot help but skew the damages horizon for the jury").[1]

27 _____

28      [1] Ariosa continues to object to other aspects of Mr. Malackowski's opinions as set forth in
   Docket No. 418, which are also contrary to law and also skew the damages horizon for the jury.
   The Court deferred ruling on the admissibility of testimony from Mr. Malackowski on other issues

1    In summary, by affirmatively presenting testimony from Dr. Bird that the "per-test fee . . .

2    could also [be] call[ed] . . . a royalty" and testimony from Dr. Naclerio that Illumina chose to

3    structure its profits as royalties, Illumina has resolved the issue that this Court previously

4    identified as open. Per Federal Circuit precedent and this Court's previous order, the testimony

5    from Drs. Bird and Naclerio and the arguments from Illumina's counsel render Mr.

6    Malackowski's lost profits damages calculation legally erroneous and mandate that Mr.

7    Malackowski be precluded from presenting these calculations to the jury. Ariosa therefore

8    respectfully requests that the Court make the decision that it previous deferred and prohibit Mr.

9    Malackowski from presenting lost profits calculations to the jury that include lost test fees.

10

11   Dated:  January 14, 2018                    Respectfully submitted,

12                                               IRELL & MANELLA LLP

13
                                                 By:  /s/ Sandra L. Haberny
14                                                    Attorneys for Defendant and Counterclaim-
                                                      Plaintiff ARIOSA DIAGNOSTICS, INC.
15

16

17

18

19

20

21

22

23

24

25

26

27   as well.  Ariosa expects to raise additional objections or seek other relief based on aspects of Mr.
     Malackowski's damages testimony that lack a proper evidentiary basis and should not be
28   considered or presented.