EDWARD R. REINES (Bar No. 135960)
edward.reines@weil.com
DEREK C. WALTER (Bar No. 246322)
derek.walter@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

ROBERT T. VLASIS III (admitted *pro hac vice*)
robert.vlasis@weil.com
WEIL, GOTSHAL & MANGES LLP
Washington DC Office
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Attorneys for Plaintiffs and Counterclaim Defendants
ILLUMINA, INC. and VERINATA HEALTH, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| VERINATA HEALTH, INC., <br><br>and<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY<br><br>  Plaintiffs and Counterclaim-Defendants,<br><br>  v.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>and<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>  Defendants and Counterclaim-Plaintiffs.<br><br>ILLUMINA, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>  Defendant. | Case No. 3:12-cv-05501-SI (consolidated with Case No. 3:14-cv-01921-SI and Case No. 3:15-cv-02216-SI)<br><br>**PLAINTIFF ILLUMINA, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT AS A MATTER OF LAW AS TO NO EXPRESS LICENSE**<br><br>Judge: Hon. Susan Illston |

1  ILLUMINA, INC.,
2              Plaintiff,
3       v.
4  ARIOSA DIAGNOSTICS, INC., AND ROCHE MOLECULAR SYSTEMS, INC.,
5              Defendants.

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the Court may practically hear before the Honorable Susan Illston, United States District Court, Northern District of California, 450 Golden Gate Ave., Courtroom 1, San Francisco, CA 94102, plaintiff Illumina, Inc. ("Illumina"), will and hereby does move for judgment as a matter of law that defendant Ariosa Diagnostics., Inc. ("Ariosa") has no express license to U.S. Patent No. 7,955,794 (the "'794 Patent") through the 2012 Sale and Supply Agreement between the parties.

This motion is based on this notice and supporting memorandum, the trial record, and such other matters of which the Court may take judicial notice.

## RELIEF REQUESTED

Illumina respectfully seeks an order that: (1) Ariosa was not granted an express license to the '794 Patent through the 2012 Sale and Supply Agreement between the parties; and (2) that the verdict form not contain a question giving the jury the option of finding that Ariosa had an express license.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The trial record firmly establishes Ariosa's lack of an express license to the '794 Patent. The only document Ariosa relies upon is the 2012 Sale and Supply Agreement between the parties. But that document is an agreement to buy and sell products—it is not a license for Ariosa to use Illumina's patents *carte blanche*. While the Agreement does provide Ariosa with Core IP Rights, such rights only extend to Ariosa's use of the HiSeq sequencers and reagents it purchased from Illumina. That is because such patent rights must pertain to the good sold and must not be common to the goods in all applications and fields. Other products not purchased from Illumina or products that Ariosa developed itself—such as its "home brew" for the Harmony™ product—are not covered by this grant of rights under the plain language of the Agreement. Contract interpretation is for the Court. Illumina is therefore entitled to judgment as a matter of law that Ariosa has no express license to the '794 Patent.

## II. LEGAL STANDARDS

Rule 50(a) provides for judgement as a matter of law where "a party has been fully heard on an issue during jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "A party is entitled to judgement as a matter of law if, under the governing law, there can be but one reasonable conclusion as to the verdict, and that is a finding in favor of the moving party." *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-04990, 2012 WL 3222237, at *1 (N.D. Cal. Aug. 8, 2012) (citing *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001)). In reviewing a motion for judgement as a matter of law, "the Court must draw all reasonable inferences in favor of the nonmoving party, and determine whether reasonable minds could come to a single conclusion in favor of the moving party." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2014 WL 4643947, at *1 (N.D. Cal. Sept. 17, 2014) (citing *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)).

## III. ARGUMENT

### A. The '794 Patent Is Not Expressly Licensed Because It Does Not "Pertain To" The Goods Ariosa Purchased

The 2012 Sale and Supply Agreement is a supply agreement for DNA sequencing goods. *See* Trial Ex. 615 at 1-3, Ex. A.  Section 3(a) of the Agreement states in pertinent part: "[T]he purchase of Goods under this Agreement confers on Customer the non-exclusive, non-transferable, personal, non-sublicensable right under **Core IP Rights in Goods** to use and import (only from Illumina, its Affiliates, or their authorized distributors) the Goods only in the Customer Field of Use." *Id.* at § 3(a) (emphasis added).  Thus, to obtain an express license, Ariosa must establish that the '794 patent is "Core IP"

The Agreement defines "Core IP Rights" as "Illumina Intellectual Property Rights that ***pertain to the goods*** (and use thereof in accordance with their Documentation) ***other than Secondary Illumina IP Rights in Goods***, which are expressly excluded from Core IP Rights in Goods." *See id*. at § 1 (emphasis added).  Thus, Core IP, unlike the Secondary IP, covers patents that are necessary—not optional—to use the Illumina sequencers and reagents. *See, e.g.,* Trial Tr. (1/17/2018) at 1160:8-19 (explaining that "[C]ore IP is really the IP that a customer would need that's necessary for an inherent use in the use of the products that they're buying with the Supply Agreement. So it pertains back to those goods, and it's required for use of those – those products.").

Mr. Naclerio conclusively confirmed at trial that the '794 Patent does not pertain to Illumina's sequencers.  The '794 Patent thus cannot be Core IP.  As Mr. Naclerio explained at trial, "rights pertaining to the goods" means Ariosa obtained only a right to use Illumina's sequencers to sequence.  *See* Trial Tr. (1/10/2018) at 444:19-445:13; *see also id.* at 532:19-533:3 ("[Y]ou have the right to use the product in accordance with the directions, period."); *see also id.* at 533:6-15 ("There's no grant of a license that you can use for anything but using our products according to the directions.").  As Mr. Naclerio explained, "clearly you don't need the '794 patent to run the sequencer."  *See* Trial Tr. (1/10/2018) at 448:21-449:8.  He further elaborated: "The '794 patent doesn't apply to the product they bought, the sequencer.  The '794 patent applies to a

library prep product, which they didn't buy."[1]   *See id.* at 534:15-535:4.  Thus, because the '794 Patent does not pertain to the sequencers, and because Ariosa did not buy anything that the '794 Patent pertains to, no rights in the '794 patent were conveyed.  This makes sense: there would be no reason for Illumina to give a purchaser of goods the rights to IP that are unrelated to the goods the purchaser is actually buying.

Ariosa argues that sequencing is an infringing step of the '794 Patent, so the '794 Patent necessarily "pertains to" the sequencers it purchased.  This argument falls flat.  Simply because it was possible for Ariosa to use an Illumina sequencer to perform a generic "detection" step of the '794 Patent does not mean that this patent "pertains" to the Goods.  The '794 Patent is agnostic as to the method of performing the detection steps—and does *not* include sequencing as a claim step. Indeed, Ariosa's own expert admitted that the '794 Patent is not necessary to use an Illumina sequencer and that it does not "pertain" to the Illumina DNA sequencers.  *See* Trial Tr. (1/18/2018) at 1448:25-1450:16:

> **Q.**  Now, with respect to the '794 patent, one more question, which is your understanding of the '794 patent -- that does not pertain to sequencers; right?
>
> **A.**  In the Abstract, no, it doesn't pertain too sequencers.

*See id.* at 1448:25-1449:3.

> **Q.**  Have you ever used an Illumina sequencer?
>
> **A.**  Yes, I have.
>
> **Q.**  Have you done it without using the Golden Gate approach?
>
> **A.**  Golden Gate is a different assay than what's involved in sequencing.

*See id.* at 1450:12-16.

The '794 Patent thus does not pertain to the goods that Illumina purchased and cannot be considered Core IP.

---

[1] Even if the '794 Patent *did* pertain to the sequencers, Ariosa still would not have rights to the '794 patent for library prep because Ariosa did not purchase library prep kits from Illumina—Ariosa instead made the homebrew kits on its own.  *See* Trial Tr. (1/10/2018) at 534:15-535:4.

### B. If The '794 Patent Were Somehow To "Pertain" To The Goods, It Is Secondary IP

Ariosa does not have an express license for the additional reason that if the '794 Patent were somehow to "pertain" to the goods, the '794 Patent is "Secondary IP," which the Agreement expressly excluded. Indeed, Core IP Rights in Goods are expressly defined to exclude "Secondary Illumina IP Rights in Goods." *See* Trial Ex. 615 at § 1. Secondary Illumina IP Rights in Goods are defined as "the secondary Illumina Intellectual Property Rights that pertain to the Goods (and use thereof) only with regard to particular field(s) or application(s), and are ***not common to the Goods in all applications and fields***." *See id.* (emphasis added). The '794 Patent is—most definitely—not common to the Illumina sequencers in all applications and fields. This is beyond debate. There are a blizzard of uses of the Illumina sequencers that have nothing to do with the specific DNA analysis methods of the '794 patent. As just one example, it is undisputed that Illumina and virtually every other provider of DNA sequencing-based non-invasive prenatal testing uses random sequencing techniques that, unlike Ariosa's DANSR technique and the '794 patent, do not target specific sequences.

Notably, as explained by Illumina's expert, Ariosa has repeatedly attempted to distinguish itself from such random sequencing techniques on the basis of the targeting advantages offered by the '794 patent. Thus, "Secondary IP Rights in Goods" are rights for specific applications of Illumina's sequencing equipment purchased under the Agreement. For instance, with regard to the Illumina DNA sequencing goods purchased by Ariosa, Secondary IP Rights in Goods are rights for specific applications of those ***sequencers***, such as non-invasive prenatal testing using DNA sequencing, which will only be applicable when one uses Illumina's sequencer for particular purposes or in particular ways.

### C. No Additional Rights Were Conveyed

Ariosa does not have an express license because the Agreement is clear no additional rights were conveyed. For example, Section 3(c) explicitly confirms that Illumina did *not* convey any other rights. *See* Trial Ex. 615 at § 3(c). Mr. Naclerio repeatedly confirmed this at trial. *See* Trial Tr. (1/10/2018) at 445:17-25; *id*. at 441:17-443:4 (explaining that Illumina gave Ariosa "rights to

use our sequencer, ***but that we weren't giving up any other rights***." (emphasis added)).

### D.  Ariosa Knew The '794 Patent Was Not Core IP

Mr. Naclerio confirmed at trial that at the time the Agreement was negotiated, Illumina made clear to Ariosa that Illumina was not authorizing Ariosa to develop and use a homebrew system that infringed Illumina's patents, such as those in the '794 patent family. *See* Trial Tr. (1/10/2018) at 444:19-445:13; *see also id.* at 448:21-449:8 (explaining that Ariosa chose not to buy Illumina's library prep kits and thus received no rights to library prep). Thus, not only is the '794 Patent clearly not licensed, Ariosa *knew* it would not be licensed when it signed the Sale and Supply Agreement.

### E.  Even If Ariosa Had An Express License, It Expired Long Ago

Finally, even if there somehow was an express license grant in the Agreement, any and all such licenses terminated when the Agreement ended in 2015 and Ariosa ceased buying Goods from Illumina. Indeed, any licenses in the Agreement are incident to Ariosa's purchase of Goods from Illumina—once those purchases stopped, so too did Ariosa's "license."

## IV.  CONCLUSION

For the foregoing reasons as well as the reasons Illumina has previously set forth in its prior submissions to the Court, Illumina respectfully seek an order that Ariosa does not have an express license to the '794 Patent.

| | |
|---|---|
| 1  Dated: January 22, 2018 | Respectfully submitted, |

                                            WEIL, GOTSHAL & MANGES LLP

                                            By:   */s/ Edward R. Reines*
                                                           Edward R. Reines

                                            *Attorneys for Plaintiffs and Counterclaim Defendants*
                                            ILLUMINA, INC. and VERINATA HEALTH, INC.