EDWARD R. REINES (Bar No. 135960)
edward.reines@weil.com
DEREK C. WALTER (Bar No. 246322)
derek.walter@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

ROBERT T. VLASIS III (admitted *pro hac vice*)
robert.vlasis@weil.com
WEIL, GOTSHAL & MANGES LLP
Washington DC Office
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Attorneys for Plaintiffs and Counterclaim Defendants
VERINATA HEALTH, INC. and ILLUMINA, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| VERINATA HEALTH, INC., <br><br>and<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY<br><br>Plaintiffs and Counterclaim-Defendants,<br><br>v.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>and<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>Defendants and Counterclaim-Plaintiffs. | Case No. 3:12-cv-05501-SI (consolidated with Case No. 3:14-cv-01921-SI and Case No. 3:15-cv-02216-SI)<br><br>**PLAINTIFF ILLUMINA, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGEMENT AS A MATTER OF LAW THAT ARIOSA IS BARRED FROM CHALLENGING VALIDITY PURSUANT TO THE DOCTRINE OF ASSIGNOR ESTOPPEL**<br><br>Judge: Hon. Susan Illston |
| ILLUMINA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>Defendant. | |

1  ILLUMINA, INC.,
2              Plaintiff,
3       v.
4  ARIOSA DIAGNOSTICS, INC., AND ROCHE MOLECULAR SYSTEMS, INC.,
5              Defendants.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ............................................................................................................. 1

I. INTRODUCTION .......................................................................................................... 2

II. LEGAL STANDARD .................................................................................................... 2

    A. Judgement as a Matter of Law ........................................................................... 2

    B. Assignor Estoppel .............................................................................................. 3

    C. Inventorship ....................................................................................................... 4

III. ARIOSA IS BARRED FROM CHALLENGING THE VALIDITY OF THE '794 PATENT PURSUANT TO THE DOCTRINE OF ASSIGNOR ESTOPPEL .................... 4

    A. No Reasonable Jury Could Find That Ariosa Is Not In Privity With Drs. Stuelpnagel and Oliphant ................................................................................... 4

    B. Drs. Stuelpnagel And Oliphant Owned An Undivided Interest In The Application That Led To The '794 Patent And Assigned Their Interest To Illumina Such That Assignor Estoppel Applies ................................................ 6

    C. No Reasonable Jury Could Find That Drs. Stuelpnagel And Oliphant Are Not Inventors ..................................................................................................... 8

        1. Drs. Stuelpnagel And Oliphant Are Presumptive Inventors ................... 9

        2. The Evidence Presented At Trial Confirms That Drs. Stuelpnagel And Oliphant Are Inventors ................................................................. 9

    D. Even If Drs. Stuelpnagel And Oliphant Invented Only Allele-Specific Extension And Ligation, They Are Still Inventors .......................................... 12

    E. Drs. Stuelpnagel And Oliphant Have Never Before Denied His Inventorship ..................................................................................................... 13

IV. CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brocade Comm'ns Sys., Inc. v. A10 Networks, Inc.*,
  No. 10-CV-03428-LHK, 2012 WL 2326064 (N.D. Cal. June 18, 2012) .................................. 3, 5

*Carroll Touch v. Electro Mechanical Sys.*,
  15 F.3d 1573 (Fed. Cir. 1993) ............................................................................................... 6, 8

*Caterpillar Inc. v. Sturman Indus., Inc.*,
  387 F.3d 1358 (Fed. Cir. 2004) ............................................................................................. 4, 9

*Cedarapids, Inc. v. Johnson Crushers Int'l, Inc.*,
  No. 3:02:1243, 2005 WL 2086755 (M.D. Tenn. Aug. 26, 2005) .............................................. 8

*Diamond Sci. v. Ambico*,
  848 F.2d 1222 (Fed. Cir. 1998) ...................................................................................... 3, 5, 6, 7

*E.E.O.C. v. Go Daddy Software, Inc.*,
  581 F.3d 951 (9th Cir. 2009) ..................................................................................................... 3

*Eagle Comtronics, Inc. v. Ne. Filter Co.*,
  No. 90-CV-573, 1991 WL 247551 (N.D.N.Y. Nov. 22, 1991) ............................................... 5, 8

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) .................................................................................................. 4

*Ethicon Inc. v. U.S. Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998) .................................................................................................. 7

*Hess v. Advanced Cardiovascular Sys., Inc.*,
  106 F.3d 976 (Fed. Cir. 1997) ................................................................................................... 4

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
  946 F.2d 821 (Fed. Cir. 1991) ................................................................................................... 3

*Kreepy Krauly U.S.A., Inc. v. Sta-Rite Indus., Inc.*,
  152 F.3d 949 (Fed. Cir. 1998) ................................................................................................... 8

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-5341, 2014 WL 4643947, (N.D. Cal. Sept. 17, 2014) ................................................... 3

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017) ................................................................................................. 3

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
  150 F.3d 1374 (Fed. Cir. 1998) ................................................................................................. 3

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
  No. 08-04990, 2012 WL 3222237 (N.D. Cal. Aug. 8, 2012) .................................................... 3

*Nortel Networks Inc. v. Foundry Networks, Inc.*,
  No. 01-CV-10442-DPW, 2003 WL 26476584 (D. Mass. Mar. 24, 2003) ............................. 7, 8

*Sewall v. Walters*,
  21 F.3d 411 (Fed. Cir. 1994) ..................................................................................................... 4

*Shamrock Technologies, Inc. v. Med. Sterilization, Inc.*,
    903 F.2d 789 (Fed. Cir. 1990) .................................................................................................. 5

*Univ. of Pittsburg of Commonwealth Sys. of Higher Educ. v. Hendrick*,
    Civ. A. No. 04-CV-9014, 2008 WL 8627085 (C.D. Cal. June 9, 2008) ...................................... 4

*Vitronics Corp. v. Conceptronic, Inc.*,
    No. C-91-696-L, 1992 WL 515321 (D.N.H. July 20, 1992) ........................................................ 5

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
    274 F.3d 1276 (9th Cir. 2001) .................................................................................................... 3

**Rules**

Fed. R. Civ. P. 50(a). ........................................................................................................................ 2

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the Court may practically hear before the Honorable Susan Illston, United States District Court, Northern District of California, 450 Golden Gate Ave., Courtroom 1, San Francisco, CA 94102, plaintiff Illumina, Inc. ("Illumina"), will and hereby does move for judgment as a matter of law that Ariosa Diagnostics, Inc. ("Ariosa") is barred from challenging the validity of U.S. Patent No. 7,955,794 (the "'794 Patent") pursuant to the doctrine of assignor estoppel.

This motion is based on this notice and supporting memorandum, the trial record, and such other matters of which the Court may take judicial notice.

# RELIEF REQUESTED

Illumina respectfully seeks an order that bars Ariosa from challenging the validity of the '794 Patent pursuant to the doctrine of assignor estoppel.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Ariosa infringes the '794 Patent with its Harmony prenatal diagnostic test. Two key developers of Harmony, John Stuelpnagel and Arnold Oliphant, are named inventors of the '794 Patent, which they duly assigned to their former employer, Illumina. They did so voluntarily, attesting under oath that they were inventors. After leaving Illumina, both helped to found Ariosa. Now, years after assigning their invention to Illumina, Drs. Stuelpnagel and Oliphant seek to undo that history, asking the Court to find their work a nullity. But because both inventors are in privity with Ariosa, the doctrine of assignor estoppel prohibits Ariosa from challenging the validity of the '794 Patent.

Ariosa's only response to this bar is a contrived argument that neither person actually invented the '794 Patent. This argument ignores that for assignor estoppel to apply, all that matters is that Drs. Stuelpnagel and Oliphant assigned away their rights in the '794 Patent to Illumina. Even so, Ariosa cannot prove that they are not inventors. Neither Drs. Stuelpnagel nor Oliphant—both listed on the face of the '794 Patent—ever challenged their inventorship until Illumina accused Ariosa of infringement. And neither witness provided any testimony clearly and convincingly establishing they are not now inventors. To the contrary, their endless wavering on the stand regarding what they did and did not contribute falls far short of the heavy burden they bear. Their sudden change of tune on inventorship is simply an argument of convenience—they want their more recent employer, Ariosa, to challenge the validity of the very patent they never previously denied inventing. But because they indisputably contributed to the invention of the '794 Patent, as the evidence at trial confirmed, Illumina is entitled to judgment as a matter of law that Ariosa is precluded from challenging its validity. No reasonable jury could find otherwise.

## II. LEGAL STANDARD

### A. Judgement as a Matter of Law

Rule 50(a) provides for judgement as a matter of law where "a party has been fully heard on an issue during jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "A party is

entitled to judgement as a matter of law if, under the governing law, there can be but one reasonable conclusion as to the verdict, and that is a finding in favor of the moving party." *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-04990, 2012 WL 3222237, at *1 (N.D. Cal. Aug. 8, 2012) (citing *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). In reviewing a motion for judgement as a matter of law, "the Court must draw all reasonable inferences in favor of the nonmoving party, and determine whether reasonable minds could come to a single conclusion in favor of the moving party." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2014 WL 4643947, at *1 (N.D. Cal. Sept. 17, 2014) (citing *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)).

### B.     Assignor Estoppel

"Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent applicable) from later contenting that what was assigned is a nullity. The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor." *Diamond Sci. v. Ambico*, 848 F.2d 1222, 1224 (Fed. Cir. 1998). The estoppel also bars infringers who avail themselves "of the inventor's knowledge and assistance to conduct infringement." *Brocade Comm'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 2326064, at *4 (N.D. Cal. June 18, 2012) (citing *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991)). "Without ***exceptional circumstances*** (such as an express reservation by the assignor of the right to challenge the validity of the patent or an express waiver by the assignee of the right to assert assignor estoppel), one who assigns a patent surrenders with that assignment the right to later challenge the validity of the assigned patent." *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1378 (Fed. Cir. 1998) (emphasis added).

The proper assignor estoppel inquiry is the patent's specification—not the patent claims asserted in the case, or even the patent claims more generally. *See Diamond Sci.*, 848 F.2d at 1226. The Federal Circuit recently "emphasized the continued vitality of the doctrine of assignor estoppel." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1283 (Fed. Cir. 2017) (affirming grant of summary judgment that assignor estoppel applies).

**C.     Inventorship**

"Determining inventorship is nothing more than determining who conceived the subject matter at issue, whether that subject matter is recited in a claim in an application or in a count in an interference." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994). "Patent issuance creates a presumption that the named inventors are the true and only inventors." *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004) (citing *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997)). A party may rebut this presumption by proving with clear and convincing evidence that he is not properly named as an inventor. *See Univ. of Pittsburg of Commonwealth Sys. of Higher Educ. v. Hendrick*, Civ. A. No. 04-CV-9014, 2008 WL 8627085, at *7 (C.D. Cal. June 9, 2008) (citing *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004)).

**III.    ARIOSA IS BARRED FROM CHALLENGING THE VALIDITY OF THE '794 PATENT PURSUANT TO THE DOCTRINE OF ASSIGNOR ESTOPPEL**

The only facts that would negate assignor estoppel concern (1) whether Stuelpnagel and Oliphant lacked privity with Ariosa, or (2) whether Stuelpnagel and Oliphant clearly and convincingly did not invent the '794 Patent. Their testimony at trial conclusively failed both tests, and no reasonable jury could have a legally sufficient evidentiary basis to find otherwise.

**A.     No Reasonable Jury Could Find That Ariosa Is Not In Privity With Drs. Stuelpnagel and Oliphant**

Privity among Ariosa, and Drs. Stuelpnagel and Oliphant is not disputed. *See* D.I. 517 at 21:9-10 ("It is undisputed that Ariosa is in privity with Stuelpnagel and Oliphant") (citing to Hearing Tr. (D.I. 486, 487), at 50:16; *see also* Hearing Tr. (D.I. 486, 487) at 50:14-20 ("THE COURT: Right. So do you agree that Oliphant and Stuelpnagel are in privity with Ariosa? [Ariosa]: So the privity is not being disputed. Yes, Your Honor.").

At trial, Dr. Stuelpnagel freely admitted that he was a founder and previously Executive Chairman at Ariosa. *See* Trial Tr. (1/11/2018) at 796:18-22 ("Q. Dr. Stuelpnagel, what was your position at Ariosa Diagnostics? A. I was the Executive Chairman at Ariosa. Q. Were you a founder at Ariosa? A. Yes, I was."). He acknowledged that it was he and Oliphant that worked

1  together to develop Ariosa's DANSR assay product. *See id.* at 725:12-15. There can be no
2  question that Stuelpnagel's role as founder of Ariosa and developer of its products conclusively
3  establishes privity with Ariosa. *See Vitronics Corp. v. Conceptronic, Inc.*, No. C-91-696-L, 1992
4  WL 515321, at *5 (D.N.H. July 20, 1992) ("there is no question that privity is established by
5  virtue of [the inventor-assignor's] position as founder, president and CEO of [Defendant]"); *Eagle*
6  *Comtronics, Inc. v. Northeast Filter Co.*, No. 90-CV-573, 1991 WL 247551, at *5 (N.D.N.Y. Nov.
7  22, 1991) (finding privity existed between inventor-assignor and corporation, where corporation
8  was co-founded by inventor-assignor).

9  Dr. Stuelpnagel further admitted that Ariosa availed itself of his knowledge in evaluating
10 whether Harmony infringes the '794 Patent. *See* Trial Tr. (1/11/2018) at 702:25-703:3 ("Q. … A
11 big part of your work at Ariosa was on the legal side of the business, correct? A. A significant
12 part of my work included legal work, working with our attorneys."); *id.* at 705:13-15 ("Q. You
13 were helping the [legal] team; correct? A. I was providing assistance as appropriate, as they
14 asked, yes."); *id.* at 880:20-880:25 ("I'm adamant [Harmony] does not" "practice[] the '794
15 patent. . . . The Harmony™ test doesn't infringe the '794."). In *Shamrock Technologies*, under
16 similar facts, the Court found privity between an inventor assignor and a corporation, where the
17 inventor-assignor was involved in the corporations' allegedly infringing activities. *See Shamrock*
18 *Technologies, Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 794 (Fed. Cir. 1990). Dr. Oliphant
19 similarly admitted to working at Ariosa and helping to develop the Harmony test. *See* Trial Tr.
20 (1/16/2018) at 1058:12-17. And Dr. Stuelpnagel corroborated Dr. Oliphant's role as Chief
21 Scientific Officer in the development of the Harmony test and the infringing DANSR array. Tr.
22 741:10-18.

23 No reasonable jury could find that either Drs. Stuelpnagel or Oliphant were not in privity
24 with Ariosa. Therefore, the doctrine of assignor estoppel extends to Ariosa. *Diamond Sci.*, 848
25 F.2d at 1224 ("[E]stoppel also operates to bar other parties in privity with the assignor, such as a
26 corporation founded by the assignor."); *Brocade Comm'ns Sys., Inc. v. A10 Networks, Inc.*, No.
27 10-CV-03428-LHK, 2012 WL 2326064, at *4 (N.D. Cal. June 18, 2012) (estoppel extends to
28 infringers who avail themselves "of the inventor's knowledge and assistance to conduct

1  infringement."). In *Diamond Scientific*, as here, an inventor had assigned his rights to the
2  inventions claimed in the patent for valuable consideration and had executed an inventor's oath
3  attesting to his belief in the patentability of the inventions. *See Diamond Sci.*, 848 F.2d at 1225.
4  Holding that assignor estoppel precluded the inventor from later challenging the patent's validity,
5  the Federal Circuit explained that the inventor "should be estopped from defending patent
6  infringement claims by proving that [what] he assigned was worthless." *Id*. at 1225. Similarly, in
7  *Carroll Touch, Inc.*, the Federal Circuit held that an inventor who "signed the Oath, Power of
8  Attorney and Petition" and "assigned the patent rights to another for valuable consideration" was
9  estopped from challenging the validity of the patent. *Carroll Touch, Inc. v. Electro Mechanical
10 Sys., Inc.,* 15 F.3d 1573, 1581 (Fed. Cir. 1993) (citations omitted).

11 Based on the undisputed facts that Drs. Stuelpnagel and Oliphant assigned the '794 Patent
12 to Illumina for valuable consideration, signed an inventor's oath attesting to their belief in its
13 validity, and acted in privity with Ariosa, judgment as a matter of law that Ariosa is barred from
14 challenging the validity of the '794 Patent is justified.

15 **B.    Drs. Stuelpnagel And Oliphant Owned An Undivided Interest In The
           Application That Led To The '794 Patent And Assigned Their Interest To
16         Illumina Such That Assignor Estoppel Applies**

17 As discussed more fully in Section C, *infra*, the trial evidence has shown that Drs.
18 Stuelpnagel and Oliphant are undoubtedly inventors on the issued claims of the '794 Patent. This,
19 however, is not required for assignor estoppel to apply. Indeed, the doctrine prevents "one who
20 has ***assigned the rights*** to a patent (***or patent application***)" or "parties in privity with the assignor,
21 such as a corporation founded by the assignor," from later challenging the patent's validity.
22 *Diamond Sci.*, 848 F.2d at 1224. It is undisputed that Ariosa is in privity with Drs. Stuelpnagel
23 and Oliphant. Further, no reasonable jury could determine that Drs. Stuelpnagel and Oliphant did
24 not assign to Illumina their rights to the application that led to the '794 Patent.

25 The following facts are undisputed:

26 - The specification of the application that led to the '794 Patent included subject
27   matter invented by Drs. Oliphant and Stuelpnagel. *See* Trial Tr. (1/11/2018) at
28   867:19-870:9, Trial Tr. (1/16/2018) 1092:23-1094:14.

1
2
3

- Drs. Stuelpnagel and Oliphant were also admittedly inventors on the claims that were included in the application that led to the '794 Patent. *See* Trial Tr. (1/11/2018) at 853:9-854, Trial Tr. (1/16/2018) 1080:12-18.

4
5
6
7
8

- As such, Drs. Stuelpnagel and Oliphant undisputedly owned an undivided interest in the entire patent and the invention disclosed therein. *See Ethicon Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998) ("each co-inventor presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions").

9
10
11
12

- Drs. Stuelpnagel and Oliphant then assigned their right, title, and interest not just to the aspects of the patent they now claim to have invented, but the entire invention, including all continuations, divisions, etc. disclosed in the specification. *See* Trial Tr. (1/11/2018) at 738:2-740:1, Trial Tr. (1/16/2018) 1050:4-10.

Given these undisputed facts, assignor estoppel applies. By assigning their entire right, title and interest in the invention ***as a whole*** that was described in the specification, they assigned their interest in the entire invention, regardless of whether they contributed aspects of the invention that they now claim are invalid. Ariosa is thus forbidden from challenging validity.

The fact that the claims may have broadened since the original filing to possibly encompass aspects that Stuelpnagel and Oliphant contend they did not invent does not block the application of assignor estoppel. Indeed, the Federal Circuit has explained that just because an assignee "may have later amended the claims in the application process (a very common occurrence in patent prosecutions), with or without [the inventor's] assistance, does not give [the assignor's] arguments against estoppel any greater force." *Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1226 (Fed. Cir. 1988). This is so because "inventors assigned the ***rights*** to his invention, irrespective of the particular ***language*** in the claims describing the inventions when the patents were ultimately granted." *Id.* (emphasis in original); *see also Nortel Networks Inc. v. Foundry Networks, Inc.*, No. 01-CV-10442-DPW, 2003 WL 26476584, at *6–7 (D. Mass. Mar. 24, 2003) ("Turning to another Foundry argument, the fact that certain claims in the '080 patent were not contained in the originally assigned application does not merit allowing a validity

1  challenge, even one limited to these claims.").

2  Any argument that experienced industry scientists like Oliphant and Stuelpnagel should
3  not be held to the full scope of estoppel for claims that vary slightly from the originally filed
4  claims is thus without merit. *See, e.g.*, *Nortel*, 2003 WL 26476584 at \*6 ("It is illogical that
5  Ferguson, who holds six patents, could interpret an assignment that extends to continuing
6  applications as not encompassing the allegedly additional and new matter, to wit, claims 28 and 30
7  through 33 of the '080 patent.").

8  To the extent Ariosa contends it can somehow avoid assignor estoppel because Oliphant
9  and Stuelpnagel's contribution was supposedly limited to inventing claims 19 and 20 only, Ariosa
10 is incorrect. Courts have repeatedly rejected this argument in view of the Federal Circuit's
11 guidance in *Diamond Scientific*. *See, e.g.*, *Kreepy Krauly U.S.A., Inc. v. Sta-Rite Indus., Inc.*, 152
12 F.3d 949 (Fed. Cir. 1998) ("Because Sebor contributed only the airfoil design to the claimed
13 invention, Kreepy Krauly argues that Sebor should not be estopped from contending that other
14 aspects of the claimed invention render the claim invalid. We are unpersuaded by this argument,
15 which is made without extended analysis or citation of authority."); *Carroll Touch v. Electro*
16 *Mechanical Sys.*, 15 F.3d 1573, 1579-81 (Fed. Cir. 1993) (reversing district court that refused to
17 apply estoppel where assigning inventor "testified that his primary contribution to the claimed
18 invention was a device called a dynamic level shifter (DLS), on which a separate patent was later
19 sought and obtained"); *Cedarapids, Inc. v. Johnson Crushers Int'l, Inc.*, No. 3:02:1243, 2005 WL
20 2086755, at \*3-4 (M.D. Tenn. Aug. 26, 2005) (applying estoppel even though assigning inventors
21 "did not regard their invention as including [a claimed feature of the patent]"); *Eagle Comtronics,*
22 *Inc. v. Ne. Filter Co.*, No. 90-CV-573, 1991 WL 247551, at \*3 (N.D.N.Y. Nov. 22, 1991)
23 (applying estoppel where inventor claimed "that he only signed the declaration with reference to
24 the parts of the invention for which he was directly responsible and that he understood the word
25 'invention' to be the invention covered by these claims only").

26 **C.     No Reasonable Jury Could Find That Drs. Stuelpnagel And Oliphant Are Not Inventors**
27
28 As documented above, Drs. Stuelpnagel and Oliphant do not need to be inventors on the

1 issued claims for assignor estoppel to apply.  Yet, even if this were a requirement, Ariosa cannot
2 meet its burden of showing that they are not properly named inventors.  In fact, the trial evidence
3 resolves as a matter of law that they are inventors.

### 1. Drs. Stuelpnagel And Oliphant Are Presumptive Inventors

"Patent issuance creates a presumption that the named inventors are the true and only inventors."  *Caterpillar Inc v Sturman Industries, Inc..*, 387 F.3d 355, 1377.  Here, Drs. Stuelpnagel and Oliphant do not deny that they are listed as inventors on the face of the '794 Patent.  *See* Trial Tr. (1/11/2018) at 706:22-25 ("Q. So just in terms of the listing on the '794 patent, you're listed there?  I understand you have an argument otherwise, but you're listed there; correct?  A. I am listed on the '794 patent."); Trial Tr. (1/16/2018) at 1049:15-20 ("Q. … Are you the Arnold Oliphant who is one of the inventors identified in the '794 patent …? A. I am indicated as an inventor on that patent.").

Nor do they deny that they signed oaths of inventorship for the application that lead to the '794 Patent.  *See* Trial Tr. (1/11/2018) at 731:10-12 ("Q. Okay.  Now, with respect to the application, you signed an oath of inventorship; is that correct?  A. To the application I signed an oath of inventorship, yes."); Trial Tr. (1/16/2018) at 1049:21-25 ("Q. And did you sign an oath of inventorship stating that you were an inventor on the subject matter of the disclosure of the '794 patent? A. I signed an oath of inventorship for a patent application called the '727 patent application.")

As the presumptive inventors, Drs. Stuelpnagel's and Oliphant's trial testimony confirms they were properly named as such.

### 2. The Evidence Presented At Trial Confirms That Drs. Stuelpnagel And Oliphant Are Inventors

Any contention that Drs. Stuelpnagel and Oliphant are not inventors—despite both acknowledging their oaths to the contrary—is conclusively resolved by the evidence presented at trial.

First, through videotaped deposition testimony played at trial, Dr. Oliphant admits that he and Dr. Stuelpnagel contributed a "singular idea" to the '794 Patent—"extension and ligation":

Q. But in terms of the original conception of the invention that's described in and claimed in the patent, to your best knowledge, those concepts, the contributors were you and John Stuelpnagel?

[A.] … John [Stuelpnagel] and I had **a singular idea, really, for the invention, and that was that we could separate the oligonucleotides, do an extension and ligation**, and that was the basis of the contribution of John and my's conversation.

*See* Trial Tr. (1/16/2018) at 1053:5 (playing Dep. Tr. Oliphant (1/22/2015) at 192:2-11 (Jan. 22, 2015) (emphasis added)). Notably, Dr. Oliphant does not limit the "singular" idea to an "allele specific" variant. This "singular idea" is exactly what is embodied in the '794 Patent's claims 19 and 20.

In seeking to avoid Dr. Oliphant's inculpation that he and Dr. Stuelpnagel are inventors on the '794 Patent, Dr. Stuelpnagel argues that the '794 Patent's claims refer to "substantial complementarity" and that this is antithetical to the "perfect complementarity" required to distinguish between alleles. *See* Trial Tr. (1/11/2018) at 746:2-10 ("So the key with detecting a single base or multiple bases is you have to have perfect complementarity."); *id.* at 754:24-755:2 ("Q. Okay. And does your argument regarding why you're not an inventor of Claim 19—I just want to know that—does that relate to substantial complementarity? A. It does relate to substantial complementarity."). First, Dr. Stuelpnagel's argument directly conflicts with Dr. Oliphant's testimony, that their singular invention is to "extend" and "ligate" in the multiplex array process. *See* Trial Tr. (1/16/2018) at 1053:21-25. But even overlooking Dr. Oliphant's testimony, Dr. Stulepnagel's argument also conflicts with the definition of "substantial complementarity" presented in the '794 Patent's specification—*one he confirmed under oath was correct*–"that the probes are sufficiently complementary to the target sequences to hybridize under the selected reaction conditions." *See* Trial Ex. 513 (Tr. Ex. 513-023) at 10:15-18.

When asked about this glaring contradiction, Dr. Stuelpnagel admitted that he did not object to the definition of "substantial complementarity" that was contained in the application for the '794 Patent. *See* Trial Tr. (1/11/2018) at 756:22–757:1. Instead, he attempted to explain the inconsistency by stating he "didn't pay attention to it" and that he "didn't spend many, many hours reviewing the specification" and only "briefly reviewed the patent [application]." *See* Trial Tr. (1/11/2018) at 757:3, 757:12-13. By feigning ill-preparedness, Dr. Stuelpnagel tellingly avoids

having to reconcile his argument that claims 19 and 20 require perfect complementarity, despite the Patent's statements to the contrary–-statements he confirmed under oath were correct.

Second, in view of his dispositive deposition admissions, Ariosa failed to present any evidence at trial from Dr. Cantor, its expert on inventorship, to rebut Dr. Oliphant's admission. As Dr. Cantor stated, he "had an opinion on inventorship" but would not be presenting it at trial. *See* Trial Tr. (1/18/2018) at 1512:22-25.

Dr. Cantor's admissions eliminated Ariosa's argument that Drs. Stuelpnagel and Oliphant are not inventors. First, Dr. Cantor acknowledged that claim 1 of the '794 Patent practiced the GoldenGate assay. *See id.* at 1495:4-23. Coupled with the testimony of Arnold Oliphant and John Stuelpnagel confirming that they invented GoldenGate (*see* Trial Tr. (1/11/2018) at 741:23-742:1; Trial Tr. (1/16/2018) at 1050:1-5), there can be no doubt that they are inventors of claim 1. Second, and even more compelling, Dr. Cantor confirmed point blank that Figure 13 corresponds to claim 19

> Q. And if you look at Figure 13, please, the figures have a different expression form than written word. …
> A. Yes. So that's – **Figure 13 corresponds to what you just had me read in the text and corresponds to Claim 19**. Assuming that we have a ligation step here, which is not shown explicitly, but I'll grant them.
> Q. But at the top, let me direct you to it. Do you see –
> A. Oh, now I see they say ligates, yeah. All right. I missed it.

Trial Tr. (1/18/2018) at 1513:1-6 (playing Depo. Tr. Cantor (7/24/2017) at 47:12-48:2). At trial both Drs. Stuelpnagel and Oliphant admitted that the '794 Patent's Figure 13 encompasses their invention. *See* Trial Tr. (1/16/2018) at 1094: 7-12 ("Q. Okay. And based on the description of Figure 13 – Let's stay away from the figure, because I understand you say it's confusing. With respect to the description, that describes your invention; doesn't it? A. I – I believe it does."); Trial Tr. (1/11/2018) at 870:4-9 ("Q. Did you confirm that Figure 13 – that that's your invention in the '794 patent, in Figure 13? … A. Yeah. Figure 13 is, I believe, my invention in the patent specification."). By admitting that Figure 13 corresponds to claim 19 of the '794 Patent, Dr. Cantor concedes that Drs. Oliphant and Stuelpnagel are inventors on the '794 Patent.

While Ariosa failed to present any independent expert witness testimony rebutting

inventorship, Illumina presented conclusive evidence supporting it. Illumina's expert, Dr. Cooper, established that the '794 Patent is embodied in the Golden Gate assay. *See* Trial Tr. (1/16/2018) at 988:15-18. Both Drs. Stuelpnagel and Oliphant admit that they are inventors of the Golden Gate assay. *See* Trial Tr. (1/11/2018) at 768:11-14 ("Q. … So in terms of the Golden Gate assay, you acknowledge you had an important invention at the center of that; correct? A. Correct."); Trial Tr. (1/16/2018) at 1058:3-4 ("I developed the genetic genotyping system marketed as Golden Gate[.]"). During his rebuttal testimony, after Dr. Oliphant testified, Dr. Cooper testified:

> And, Dr. Olipahnt, in this deposition testimony, clearly testifies to the fact that he believes he, along with Dr. Stuelpnagel, are inventors on Golden Gate. And so it simply stands to reason they invented Golden Gate. Golden Gate embodies the '794. That makes them inventors on the '794.

*See* Trial Tr. (1/18/2018) at 1591:11-15.

Because Drs. Stuelpnagel and Oliphant are inventors of the Golden Gate assay and the Golden Gate assay is an embodiment of the '794 Patent, Drs. Stuelpnagel and Oliphant must be inventors on the '794 Patent. Besides Drs. Stuelpnagel and Oliphant's inventorship as tied through the Golden Gate assay, Dr. Cooper presented a second means of tying Drs. Steulpnagel and Oliphant to the '794 Patent. Specifically, Dr. Cooper testified the allele specific extension and ligation that Drs. Stuelpnagel and Oliphant introduce in an attempt to circumvent their prior inculpatory admissions of inventorship is indeed in the '794 Patent as well. *See* Trial Tr. (1/18/2018) at 1592:17-1593:21. Alle-specific extension and ligation is at a minimum embodied in the '794 Patent's claims 19 and 20, and Figure 13. *See* Trial Tr. (1/18/2018) at 1593:22-1594:9. Therefore, Drs. Stuelpnagel and Oliphant are properly inventors of the '794 Patent. *See id.*

### D. Even If Drs. Stuelpnagel And Oliphant Invented Only Allele-Specific Extension And Ligation, They Are Still Inventors

Even if Drs. Stuelpnagel and Oliphant are assumed to have invented ***only*** an "allele-specific" variant of extension and ligation, they are still inventors. It is undisputed that allele-specific extension and ligation is a preferred embodiment of the claimed invention. Simply because Oliphant and Stuelpnagel may have only originally conceived of using extension and ligation for an allele-specific application does not mean they did not make a substantial

1  contribution to the claims of the '794 patent.  It simply means that the other individuals named as
2  inventors on the patent conceived of the broader concept of using extension and ligation for things
3  that were not allele-specific.  It defies logic to suggest that this would void Oliphant's and
4  Stuelpnagel's status as inventors on the '794 patent.

### E. Drs. Stuelpnagel And Oliphant Have Never Before Denied His Inventorship

Finally, the circumstances surrounding the timing of Ariosa's contentions underscores the implausibility of its claim.  Dr. Stuelpnagel has never before challenged his status as an inventor dating back to the time the '794 Patent issued.  *See* Trial Tr. (1/11/2018) at 725:16-19 ("Q. Okay. Did you take any steps at that point in time [when the '794 patent issued] to inform anyone at Illumina that you thought that this patent had the wrong inventor on it?  A**.** No, I did not.").  Nor did he ever seek to correct the public record of inventorship before this lawsuit was filed:

> Q. … And in terms of when you started denying that you were an inventor of the '794 patent, did you express that to Illumina or take any action to change the inventorship through any of the legal avenues before the suit was brought against you, this action, where the '794 was asserted?
>
> A.   No, I don't believe that there was – I don't believe … I put any effort into correcting inventorship before the lawsuit was filed.

*See* Trial Tr. (1/11/2018) at 726:7-15.  And he admitted that the reason he denies inventorship now is to enable Ariosa to challenge the validity of the '794 Patent:

> Q.  In terms of your understanding, your understanding is that if you are an inventor on the patent, then you can't challenge [validity] … But if you can get off the patent, then you can challenge the validity of it; correct?
>
> A.   That's my understanding.

*See* Trial Tr. (1/11/2018) at 733:15-20.  In fact, Dr. Stuelpnagel readily admitted that he wanted Ariosa to be able to challenge the validity of the '794 Patent.  *See* Trial Tr. (1/11/2018) at 734:4-7 ("Q. Okay.  And so you wanted Ariosa and now Roche to be able to challenge the []validity of the '794 patent; right?  A. Well, certainly I want that[.]"). While Ariosa has not sustained its "clear and convincing" burden that neither Drs. Stuelpnagel nor Oliphant are inventors, it is "clear and convincing" that Dr. Stuelpnagel denies inventorship solely so Ariosa can challenge the validity

of the '794 Patent. But no reasonable jury could find that Dr. Stuelpnagel is not actually an inventor.

## IV. CONCLUSION

For the foregoing reasons as well as the reasons Illumina has previously set forth in its prior submissions to the Court, Illumina respectfully seeks an order that bars Ariosa from challenging the validity of the '794 Patent pursuant to the doctrine of assignor estoppel.

Dated: January 22, 2018                    Respectfully submitted,

                                           WEIL, GOTSHAL & MANGES LLP

                                           By:  */s/ Edward R. Reines*
                                                    Edward R. Reines

                                           *Attorneys for Plaintiffs and*
                                           *Counterclaim Defendants*

                                           ILLUMINA, INC. and VERINATA HEALTH, INC.