IRELL & MANELLA LLP
David I. Gindler (117824)
dgindler@irell.com
Alan J. Heinrich (212782)
aheinrich@irell.com
Lisa S. Glasser (223406)
lglasser@irell.com
Sandra L. Haberny (260977)
shaberny@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

Attorneys for Defendant and
Counterclaim-Plaintiff
ARIOSA DIAGNOSTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VERINATA HEALTH, INC.,<br><br>          Plaintiff and<br>          Counterclaim-Defendant,<br><br>     vs.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>          Defendant and<br>          Counterclaim-Plaintiff. | Lead Case No. 3:12-cv-05501-SI<br>Case No. 3:14-cv-01921-SI<br>Case No. 3:15-cv-02216-SI<br><br>**ARIOSA DIAGNOSTICS, INC.'S OBJECTIONS TO FINAL JURY INSTRUCTIONS**<br><br>Judge:  Hon. Susan Illston |
| ILLUMINA, INC.,<br><br>          Plaintiff and Counterclaim-<br>          Defendant<br><br>     vs.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>          Defendant and Counterclaim-<br>          Plaintiff. | |

1    ILLUMINA, INC.,                                )
                                                    )
2                      Plaintiff and Counterclaim-  )
                       Defendant                    )
3                                                   )
             vs.                                    )
4                                                   )
     ARIOSA DIAGNOSTICS, INC.,                      )
5                                                   )
                       Defendant and Counterclaim-  )
6                      Plaintiff.                   )
                                                    )
7    ───────────────────────────────────────────────

Following a Charge Conference on January 22, 2018 to review the Parties' respective proposed jury instructions, the Court provided the parties with its final "Jury Instructions."

Ariosa respectfully objects to Court's final instructions to the extent that the Court declined to give the jury instructions that Ariosa proposed, or adopted jury instructions to which Ariosa has objected. *See* Dkt. 600. These include the following instructions:

**<u>Instruction No. 16 (Willful Infringement</u>)**:

The instruction on willfulness is based on the N.D. Cal. Model instruction, whereas Ariosa proposed an instruction based on the Federal Circuit Bar Association model instruction.

Ariosa objects to the Court's instruction because it does not accurately state the test for willfulness under *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) and current Federal Circuit law. For example, the instruction requires a finding of willfulness if the jury finds that the defendant "intentionally ignored" or "recklessly disregarded" a "claim." The Supreme Court in *Halo* eschewed any such rigid test for willfulness and held that a finding of willful infringement is "a 'punitive' or 'vindictive' sanction" that is "reserved for egregious cases of culpable behavior," where the infringer's conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or . . . characteristic of a pirate." *Id.* at 1932.

Ariosa's proposed instruction tracked the Federal Circuit Bar Association's instruction and is consistent with the test for willfulness, as confirmed by numerous Federal Circuit and district courts post-*Halo. See, e.g*, *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1346 (Fed. Cir. 2016) ("The [Supreme] Court [in *Halo*] described "[t]he sort of conduct warranting enhanced damages....as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, [or] flagrant"); *Finjan, Inc. v. Cisco Sys. Inc.,* No. 17-CV-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (holding plaintiff failed to state a claim for willful infringement even if pre-suit knowledge was adequately alleged because plaintiff had not alleged "egregious" behavior); *Polara Eng'g, Inc. v. Campbell Co*., 237 F. Supp. 3d 956 (C.D. Cal. 2017) (denying motion for judgment as a matter of law because substantial evidence supported "jury's conclusion that the totality of the circumstances demonstrated egregious conduct."); *Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 330-331 (D. Del. 2016) ("no reasonable jury

could find willful infringement" because patentee did not prove defendants' infringement was "egregious"). Notably, numerous district courts post-*Halo* have used jury instructions similar or virtually identical to those proposed by Ariosa. *See, e.g., Finjan, Inc. v. Sophos, Inc*., Case No. 14-cv-01197-WHO (N.D. Cal.), Dkt. 396 (Jury Instructions); *Polara Engineering, Inc. v. Campbell Company*, Case No. 13-cv-0007-DFM (C.D. Cal.), Dkt. 431 (Jury Instructions) at 73.

**Instruction No. 27 (Lost Profits – Factors To Consider):**

The Court's instruction is based on a version of N.D. Cal. Model Patent Instruction 5.3. Ariosa objects because it is legally incorrect on the facts of this case and would mislead the jury to Ariosa's prejudice. For example, the instruction states that Plaintiffs can recover lost profits even if they do not prove an absence of non-infringing alternatives. However, where, as here, the plaintiff relies upon the *Panduit* test to establish causation, this element is not optional. The *Panduit* test for causation expressly requires proof by the patentee of an absence of non-infringing alternatives. *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978) ("To obtain as damages the profits on sales he would have made absent the infringement, *i.e.*, the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made"); *see also* Dkt. 561 at 6 (Order re Malackowski testimony describing *Panduit* factors). Further, the Federal Circuit recently reaffirmed and emphasized the importance of the non-infringing alternatives requirement of the *Panduit* test for causation. *See Mentor Graphics Corp. v. EVE-USA, Inc*., 851 F.3d 1275, 1285 (Fed. Cir. 2017) (proof by the patentee of a lack of non-infringing alternatives is necessary to "tie[] lost profit damages to specific claim limitations and ensure[] that damages are commensurate with the value of the patented features."). As Plaintiffs' own expert acknowledged in his expert report, when the *Panduit* test is used, the requirement that a patentee prove the absence of non-infringing alternatives also is needed to satisfy apportionment principles. Plaintiffs' expert explains, on p. 49 of his report: "The CAFC has stated that '*Panduit's* requirement that patentees prove demand for the product as a whole and the absence of non-infringing alternatives ties lost profit damages to specific claim limitations and ensures that

1    damages are commensurate with the value of the patented features.' Therefore, 'satisfaction of the

2    *Panduit* factors satisfies principles of apportionment.'"

3        **<u>Instruction No. 29 (Reasonable Royalty – Definition):</u>**

4        Ariosa objects to this instruction because it is not suitable for this case and introduces legal

5    principles that are confusing, incomplete and inaccurate. As discussed below, Ariosa proposed

6    more suitable instructions explaining the reasonable royalty standard. Dkt. 600.

7        First, in describing the royalty base as the entire price of a product (like a nail) or a

8    physical part component (like a tire on a car), the instruction leads the jury to perform an entire

9    market value analysis that is inconsistent with damages case law pertinent to this case.  Under 35

10   U.S.C. § 284, "damages awarded for patent infringement must reflect the value attributable to the

11   infringing features of the product, and no more." *Commonwealth Sci. & Indus. Research*

12   *Organisation v. Cisco Sys., Inc.* ("*CISRO*"), 809 F.3d 1295, 1301 (Fed. Cir. 2015) (internal

13   quotation marks omitted). The Federal Circuit in *Finjan* also recently confirmed that the existence

14   of a "smallest saleable unit" did not eliminate the need to apportion the value of the patented

15   features. Ultimately, the Federal Circuit concluded that "the fact that Finjan has established a

16   royalty base based on the 'smallest, identifiable technical component' does not insulate them from

17   the 'essential requirement' that the 'ultimate reasonable royalty award must be based on the

18   incremental value that the patented invention adds to the end product.'" *Id.* at *9 (citing *Ericsson*,

19   773 F.3d at 1226). In *VirnetX*, the Federal Circuit expressly held that it "misstates our law" to

20   "suggest[] that when the smallest salable unit is used as the royalty base, there is necessarily no

21   further constraint on the selection of the base." *VirnetX Inc.*, 767 F.3d at 1327; *see also Dynetix*

22   *Design Sols., Inc. v. Synopsys, Inc.*, 2013 WL 4538210, at *3 (N.D. Cal. 2013) ("[A]n

23   apportionment is required even where []the accused product is the smallest salable unit.").

24       The Court's Order addressing the admissibility of Illumina's damages expert testimony

25   confirmed this settled law on apportionment is applicable to this case. Dkt. 561 at 3. Moreover, as

26   this Court noted, "care must be taken to avoid misleading the jury by placing undue emphasis on

27   the value of the entire product" because "disclosure of the end product's total revenue cannot help

28   but skew the damages horizon for the jury, regardless of the contribution of the patented

1  component to this revenue." *Id*. (quoting *CISRO*, 809 F.3d at 1302 (internal quotation marks

2  omitted)). Given the fact and disputed issues in this case, the proposed instruction would "skew

3  the damages horizon" rather than guide the jury in conducting an appropriate damages analysis.

4        Further, the instruction's language, "you may decide that the appropriate royalty that

5  would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold" is

6  inappropriate and prejudicial in this case, since both sides' experts base their hypothetical

7  negotiation analysis on licenses with royalties paid as a percentage of revenues, not fixed royalties

8  per unit. The propriety of Plaintiffs' expert's conversion of these percentages into a fixed rate per

9  unit is a contested issue. Clearly, it is prejudicial for the court to be seen as taking a side in the

10  parties' experts' fundamental disagreement over whether that is economically proper by telling the

11  jury that it is permissible to award a fixed number per unit.  .

12        **<u>Instruction No. 32 (Reasonable Royalty – Multiple Patents)</u>**:

13        Ariosa objects to this instruction as confusing, misleading and unnecessary in this case.

14  The instruction seems to be directed to a situation where a single patentee is asserting multiple

15  patents. Here, where there are two distinct patentees, each with one patent, it is not only

16  inapplicable but affirmatively misleading. For example, the proposal refers to a possible award of

17  "separate royalties to Illumina and Verinata for each patent that was infringed." This language is

18  confusing and may mislead the jury to award duplicative damages to two related entities, only one

19  of which could receive damages for each patent. The instruction compounds the confusion by also

20  referring to infringement "even by a single infringing act." This appears to be referring to cases

21  where a lump sum is sought, or where the sole or primary act of infringement is a test or other

22  unitary act as opposed to allegedly infringing sales. In this case, it would be incorrect and

23  prejudicial to instruct the jury that any party – much less all parties – may be awarded damages if

24  there is a single infringing act. In this case, both parties' damages theories are based on running

25  royalties tied to the specific number and type of infringing tests, not as a lump sum. Any damages

26  to be awarded must correspond to the specifics of any infringement and the parties' actual

27  damages theories.

28

1   **<u>Instructions Not Given</u>**:

2       Ariosa also objects that the Court declined to include certain of its proposed instructions,

3   including LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS (Dkt. 600 at 16),

4   REASONABLE ROYALTY – HYPOTHETICAL NEGOTIATION METHOD (Dkt. 600 at 54),

5   LOST PROFITS – PANDUIT FACTORS (Dkt. 600 at 25), REQUIREMENT OF PATENT AND

6   ENTITY-SPECIFIC EVIDENCE FOR LOST PROFITS (Dkt. 600 at 47); REASONABLE

7   ROYALTY – ATTRIBUTION (Dkt. 600 at 57); and REASONABLE ROYALTY –

8   AVAILABILITY OF NON-INFRINGING SUBSTITUTES (Dkt. 600 at 60). Ariosa's argument

9   and authorities regarding the reasons these instructions should have been given is set forth in

10  Docket 600, and expressly incorporated herein by reference.

11

12  Dated:  January 23, 2018            Respectfully submitted,

13                        IRELL & MANELLA LLP

14

15                        By:  */s/ Sandra L. Haberny*
                          Attorneys for Defendant and Counterclaim-

16                            Plaintiff ARIOSA DIAGNOSTICS, INC.

17

18

19

20

21

22

23

24

25

26

27

28