| | |
|---|---|
| VERINATA HEALTH, INC., et al., | Case No. 12-cv-05501-SI |
| Plaintiffs, | |
| v. | **JURY INSTRUCTIONS** |
| ARIOSA DIAGNOSTICS, INC, et al., | |
| Defendants. | |

**JURY INSTRUCTIONS**

# INDEX

**Page**

**Jury Instruction No. 1** — Duty of Jury 4

**Jury Instruction No. 2** —What a Patent Is and How One is Obtained 4

**Jury Instruction No. 3** —What is Evidence 6

**Jury Instruction No. 4**—What is Not Evidence 6

**Jury Instruction No. 5**—Credibility of Witnesses 7

**Jury Instruction No. 6**—Expert Opinion 8

**Jury Instruction No. 7**—Deposition in Lieu of Live Testimony 8

**Jury Instruction No. 8**—Charts and Summaries Not Received in Evidence **8**

**Jury Instruction No. 9**—Summary of Contentions **9**

**Jury Instruction No. 10**—Stipulations of Fact 10

**Jury Instruction No. 11**—Interpretation of Claims 12

**Jury Instruction No. 12**—Infringement- Burden of Proof 13

**Jury Instruction No. 13**—Direct Infringement 14

**Jury Instruction No. 14**—Literal Infringement 15

**Jury Instruction No. 15**—Infringement under the Doctrine of Equivalents 15

**Jury Instruction No. 16**—Willful Infringement 16

**Jury Instruction No. 17**—Invalidity- Burden of Proof 17

**Jury Instruction No. 18**—Invalidity- Perspective of One of Ordinary Skill in the Art 17

**Jury Instruction No. 19**—Anticipation 18

**Jury Instruction No. 20**—Written Description Requirement 19

**Jury Instruction No. 21**—Enablement 19

**Jury Instruction No. 22**—Express License 20

**Jury Instruction No. 23**—Breach of Contract 20

**Jury Instruction No. 24**—Breach of Implied Covenant of Good Faith and Fair Dealing    21

**Jury Instruction No. 25**—Patent Damages- Burden of Proof    22

**Jury Instruction No. 26**—Lost Profits- Generally    22

**Jury Instruction No. 27**—Lost Profits- Factors to Consider    23

**Jury Instruction No. 28**—Reasonable Royalty- Entitlement    23

**Jury Instruction No. 29**—Reasonable Royalty- Definition    24

**Jury Instruction No. 30**—Reasonable Royalty- Availability of Non Infringing Substitutes 25

**Jury Instruction No. 31**—Reasonable Royalty- Relevant Factors    25

**Jury Instruction No. 32**—Reasonable Royalty- Multiple Patents    26

**Jury Instruction No. 33**— Contract Damages    26

**Jury Instruction No. 34**—Limits on Contract Damages    27

**Jury Instruction No. 35**—Mitigation of Damages    27

**Jury Instruction No. 36**—Duty to Deliberate    29

**Jury Instruction No. 37**—Communication with the Court    29

**Jury Instruction No. 38**-Return of Verdict    30

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 1: DUTY OF JURY**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

**JURY INSTRUCTION NO. 2 : WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to two United States patents. Let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The process of obtaining a patent is called patent prosecution. The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field

4

will know how to make or use it. The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews information about the state of the technology at the time the application was filed.   As part of that effort, the patent examiner searches for and reviews information that is publicly available, submitted by the applicant, or both. This information is called "prior art." Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.   A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant has an opportunity to respond and sometimes changes the claims or submits new claims.   This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid, because it does not meet the requirements for a patent.

**JURY INSTRUCTION NO. 3 : WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.

**JURY INSTRUCTION NO. 4 : WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)      Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you

6

must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**JURY INSTRUCTION NO. 5: CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**JURY INSTRUCTION NO. 6 : EXPERT OPINION**

You may hear testimony from some witnesses who testified to opinions and the reasons for their opinions. Such opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**JURY INSTRUCTION NO. 7 : DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**JURY INSTRUCTION NO. 8 : CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**JURY INSTRUCTION NO. 9: SUMMARY OF CONTENTIONS**

I will now again summarize for you each party's contentions in this case. I will then tell you what each party must prove to win on each of its contentions.

As I previously explained, the parties in this case are Illumina, Inc., or Illumina, and Verinata Health, Inc., or Verinata, and Ariosa Diagnostics, Inc., or Ariosa. The case involves United States Patent No. 7,955,794 B2, entitled "Multiplex Nucleic Acid Reactions" obtained by Illumina and United States Patent No. 8,318,430 B2 entitled "Methods of Fetal Abnormality Detection" obtained by Verinata. For convenience, the parties and I have often referred to these patents by the last three numbers of their patent numbers: the '794 patent and the '430 patent.

Illumina filed suit in this court seeking money damages from Ariosa for allegedly infringing the '794 patent by using a method that it argues is covered by certain claims of the '794 patent. Verinata filed suit in this court seeking money damages from Ariosa for allegedly infringing the '430 patent by using a method that it argues is covered by certain claims of the '430 patent.

Ariosa denies that it has infringed any claims of the patents. Ariosa also asserts that the claims of the '794 and '430 patents are invalid and that it has an express license to the '794 patent. Invalidity and license are defenses to infringement.

Ariosa has filed counterclaims against lllumina for breach of contract and breach of the covenant of good faith and fair dealing. Illumina denies that it has breached the contract or breached the covenant of good faith and fair dealing.

For Illumina's and Verinata's patent infringement claims, your job will be to decide whether the asserted claims of the '794 and '430 patents have been infringed and whether those claims are invalid. If you decide that any asserted claim of the patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Illumina or Verinata to compensate them for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful,

that decision should not affect any damage award you give.  I will take willfulness into account later.

You may have heard evidence that Ariosa has its own patent(s) or that Ariosa improved on the '794 or '430 patents.  While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area.  You will be instructed as to what, if any, relevance, these facts have to the particular issues in this case. Meanwhile, please keep an open mind.

Before you decide whether Ariosa has infringed the asserted claims of the patents or whether the claims are invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.   It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of the patents.  You have been given a document reflecting those meanings.  For a claim term for which I have not provided a definition, you should apply the ordinary meaning.  You are to apply my definitions of these terms throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

For Ariosa's counterclaims, you will decide whether Illumina breached a contract or the covenant of good faith and fair dealing.   If you decide that there was a breach by Illumina, you will then need to decide any money damages to be awarded to compensate Ariosa.


**JURY INSTRUCTION NO.10: STIPULATIONS OF FACT**

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.

10

1.     Illumina, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in San Diego, California.

2.     Verinata Health, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Redwood City, California and is a wholly-owned subsidiary of Illumina.

3.     Illumina, Inc. is in the sequencing and array-based DNA solutions business.

4.     Verinata Health, Inc. was, but no longer is, in the non-invasive prenatal testing business, and offered for sale to consumers its verifi® prenatal test for the early identification of fetal chromosomal abnormalities.

5.     Illumina announced the signing of an agreement to acquire Verinata on January 7, 2013, and completed its acquisition of Verinata by February 21, 2013.

6.     Ariosa is a Delaware corporation with a principal office at 5945 Optical Drive, San Jose, California, 95138.

7.     Ariosa is the present name for the defendant and counter-claim plaintiff, which has previously been known as Tandem Therapeutics, Inc., Tandem Diagnostics, Inc., and Aria Diagnostics, Inc.

8.     Ariosa offers the Harmony Prenatal Test, a non-invasive prenatal test.

9.     Illumina, Inc. is the named assignee of the '794 patent.

10.     The application for the '794 patent was filed on June 20, 2002. The '794 Patent claims priority to a provisional patent application filed on September 21, 2000.

11.     The '794 patent issued on June 7, 2011.

12.     Verinata Health, Inc. is the named assignee of the '430 patent.

13.     The application for the '430 patent was filed on February 7, 2012. The '430 patent claims priority to a provisional application filed on January 23, 2010.

14.     The '430 patent issued on November 27, 2012.

15.     The microarray-based Harmony Version 2 test does not infringe the '430 patent.

11

16.     Illumina entered into a Sale and Supply Agreement ("SSA") with Ariosa, with an effective date of January 4, 2012, which is governed by the law of the state of California.  The SSA expired on its own terms on January 4, 2015.

**JURY INSTRUCTION NO.ll: INTERPRETATION OF CLAIMS**

Before you decide whether Ariosa has infringed the claims of the patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in these cases.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

The term "comprising" when used in patents means "including but not limited to."

For the '430 Patent:

•    The term "selectively enriching a plurality of non-random polynucleotide sequences of each fetal and maternal cell-free genomic DNA sample" means "enriching a plurality of non-random nucleic acid sequences of each fetal and maternal cell-free genomic DNA sample that meet sequence and/or location criteria selected to facilitate aneuploidy detection."

•    The term "generate a library derived from" means "generate a set of nucleic acid sequences derived from."

•    The term "reference chromosome" means "a  chromosome different from the particular chromosome that is being tested for aneuploidy."

For the '794 patent:

- Steps l(a), l(b), and 1(d) must be performed in a particular order. Specifically, step l(a): "providing ... at least 100 different single-stranded target sequences attached to a first solid support," must be performed before claim element l(b): "contacting said target sequences with a probe set ... such that different double-stranded hybridization complexes are formed..." Additionally, step 1(d) of "contacting said probes..." must be performed after step 1(b).

- The term "modified probe" means "an enzymatically altered polynucleotide which contains a universal priming site and is capable of substantially hybridizing to a target sequence."

- The term "wherein said different modified probes are amplified and forming different amplicons" means "wherein the different modified probes are replicated, in whole or in part, to yield amplification products of each of the different modified probes."

- The term "universal priming site" means "sequence of the probe that will bind a primer for amplification."

- The term "further comprises ligating said other probes to said probes" means "adds a ligation reaction to ligate said other probes to said probes."

- The term "target sequence" means "nucleic acid sequence on a single strand of nucleic acid."

- The term "single-stranded target sequence attached to a first solid support" means "nucleic acid molecules that are single-stranded, attached to a first solid support, and contain target sequences."

- The term "solid support" means "a material that is appropriate for or can be modified to be appropriate for the attachment or immobilization of a target sequence."

**JURY INSTRUCTION NO.12:  INFRINGEMENT- BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Illumina has proven that Ariosa has infringed one or more of the asserted claims of the '794 patent and whether

13

Verinata has proven that Ariosa has infringed one or more of the asserted claims of the '430 patent. To prove infringement of any claim, Illumina or Verinata must persuade you that it is more likely than not that Ariosa has infringed that claim.

**JURY INSTRUCTION NO. 13: DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Ariosa has used within the United States a method covered by a claim of the '794 or '430 patents. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether Ariosa's method infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether or not Ariosa knew its methods infringed or even knew of the patents does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement. I will describe these separate rules shortly.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO.14: LITERAL INFRINGEMENT**

      To decide whether Ariosa literally infringes a claim of the '794 or '430 patents, you must compare that method with the patent claim and determine whether every requirement of the claim is included in that method. If so, Ariosa's method literally infringes that claim. If, however, Ariosa's method does not have every requirement in the patent claim, Ariosa's method does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

      If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Ariosa's method. The fact that Ariosa's method also includes other steps will not avoid infringement, as long as it has every requirement in the patent claim.

**JURY INSTRUCTION NO. 15: INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

      If you decide that Ariosa's method does not literally infringe an asserted patent claim, you must then decide whether that method infringes the asserted claim under what is called the "doctrine of equivalents."

      Under the doctrine of equivalents, the method infringes an asserted patent claim if it includes steps that are identical or equivalent to the requirements of the claim. If the method is missing an identical or equivalent step to even one requirement of the asserted patent claim, the method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the method has either an identical or equivalent step to that individual claim requirement.

      A step of a method is equivalent to a requirement of an asserted claim if a person of

15

ordinary skill in the field would think that the differences between the step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a step of the method is not substantial is to consider whether, as of the time of the alleged infringement, the step of the method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the step with the claimed requirement. The known interchangeability between the claim requirement and the step of the method is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the different between the step in the method and the claim requirement is not substantial. The fact that a step of the method performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

**JURY INSTRUCTION NO. 16: WILLFUL INRFRINGEMENT**

In this case, Illumina and Verinata argue that Ariosa willfully infringed Illumina's and Verinata's patents.

To prove willful infringement, Illumina and Verinata must persuade you that Ariosa infringed a valid claim of Illumina's or Verinata's patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Illumina or Verinata must persuade

you that it is more likely true than not true that Ariosa intentionally ignored or recklessly disregarded that claim. You must base your decision on Ariosa's knowledge and actions at the time of infringement. Evidence that Ariosa had knowledge of the patent at the time of infringement is not sufficient to show willfulness. Rather, to show willfulness, you must find that Ariosa engaged in additional conduct evidencing deliberate or reckless disregard of Illumina's or Verinata's patent rights.

In deciding whether Ariosa willfully infringed, you should consider all of the facts surrounding the infringement including: whether Ariosa intentionally copied Illumina's or Verinata's patented technology in developing the accused method; whether Ariosa knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Ariosa had a reasonable belief that at the time of infringement that its products did not infringe the asserted patents or that the patents were invalid.

## JURY INSTRUCTION NO.17: INVALIDITY- BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether Ariosa has proven that the asserted claims of the '794 and '430 patents are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Ariosa must persuade you that it is highly probable that the claim is invalid.

## JURY INSTRUCTION NO.18: INVALIDITY- PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of September 21, 2000 for the '794 patent and January 23, 2010 for the '430 patent. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)     the levels of education and experience of persons working in the field;

(2)     the types of problems encountered in the field; and

(3)     the sophistication of the technology.

The parties agree that for the '794 and '430 patents, one of ordinary skill in the art would be a person who had performed or organized experiments for detection of nucleic acids such as DNA, understood the basic underlying scientific principles of such techniques, who could read and understand the relevant literature in molecular biology, and had at least a BA or BS degree in the life sciences with some laboratory experience detecting nucleic acids such as DNA.

## JURY INSTRUCTION NO.19:  ANTICIPATION

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.   In patent law, these previous devices, methods, publications or patents are called "prior art references."   If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of nucleic acid detection looking at that one reference would be able to make and use the claimed invention.

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use.  Prior art inherently anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.

One way that Ariosa can show that the '794  patent claims were not new is to show that the

18

claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before September 21, 2000.

**JURY INSTRUCTION NO. 20: WRITTEN DESCRIPTION REQUIREMENT**

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

**JURY INSTRUCTION NO. 21: ENABLEMENT**

A patent claim is invalid if the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention. This is known as the "enablement" requirement.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation. In determining whether excessive experimentation is required, you may consider the following factors:

the scope of the claimed invention;

the amount of guidance presented in the patent;

the amount of experimentation necessary;

the time and cost of any necessary experimentation;

how routine any necessary experimentation is in the field of nucleic acid detection;

whether the patent discloses specific working examples of the claimed invention; the

nature and predictability of the field; and

the level of ordinary skill in the field of nucleic acid detection.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

## JURY INSTRUCTION NO. 22: EXPRESS LICENSE

One who owns a patent has the right to exclude others from making, using, or selling what is claimed, but may agree to let another person or entity to do those acts. Such an agreement is called a license. Ariosa contends that it received an express license to the '794 patent through the 2012 Sale and Supply Agreement with Illumina. To prove its express license defense, Ariosa must prove it is more likely true than not that the '794 patent falls within "Core IP Rights in Goods" under the 2012 Sale and Supply Agreement with Illumina.

## JURY INSTRUCTION NO. 23: BREACH OF CONTRACT

Ariosa and Illumina entered into a contract for the sale and supply of Illumina goods, which included provisions regarding patent rights. This contract is sometimes referred to by the parties as the 2012 Sale and Supply Agreement.

Ariosa claims that Illumina breached this contract by asserting the '794 patent against Ariosa, and by making pretextual assertions of breach against Ariosa.

Ariosa also claims that Illumina's breach of this contract caused harm to Ariosa for which

Illumina should pay. Illumina denies that it has breached the contract.

To recover damages from Illumina for breach of contract, Ariosa must prove all of the following:

1. That Ariosa and Illumina entered into a contract;

2. That Ariosa did all, or substantially all, of the significant things that the contract required it to do;

3. That Illumina failed to do something that the contract required it to do or did something that the contract prohibited it from doing;

4. That Ariosa was harmed; and

5. That Illumina's breach of contract was a substantial factor in causing Ariosa's harm.


## JURY INSTRUCTION NO. 24: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

Ariosa claims that Illumina violated the duty to act fairly and in good faith. To establish this claim, Ariosa must prove all of the following:

1. That Ariosa and Illumina entered into a contract;

2. That Ariosa did all, or substantially all of the significant things that the contract required it to do or that it was excused from having to do those things;

3. That all conditions required for Illumina's performance had occurred or were excused;

4. That Illumina unfairly interfered with Ariosa's right to receive the benefits of the

contract; and

5.      That Ariosa was harmed by Illumina's conduct.

## JURY INSTRUCTION NO. 25: PATENT DAMAGES- BURDEN OF PROOF

I will instruct you about the measure of damages. First, I will instruct you about the measure of damages Illumina and Verinata are seeking from Ariosa for their claims of patent infringement. Then I will instruct you about the measure of damages Ariosa is seeking from Illumina for its claim of breach of contract.

By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that Ariosa infringed any valid claim of the '794 or '430 patents, you must then determine the amount of money damages to be awarded to compensate for the infringement.

The amount of those damages must be adequate to compensate Illumina, if you find infringement of the '794 patent, and Verinata, if you find infringement of the '430 patent, for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Illumina and Verinata have the burden to persuade you of the amount of their damages. You should award only those damages that Illumina and Verinata more likely than not suffered. While Illumina and Verinata are not required to prove their damages with mathematical precision, they must prove them with reasonable certainty. Illumina and Verinata are not entitled to damages that are remote or speculative.

## JURY INSTRUCTION NO. 26: LOST PROFITS-GENERALLY

In this case, Illumina and Verinata seek to recover lost profits for some of Ariosa's sales of its Harmony™ Prenatal Test product, and a reasonable royalty on the rest of Ariosa's sales.

For Illumina to recover lost profits damages for infringing sales, Illumina must show that Ariosa infringed the '794 patent and that but for that infringement, there is a reasonable probability that Illumina would have made sales that Ariosa made of the Harmony™ Prenatal Test. Illumina must show the share of Ariosa's sales that it would have made if the version(s) of the Harmony™ Prenatal Test that you found to be infringing had not been on the market.

For Verinata to recover lost profits damages for infringing sales, Verinata must show that Ariosa infringed the '430 patent and that but for that infringement, there is a reasonable probability that Verinata would have made sales of non-invasive prenatal tests that Ariosa made of the Harmony™ Prenatal Test Version 1. Verinata must show the share of Ariosa's sales that it would have made if the Harmony™ Prenatal Test Version I had not been on the market.

## JURY INSTRUCTION NO. 27: LOST PROFITS- FACTORS TO CONSIDER

To prove entitlement to lost profits, Illumina and Verinata must each separately prove each of the following factors by the more likely than not standard:

(I)    that there was a demand for the patented method;

(2)    that there were no acceptable non-infringing substitutes for the method for which Illumina and/or Verinata seek lost profits, or, if there were, the number of sales made by Ariosa that Illumina and/or Verinata would have made despite the availability of any acceptable non-infringing substitutes.

(3)    that Illumina and/or Verinata had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which Illumina and/or Verinata seeks an award of lost profits; and

(4)    the amount of profit that Illumina and/or Verinata would have made if Ariosa had not infringed.

## JURY INSTRUCTION NO. 28: REASONABLE ROYALTY- ENTITLEMENT

If Illumina and Verinata have not proved their claim for lost profits, or have proved their

claim for lost profits for only a portion of the infringing sales, then Illumina and Verinata should be awarded a reasonable royalty for all infringing sales for which they have not been awarded lost profits damages.

**JURY INSTRUCTION NO. 29: REASONABLE ROYALTY- DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate royalty that would

24

have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue may be the value of the whole product.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.

## JURY INSTRUCTION NO. 30: REASONABLE ROYALTY -AVAILABILITY OF NON-INFRINGING SUBSTITUTES

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. A non-infringing alternative must be an acceptable product that is licensed under the patent or that does not infringe the patent.

## JURY INSTRUCTION NO.31: REASONABLE ROYALTY-RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and

25

available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The value that the claimed invention contributes to the accused products.

(2) The value that factors other than the claimed invention, such as other unpatented features of the accused product or factors such as marketing or advertising, contribute to the accused product.

(3)     Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

## JURY INSTRUCTION NO.32: REASONABLE ROYALTY- MULTIPLE PATENTS

If you find that Ariosa infringed more than one patent, even by a single infringing act, then you may award separate royalties to Illumina and Verinata for each patent that was infringed.

## JURY INSTRUCTION NO. 33: CONTRACT DAMAGES

I will now instruct you about the measure of damages Ariosa is seeking from Illumina for its claim of breach of contract.

It is the duty of the Court to instruct you about the measure of damages.   By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you decide that Ariosa has proved its claim against Illumina for breach of contract, you also must decide how much money will reasonably compensate Ariosa for the harm caused by the

breach. This compensation is called "damages." The purpose of such damages is to put Ariosa in as good a position as it would have been if Illumina had performed as promised.

To recover damages for any harm, Ariosa must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

Ariosa must prove the amount of its damages. However, it does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.


## JURY INSTRUCTION NO.34: LIMITS ON CONTRACT DAMAGES

If Ariosa has proven its claim against Illumina for breach of contract or breach of the covenant of good faith and fair dealing, then Ariosa may recover at a minimum any damages proven by Ariosa, up to the amount that Ariosa paid Illumina under the contract.

The parties dispute whether the contract limits Ariosa from recovering additional amounts beyond the amount it paid under the contract. If you find that that Illumina willfully or intentionally injured Ariosa through its breach, then the amount of damages that you may award is not limited to the amount that Ariosa paid Illumina under the contract and you may award a larger amount if proven based on the other instructions regarding contract damages that I have given you.


## JURY INSTRUCTION NO. 35: MITIGATION OF DAMAGES

If Illumina breached the contract and the breach caused harm, Ariosa is not entitled to recover damages for harm that lllumina proves Ariosa could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Ariosa's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If Ariosa made reasonable efforts to avoid harm, then your award should include

reasonable amounts that it spent for this purpose.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 36: DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listening to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest believe about the weight and effect of the evidence simply to reach a verdict.

**JURY INSTRUCTION NO. 37: COMMUNICATION WITH THE COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone-including the court-how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

United States District Court
Northern District of California

**JURY INSTRUCTION NO.38:   RETURN OF VERDICT**

A verdict form has been prepared for you.   After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.