EDWARD R. REINES (Bar No. 135960)
edward.reines@weil.com
DEREK C. WALTER (Bar No. 246322)
derek.walter@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

ROBERT T. VLASIS III (admitted *pro hac vice*)
robert.vlasis@weil.com
WEIL, GOTSHAL & MANGES LLP
Washington DC Office
2001 M Street, NW, Suite 600
Washington, DC  20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Attorneys for Plaintiffs and Counterclaim Defendants
ILLUMINA, INC. and VERINATA HEALTH, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| VERINATA HEALTH, INC.,<br><br>and<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY<br><br>    Plaintiffs and Counterclaim-Defendants,<br><br>  v.<br><br>ARIOSA DIAGNOSTICS, INC.,<br><br>and<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>    Defendants and Counterclaim-Plaintiffs. | Case No. 3:12-cv-05501-SI (consolidated with Case No. 3:14-cv-01921-SI and Case No. 3:15-cv-02216-SI)<br><br>**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) AND FOR NEW TRIAL UNDER RULE 59 ON ISSUES FOR WHICH ARIOSA BORE THE BURDEN OF PROOF**<br><br>Date:  June 8, 2018<br>Time: 10:00 A.M.<br>Courtroom: 1, Floor 17<br>Judge: Hon. Susan Illston |

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1

ILLUMINA, INC.,

2

                    Plaintiff,

3

          v.

4

ARIOSA DIAGNOSTICS, INC.,

                    Defendant.

5

ILLUMINA, INC.,

6

                    Plaintiff,

7

          v.

8

ARIOSA DIAGNOSTICS, INC., AND ROCHE
MOLECULAR SYSTEMS, INC.,

9

10

                    Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     LEGAL STANDARD .......................................................................................... 1

III.    ARGUMENT ....................................................................................................... 2

     A.    There Is No Basis For Either JMOL Or A New Trial On Anticipation Of
         The '794 patent By Straus ............................................................................ 2

         1.    Ariosa's Request Is Barred By The Doctrine Of Assignor Estoppel .......... 2

         2.    Even If Assignor Estoppel Were Somehow Assumed Not To Apply,
             JMOL Is Unwarranted ................................................................................ 2

         3.    Even if Assignor Estoppel Were Somehow Assumed Not To Apply,
             Ariosa Is Not Entitled To A New Trial On Anticipation ........................... 7

     B.    There Is No Basis For JMOL That The '430 Patent Is Not Enabled ..................... 8

     C.    There Is No Basis For JMOL Of Express License ................................................. 10

         1.    The Evidence Fully Supports The Jury's Verdict That The '794
             Patent Was Not Expressly Licensed ........................................................... 12

         2.    If The '794 Patent Were Somehow To "Pertain" To The Goods, The
             Evidence Fully Supports It Could Only Be Secondary IP ....................... 16

     D.    The Evidence Fully Supports the Jury's Verdict that Illumina Did Not
         Breach the Agreement ......................................................................................... 17

         1.    The Evidence Shows that Illumina Performed Its Contractual
             Obligations ................................................................................................ 18

         2.    There is No Evidence that Illumina Did Anything The 2012 Sale
             And Supply Agreement Prohibited ........................................................... 18

         3.    Illumina's Lawsuit was a Privileged Act ................................................. 19

         4.    Ariosa Is Not Entitled To A New Trial On Contract Damages ................. 20

IV.     CONCLUSION ................................................................................................... 21

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

i

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
   944 F.2d 1525 (9th Cir. 1991) .................................................................................... 19

5

*Custom Accessories, Inc. v. Jeffrey-Allan Indus.*,
6     807 F.2d 955 (Fed. Cir. 1986) ...................................................................................... 8

7

*Escriba v. Foster Poultry Farms, Inc.*,
   743 F.3d 1236 (9th Cir. 2014) .................................................................................. 2, 3

8

*FN Enterprises, Inc. v. Callahan Mining Corp.*,
9     No. C-92-1420 LCB, 1995 WL 509459 (N.D. Cal. Aug. 18, 1995) ........................... 14

*Founding Members of the Newport Beach Country Club v. Newport Beach*
10    *Country Club, Inc.*, 109 Cal. App. 4th 944 135 Cal. Rptr. 2d 505 (2003) ................... 13

11

*Gen-Probe, Inc. v. Amoco Corp*,
   926 F. Supp 948 (S.D. Cal. 1996) ............................................................................... 19

12

*Harper v. City of Los Angeles*,
13    533 F.3d 1010 (2008) ................................................................................................... 2

14

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   244 F.3d 1365 (Fed.Cir.2001) ...................................................................................... 1

15

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
16    545 F.3d 1359 (Fed. Cir. 2008) ............................................................................. 3, 4, 6

17

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
   69 Cal.2d 33 (1968) .................................................................................................... 15

18

*Pena v. Meeker*,
   No. C 00-4009 CW, 2014 WL 4684800 (N.D. Cal., Sep. 18, 2014) ................ 1, 2, 11, 20

19

*Pinel v. Aurora Loan Servs.*, LLC,
20    814 F. Supp. 2d 930 (N.D. Cal. 2011) ........................................................................ 15

21

*Sony Computer Entm't Am. Inc. v. Am. Home Assur. Co.*,
   532 F.3d 1007 (9th Cir. 2008) ..................................................................................... 15

22

*Sosa v. DIRECTV, Inc.*,
23    437 F.3d 923 (9th Cir. 2006) ....................................................................................... 19

24

*Theme Promotions, Inc. v. News Am. Marketing FSI*,
   546 F.3d 991 (9th Cir. 2008) ....................................................................................... 19

25

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   No. 81-471, 1983 WL 64849 (D. Del. Sept. 2, 1983) .................................................... 7

26

*U.S. v. 4.0 Acres of Land*,
27    175 F.3d 1133 (9th Cir. 1999) ...................................................................................... 2

28

*U.S. v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) ..................................................................................................... 7

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**

ii

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

1

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ................................................................................................... 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**

iii

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

# I.    INTRODUCTION

Ariosa's JMOL on issues where it has the burden of proof is meritless.  It bears two hallmarks of a motion that should not succeed.

First, Ariosa must establish that the jury was legally obligated to find in its favor on *every element* of each defense or claim that is the subject of this motion.  As the Federal Circuit has stated, this terrible burden is only accomplished in "extreme cases." *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 244 F.3d 1365, 1375 (Fed.Cir.2001) ("Courts grant JMOL for the party bearing the burden of proof only in extreme cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor.").

Second, in robot-like fashion, Ariosa moves on every theory it pursued at trial, with apparent indifference to the weaknesses of its different arguments.  Given the steep burden applicable to this motion, without the exercise of judgment by the movant in selecting among its arguments, the proper inference is that there are no successful arguments.

As it turns out, these red flags are valid.  Ariosa did not carry its burden of proof on any of its claims or defenses and the responsive evidence submitted by Illumina is not only enough to support the jury verdict, but it was persuasive to the jury and correct as a matter of law.  This is a far cry from establishing that the jury was required to find for Ariosa on every element of each claim and defense for which it bore the burden of proof.

Ariosa's fallback argument that this Court should exercise its discretion to retry this case also fails.   The trial was fair to Ariosa and the outcome was just.

# II.    LEGAL STANDARD

"Judgment as a matter of law after the verdict may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict." *Pena v. Meeker*, No. C 00-4009 CW, 2014 WL 4684800 at *1 (N.D. Cal., Sep. 18, 2014).  The court "must not weigh the evidence, and instead should simply ask whether the nonmoving party has presented sufficient evidence to support the jury's

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

1  conclusion." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (internal

2  modifications omitted).  "In so doing, the court must draw all reasonable inferences in favor of the

3  nonmoving party and 'disregard all evidence favorable to the moving party that the jury is not

4  required to believe'." *Id*. at 1242-43.  Ultimately if "sufficient evidence is presented to a jury on a

5  particular issue and if the jury instructions on the issue stated the law correctly, the court must

6  sustain the jury's verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).

7      A new trial may be granted where "the verdict is contrary to the clear weight of the

8  evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the

9  trial court, a miscarriage of justice." *U.S. v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir.

10  1999).  The Court's inquiry asks "if, having given full respect to the jury's findings, the judge on

11  the entire evidence is left with the definite and firm conviction that a mistake has been

12  committed." *Pena*, 2014 WL 4684800 at *2.  A new trial is not permitted, however, merely

13  because the Court would have arrived at a different verdict. *4.0 Acres*, 175 F.3d at 1139.

### III.    ARGUMENT

#### A.    There Is No Basis For Either JMOL Or A New Trial On Anticipation Of The '794 patent By Straus

##### 1.    Ariosa's Request Is Barred By The Doctrine Of Assignor Estoppel

17      As an initial matter, Ariosa's request for JMOL or a new trial on the issue of anticipation is

18  improper and should be stricken.  As set forth in Plaintiffs' assignor estoppel motion, *see* Dkt. No.

19  661, all requirements for assignor estoppel are satisfied such that Ariosa is barred from

20  challenging the validity of the '794 patent.  Ariosa already has pressed multiple improper

21  challenges to the '794 patent in both the Patent Office and this Court and it should not be

22  permitted to continue doing so in post-trial briefing.

##### 2.    Even If Assignor Estoppel Were Somehow Assumed Not To Apply, JMOL Is Unwarranted

25      Ariosa's expert, Dr. Charles Cantor, provided the only potential evidentiary support for its

26  claim that Straus anticipates the '794 patent beyond the reference itself.  The jury, however, was

27  not required to believe his testimony for every element, and it thus must be disregarded on JMOL.

28

1    *See Escriba*, 743 F.3d at 1242-43 (The "court must draw all reasonable inferences in favor of the

2    nonmoving party and 'disregard all evidence favorable to the moving party that the jury is not

3    required to believe.'").

4          Even if considered, Dr. Cantor's testimony did not include clear and convincing evidence

5    of anticipation and Ariosa cannot possibly meet its burden on JMOL.  Dr. Cantor's only support

6    for his position that Straus discloses "more than 100 different probes" and "identical universal

7    priming sites" is Figure 5 and paragraphs 39 and 176 of Straus. *See* Trial Tr. (1/18/18) at 1469:19-

8    1471:15.

9          Tellingly, Dr. Cantor never testified that paragraphs 39 and 176 of Straus describe—or

10   would even be considered with—Figure 5, which is the only thing Ariosa relied upon for virtually

11   every aspect of its anticipation theory.  *See id.* at 1598:22-1599:3.  With no evidence connecting

12   these disparate disclosures, and no evidence that a person of skill in the art would consider these

13   disclosures to be "as arranged" in the claims, Ariosa's anticipation argument fails.  *See, e.g.*, *Net*

14   *MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) ("Because the hallmark of

15   anticipation is prior invention, the prior art reference — in order to anticipate under 35 U.S.C. §

16   102 — must not only disclose all elements of the claim within the four corners of the document,

17   but must also disclose those elements 'arranged as in the claim.'").

18         Ultimately, Dr. Cantor could not identify any disclosure in Straus of the elements of

19   limitation (b)(i).  Dr. Cantor acknowledged that Straus does not use the claim language "identical

20   universal priming sites."  *See* Trial Tr. (1/18/18) at 1499:24-1500:6.  This is important because Dr.

21   Cantor admitted that "universal primer" is a standard term in the industry; Dr. Cantor had no

22   explanation for why Straus would not have used the term "universal primer" if this was what was

23   intended.  *See id.* at 1502:8-18.  As to Figure 5, specifically, Dr. Cantor never asserted that it

24   discloses more than 100 probes.  *See id.* at 1469:19-1471:14.  In fact, it discloses only 48.  *See id.*

25   at 1597:24-1598:5.  Similarly, as to paragraph 39, Dr. Cantor never testified that the probes all

26   used an identical primer.  *See id.* at 1470:5-14.  Finally, as to paragraph 176 of Straus, Dr. Cantor

27   pointed to "amplification sequence" as disclosing an "identical universal primer."  *See id.* at

28

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**                                                  3

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

1   1471:9-15 ("Yeah. So Straus uses the term 'amplification sequence,' instead of priming.").  Dr.

2   Cantor, however, testified that there is nothing in Straus that defines "amplification sequence" as a

3   universal primer. *See id.* at 1504:2-5.

4        Dr. Cantor's limited and flawed testimony falls well short of meeting the "clear and

5   convincing evidence" standard for finding the '794 patent anticipated by Straus.  Nevertheless,

6   Ariosa argues that it is entitled to JMOL because Illumina's expert, Dr. Greg Cooper, provided

7   "improper" and "legally spurious" testimony, supposedly because he assumed that anticipation

8   required every claim element to be disclosed in a single figure of a prior art reference.  *See* Dkt.

9   No. 648 at 7-8.

10       This is baseless.  At trial, Ariosa asked Dr. Cooper point-blank if he believed anticipation

11  required all claim elements to be disclosed in a single figure.  Dr. Cooper confirmed that this was

12  ***not*** his view:

13       **Q.**    Because, in your view, anticipation requires disclosing the complete
             claimed invention in a simple figure, for example; is that right?

14       **A.**    I don't know that it has to be in a single figure; but it certainly has to be in a
15              single sort of logical arrangement and presentation that makes it clear that
              these things are meant to be used in this manner in this sort of arrangement.

16  Trial Tr. (1/22/18) at 1648:12-18; *see also id.* at 1655:2-5 ("Again, I don't necessarily think it has

17  to be a figure; but it certainly has to be presented in a logical way that makes it clear that that's the

18  way the invention is meant to be practiced.").  Dr. Cooper's understanding of the legal doctrine of

19  anticipation was 100% correct and right in line with binding Federal Circuit precedent requiring

20  that prior art disclose claim elements "arranged as in the claim."  *See Net MoneyIN*, 545 F.3d at

21  1369. (Fed. Cir. 2008)

22       Ariosa's criticism of Dr. Cooper is not only wrong, but ironic.  It was ***Ariosa's*** position at

23  trial that Straus anticipated because every claim element was disclosed in just a single figure.

24  During opening statements, for instance, Ariosa could not have been clearer that this was its

25  position:

26       And I'll give you a little preview. There is this wonderful figure in Dr. Straus'
27       patent application, which, when Dr. Cantor walks through it, will show that every
       single step is, in fact, contained in Dr. Straus' application.

28

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**                          4

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

1   Trial Tr. (1/8/18) at 167:13-16.  When Dr. Cantor testified, he used nothing but a poster board of

2   Figure 5 of Straus, proclaiming that he had "never seen such a beautiful piece of prior art, because

3   almost everything that we need to talk about is contained within a *single figure*."   Trial Tr.

4   (1/18/18) at 1466:1-3.  Given *Ariosa's* position that the only thing in Straus the jury needed to

5   consider was a single figure, its argument that JMOL is appropriate because Dr. Cooper allegedly

6   failed to consider the entirety of Straus is dubious.

7          Regardless, the reality is that Dr. Cooper considered not just one figure of Straus, but the

8   entirety of Straus.  His testimony—which the jury was entitled to credit—showed that there was

9   nothing in Straus that discloses claim limitation (b)(i)—"a first universal priming site, wherein

10  each of said more than 100 different probes has identical universal priming sites."   Although

11  Ariosa contends that Dr. Cooper "admitted that Straus discloses using identical universal priming

12  sites," Dkt. No. 648 at 10, there was no such admission.

13         Dr. Cooper walked through every conceivable thing Ariosa pointed to in Straus as possibly

14  constituting a disclosure of claim limitation (b)(i) in Straus and explained why Ariosa's theories

15  were wrong.  First, Dr. Cooper testified that Straus discloses only *48* probes in Figure 5, well

16  below the "level of multiplexing" that was  required by the '794 patent, and that Straus is silent as

17  to the actual number of primers that would be used. *See* Trial Tr. (1/18/18) at 1597:21-1598:12;

18  *see also id*. at 1602:19-25.  Second, Dr. Cooper responded to Ariosa's citation of paragraph 39 of

19  Straus and explained that this discloses *multiple* universal priming sites, not an *identical* universal

20  priming sites. *See id.* at 1599:10-1600:11. Third, Dr. Cooper responded to Ariosa's reliance on

21  "ID Sequences" in paragraph 138 of Straus and explained that when Straus is considered in its

22  entirety the references to "ID Sequences" confirms that there is no anticipation.  As Dr. Cooper

23  explained, when the patent describes "ID Sequences," it is "clearly teaching towards multiple

24  different amplification sequences," not a single universal primer.  *See id.* at 1600:17-1602:14.

25  Finally, Dr. Cooper responded to Ariosa's reliance on the concept of "amplification sequences"

26  and explained that there was "nothing" in this disclosure that suggests it was referring to a

27  universal primer.  *See* Trial Tr. (1/22/18) at 1683:16-25

28

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

5

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

Dr. Cooper further explained precisely **why** there was no disclosure in Straus of claim element (b)(i).  As Dr. Cooper explained, rather than focusing on using a single universal primer across a large number of targets, Straus was instead focused on grouping targets into ensembles based on organism such that there would **not** be a single primer for more than 100 targets:

> **Q.**   So in your view, you just – when you read the Straus application, it didn't occur to you that when Straus says a hundred target sequences, that can apply to Figure 5; is that right?
>
> **A.**   That's part of it. And also, again, the issue of 100 – it's not just 100 targets; it's a hundred targets that are amplified by an identical universal primer, which is another critical aspect here.
>
> **And in – when I read Straus, I read that he was sort of teaching away from that, because he was grouping them into ensembles that had a logical arrangement, so E. Coli is one group and Salmonella is another group**.

*Id.* at 1648:19-1649:5.

Finally, even if there were some isolated disclosure in Straus of the use of a single universal primer, Dr. Cooper explained that the disclosure was unlinked to all the other aspects of the disclosure of Straus that Ariosa relied upon:

> **Q.**   Okay. And you understand that in Straus, Straus discloses that the amplification step is carried out using – using fewer than four pairs, for example, "a single pair of amplification sequences to yield amplification products"?
>
> **A.**   I believe that's written at one point; and, again, that's not clear that that is linked to the solid support, the ligation, all of the other things of Figure 5. So it, again, we're – *you're sort of dancing around the document, picking and choosing different aspects of it; but it's never presented in a logical way to make it clear that one should do it all together*.

*Id.* at 1654:7-17.  In other words, even if all the elements of the claim were somewhere in Straus, they were not "arranged as in the claim," as anticipation requires.  *See Net MoneyIN*, 545 F.3d at 1369.  Dr. Cooper's opinions were based not just on a single figure of Straus, but a holistic view of the entirety of Straus' teachings.

### 3.     Even if Assignor Estoppel Were Somehow Assumed Not To Apply, Ariosa Is Not Entitled To A New Trial On Anticipation

Ariosa presents two arguments to support its new trial request.  The first is that the weight of the evidence supposedly established that Straus anticipates.  For the reasons stated immediately above, this argument is without basis.

Ariosa's remaining argument is that it was "prejudiced" because Plaintiffs allegedly mentioned the IPR proceedings, supposedly in violation of a Court order.  *See* Dkt. No. 648 at 11. Yet, Ariosa does not describe with particularity any mention of the IPR proceeding that supposedly created prejudice, let alone anything deserving of a new trial.  *See id.*

Most of the alleged prejudicial references to the IPR proceedings did not refer to the IPRs at all.  *See, e.g.*, Trial Tr. (1/11/18) at 738:20-739:13 (correcting Dr. Stuelpnagel's assertion that his efforts had "invalidated" the '794 patent; no mention of IPR); Trial Tr. (1/23/18) at 1977:8-15 (generic reference during closing to the fact that the Patent Office had reviewed both of the patents-in-suit such that Ariosa had a "clear and convincing burden"; no mention of IPR); *id.* at 1978:5-6 (generic reference during closing to the fact that the Patent Office had reviewed the '794 patent such that Ariosa had a "clear and convincing burden"; no mention of IPR).

Notably, Ariosa did ***not*** object to these alleged improper references, so it should not now be heard to argue that they were so prejudicial such that a new trial is warranted.   *See U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238-9 (1940) ("In the first place, counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial."); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, No. 81-471, 1983 WL 64849, at *19 (D. Del. Sept. 2, 1983) ("Plaintiff's counsel's failure to object at trial readily allows the Court to deny the plaintiff's Motion for a New Trial based on defense counsel's statements.  Those statements, though hardly the paradigm of propriety, were clearly not so prejudicial as to require a new trial when no objection was raised.").

Moreover, the Court did not, as Ariosa suggests, bar Illumina from mentioning the IPR proceedings altogether.   The Court stated, for instance, that Illumina could refer to the IPR

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

7

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1   proceedings insofar as they give context to the negotiations that were relevant to Ariosa's contract

2   counterclaims.  *See* Dkt. No. 547 at 6-7.  Many of the allegedly improper references to the IPR

3   proceedings fall into precisely this category.  *See* Trial Tr. (1/17/18) at 1323:23-1325:4 (mention

4   of IPR in relation to contract counterclaims); Trial Tr. (1/23/18) at 1883:18-1884:2 (same); *id.* at

5   1928:13-20 (same).  Ariosa's contention that this was somehow improper or prejudicial is without

6   merit because these references to the IPR proceedings were specifically what the Court's pretrial

7   order contemplated.  *See* Dkt. No. 547 at 6-7.  Indeed, Ariosa only objected to one of these

8   allegedly improper references, and then declined to pursue the objection in view of the Court's

9   ruling.  *See* Trial Tr. (1/17/18) at 1324:13-1325:4.

10   Likewise, the Court permitted the IPRs to be raised insofar as it was implied that the Patent

11   Office had never considered Straus.  *See* Dkt. No. 547 at 6-7.  Yet, even in connection with this

12   topic, Plaintiffs did not go so far as to mention the IPRs.  At most, Ariosa's expert, Dr. Cantor,

13   was asked to confirm that the Patent Office had considered the validity of the '794 and/or '430

14   patents on multiple occasions.  *See* Trial Tr. (1/18/18) at 1496:4-1498:21, 1511:3-13 (correcting

15   the implication made at 1509:21-1510:7).  The IPRs were not mentioned and there was no further

16   questioning of Dr. Cantor.

17   Ariosa's request for a new trial should be denied.

18   **B.      There Is No Basis For JMOL That The '430 Patent Is Not Enabled**

19   Ariosa's request for a JMOL that the '430 patent is not enabled is focused almost

20   exclusively on the allegation that the '430 patent does not sufficiently disclose an algorithm for

21   determining the presence or absence of aneuploidy.

22   Ariosa cannot possibly meet its burden to show that the only reasonable conclusion is that

23   it proved non-enablement by clear and convincing evidence.  The testimony of Ariosa's own

24   expert, Dr. Charles Cantor, shows the fundamental deficiencies in Ariosa's case.  It is black letter

25   law that the "person of ordinary skill is a hypothetical person who is presumed to be aware of all

26   the pertinent prior art."  *Custom Accessories, Inc. v. Jeffrey-Allan Indus.*, 807 F.2d 955, 962 (Fed.

27   Cir. 1986).  Dr. Cantor confirmed his understanding that one of ordinary skill in the art would be

28

presumed to have knowledge of all the prior art for purposes of his enablement testimony.  *See* Trial Tr. (1/18/18) at 1486:14-18.  He then testified that the Quake and Craig prior art references disclose *inter alia* element (f) of claim 1 of the '430 patent, which is the analytical step:

> **Q.**   In terms of the claim requirements that you're now contending aren't adequately disclosed in the '430 patent, your opinion in your very expert report that you provided was that the prior art Quake and Craig references ***adequately disclose*** that to a person of skill in the art; isn't that true?
>
> **A.**   That's what I said.

*See id.* at 1490:3-8.  As Dr. Cantor testified, one skilled in the art would have been benefitted from Quake and Craig—including for element (f).  Craig in particular provides numerous methods for analyzing targeted regions of DNA sequences with the use of Bayes factors for discovering and genotyping polymorphisms.   This testimony alone warrants denial of Ariosa's enablement JMOL.

Nevertheless, citing to Dr. Richard Rava, a '430 patent inventor, Ariosa alleges that it is "undisputed" that there is no such algorithm.[1]  Dr. Rava, however, said no such thing.  Dr. Rava testified that column 13 of the '430 patent identified multiple references that teach techniques for carrying out the aneuploidy analysis:

> **Q.**   Now, did the patent also describe techniques for doing the analysis of the enriched sequence data?
>
> **A.**   Yes.  We move to column 13, and if we drop down to paragraph 49 on column 13 –
>
> So here we incorporated other patents that talked about how to do analysis. And as you can see in this paragraph, it lists a set of other applications. And each of those applications had different methods for doing analysis.  And this was our way of incorporating the analysis part of the patent into the patent.

Trial Tr. (1/9/18) at 325:15-25.  As Illumina's expert, Dr. Greg Cooper, confirmed, the references in the '430 patent disclose numerous statistical techniques to determine fetal aneuploidy.  *See* Trial Tr. (1/18/18) at 1617:8-1619:13.

---

[1] Ariosa argues in passing that Dr. Rava admitted that the '430 patent does not provide an example teaching pooling and indexing.  *See* Dkt. No. 648 at 12.  This is incorrect.  In fact, Dr. Rava explained that Figure 26 teaches an example of indexing and pooling.  *See* Trial Tr. (1/9/18) at 381:1-11.

1    Ariosa's primary response is to contend that the cited methods are specific to random

2    sequencing, such that they supposedly would not work with Ariosa's targeted approach.  *See* Dkt.

3    No. 648 at 13.  Yet, the cited techniques include approaches akin to the FORTE method used in

4    Ariosa's targeted approach.  *See* Trial Tr. (1/18/18) at 1618:19-1619:6 ("It also talks about a

5    likelihood method. And again, we heard from Dr. Wang and Dr. Quackenbush today about this

6    disomic versus trisomic model.  That's a likelihood model. So that's very much the general class

7    of methods that FORTE is using.").

8    Any notion that the techniques used for random sequencing could not be applied to

9    targeted sequencing was put to rest by Dr. Cooper, who explained that the exact statistical

10   methods the '430 patent discloses based on Z-scores were in fact used by Ariosa scientists—and

11   were "quite effective" at determining fetal aneuploidy *for the targeted approach*:

> **Q.**   All right.  Now, you heard testimony from both Dr. Cantor and Dr. Wang
>          that they thought the types of techniques disclosed in the '430 patent, like a
>          Z score, wouldn't work.  Do you recall that testimony?
>
> **A.**   I do.
>
> **Q.**   Do you agree with it?
>
> **A.**   I don't.
>
> **Q.**   Why not?
>
> **A.**   Because Ariosa scientists published an analysis based upon Z scores that
>          was quite effective.

*Id.* at 1619:14-1621:1.  As Dr. Cooper explained, Ariosa's proof of concept study for Harmony

used Z scores to show "for the first time non-invasive detection of trisomy 21 and trisomy 18."

*See* PX462-004, 006.

Accordingly, Ariosa's enablement JMOL should be denied.

**C.    There Is No Basis For JMOL Of Express License**

Having agreed to a jury instruction that asked the jury to decide whether it had a license to

the '794 patent through the 2012 Sale and Supply Agreement between Illumina and Ariosa (the

"Agreement" or "SSA"), Ariosa reverses course now that it lost and argues that there is no fact

question.  It contends the Court should resolve the license defense as a matter of law.  *See* Dkt.

No. 648 at 2.  Yet, the determination of whether the '794 patent was licensed under the SSA is a

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**

10

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

question of fact, which the jury resolved in Illumina's favor based on substantial evidence (as discussed below).

Ariosa's JMOL acknowledges that its license defense rests entirely on whether the SSA granted an express license to the '794 patent because the patent is supposedly considered "Core IP Rights in Goods" under the SSA.  Dkt. No. 648 at 3.[2]  In asking the Court to overturn the jury verdict, Ariosa summarily asks the Court to apply, retroactively, a tortured definition of "pertain" to find that the '794 patent required a sequencing step and therefore, it must "pertain" to the sequencers it purchased under the SSA.  Dkt. No. 648 at 3:16-5:22.  However, Ariosa did *not* ask the Court to include an interpretation of that term in its proposed jury instructions and this Court already ruled that whether the '794 patent "pertains" to the goods was a question of fact for the jury.  *See* Dkt. No. 517 (MSJ Order) at 15 ("There are disputed material facts regarding Ariosa's claim to an express license, including whether the '794 patent 'pertains' to Ariosa's use of the Goods and whether the '794 patent is 'Core IP.'").

As discussed below, the jury's verdict finding no express license was based on substantial evidence and should not be overturned.  The evidence at trial established that the '794 patent related to "library prep," which Ariosa did not purchase from Illumina, and the '794 patent was not Core IP to Illumina's sequencers.  Ariosa's JMOL ignores the evidence supporting the jury's verdict and falls far short of its burden of showing that the evidence "construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict." *Pena*, 2014 WL 4684800 at *1.  The Court should not overturn the jury's findings through a post-trial "interpretation" of an unambiguous term.

---

[2] Section 3(a) of the SSA states in pertinent part: "[T]he purchase of Goods under this Agreement confers on Customer the non-exclusive, nontransferable, personal, non-sublicensable right *under Core IP Rights in Goods* to use and import (only from Illumina, its Affiliates, or their authorized distributors) the Goods only in the Customer Field of Use."  *See* Dkt. No. 651-11 § 3(a) (emphasis added).  The Agreement defines "Core IP Rights" as "Illumina Intellectual Property Rights that *pertain to the goods* (and use thereof in accordance with their Documentation) *other than Secondary Illumina IP Rights in Goods*, which are expressly excluded from Core IP Rights in Goods." *See id*. § 1 (emphasis added).

### 1. The Evidence Fully Supports The Jury's Verdict That The '794 Patent Was Not Expressly Licensed

At trial, Ariosa argued that its Harmony VI product was licensed under the SSA.[3]  The jury verdict was based on ample, credible testimony from several witnesses, ***including Ariosa's own expert***, establishing '794 patent was ***not*** expressly licensed under the SSA because it was not "Core IP Rights in Goods," at least to the goods Ariosa purchased.  To prove an express license, Ariosa needed to establish that the '794 patent is Core IP for the sequencers and sequencing reagents (the "Goods") actually sold under the Agreement.

At trial, Illlumina's former Senior Vice President, Nicholas Naclerio, explained why the '794 patent was not Core IP: "rights pertaining to the goods" means Ariosa obtained only a right to use Illumina's sequencers to sequence.  *See* Trial Tr. (1/10/18) at 444:19-445:13; *see also id.* at 448:21-449:8 ("clearly you don't need the '794 patent to run the sequencer."), 532:19-533:3 ("[Y]ou have the right to use the product in accordance with the directions, period."), 533:6-15 ("There's no grant of a license that you can use for anything but using our products according to the directions.").

Mr. Naclerio's testimony was clear and credible:  "The '794 patent doesn't apply to the product they bought, the sequencer.  The '794 patent applies to a library prep product, which they didn't buy."  *See id.* at 534:15-535:4.  Of course, this testimony makes perfect sense.  There would be no plausible reason for Illumina to give a purchaser of one set of goods the rights to its IP portfolio covering ***other*** goods it sells but which the purchaser did not want to buy.

Ariosa's motion improperly ignores Mr. Naclerio's testimony.  It attempts to justify this by arguing that "the testimony of both sides' witnesses concerning their personal understanding of the

---

[3] Ariosa falls short of meeting its burden of showing that a reasonable jury could have only concluded that the '794 patent was expressly licensed for the additional reason that evidence at trial showed that Ariosa did not actually believe it was licensed, throwing the credibility of its witnesses on this point into question.  When faced with Illumina's initial allegation of infringement, Ariosa did not respond by saying that it was licensed under the SSA; rather, it made a not-too-veiled threat that Illumina would regret asserting the patent.  *See* Trial Tr. (1/11/2018) at 788:23-789:2.  It was not until months later that Ariosa asserted it had a license.  *See* Trial Tr. (1/11/2018) at 499:9-500:4.

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

12

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1  meaning of the SSA is irrelevant under California law to the interpretation of the agreement" (Dkt.

2  No. 648 at 2), even though Ariosa expressly argued the opposite at trial.  *See* Trial Tr. (1/23/18) at

3  1939:3-23 (Ariosa Closing Argument) ("How do we know this Core IP Rights in Goods? Because

4  you can see the testimony of Mr. Eidel."), 1945:12-20 ("And we saw Mr. Eidel's testimony early

5  on. This is core IP.").

6          While "[t]he parties' undisclosed intent or understanding" may not be relevant to

7  interpreting a contract, Mr. Naclerio's testimony regarding "Core IP" is relevant to whether an

8  express license was actually given and it reflected the parties' intent at the time they entered into

9  the Agreement.  *Founding Members of the Newport Beach Country Club v. Newport Beach*

10  *Country Club, Inc.*, 109 Cal. App. 4th 944, 955, 135 Cal. Rptr. 2d 505 (2003) (citing Cal. Civ.

11  Code, § 1636) ("The basic goal of contract interpretation is to give effect to the parties' mutual

12  intent at the time of contracting.").  In explaining why no license to the '794 patent was conveyed

13  under the agreement, Mr. Naclerio testified that Illumina and Ariosa had a meeting of the minds

14  about the meaning of "rights pertaining to the goods" consistent with his understanding of the SSA

15  that illustrates why there was no express license:

16      **Q.**     What was intended by "rights pertaining to the goods"?

17      **A.**     So, again, I'd say it's the rights to the goods in this case is the sequencer.
                   And we're saying that you have the right to use the sequencer to sequence.

18
    **Q.**     Were you intending to convey rights to use the homebrew library prep
19              selection step that was that proprietary biochemistry step that Ariosa was
               going to make on its own?

20      **A.**      Yeah, clearly not.

21      **Q.**     And do you believe that, in your discussions with Ariosa, that it was clear
22              that you weren't, by selling them the sequencer, authorizing them to do
               whatever they were doing under the hood for the proprietary biochemistry?

23      **A.**     Yes, I believe it was very clear.

24  Trial Tr. (1/10/18) at 445:1-13

25          Mr. Naclerio's testimony establishes the '794 patent was not Core IP as a matter of fact.

26  Ariosa's own technical expert, Dr. Quackenbush, confirmed Mr. Naclerio's testimony that the

27  '794 patent is not Core IP because it does not "pertain to" Illumina's sequencers:

28

**Plaintiffs' Opposition to Ariosa's Motion for**
**Judgment as a Matter of Law For Which Ariosa**
**Bore The Burden of Proof**
13
**Case No. 3:12-cv-05501-SI**
**Case No. 3:14-cv-01921-SI**
**Case No. 3:15-cv-02216-SI**

**Q.**     To a person of ordinary skill in the art, the '794 patent pertains to the Illumina DNA sequencers?

**A.**     I wouldn't say it pertains to the Illumina DNA sequencers.

Trial Tr. (1/18/18) at 1449:24 (by video, Dkt. No. 663-4); *see id.* 1448:25-1449:5, 1450:12-16. Ariosa ignores completely the overwhelming testimony on whether the '794 patent was Core IP, a question of fact.  There was more than sufficient evidence to support the jury's verdict that the '794 patent was not "Core IP" and thus not licensed under the Agreement.

Ariosa contends that the real issue is a pure matter of law and that the Court should apply dictionary definitions to find that "pertains to" is synonymous with "relate to," and "relate to" can be construed as "have a connection with or reference to" and, if the Court applies that definition then the '794 patent must be Core IP as a matter of law.  Dkt. No. 648 at 3-4.  This argument requires inference upon inference, unconnected to the parties' actual negotiations or understanding, and thus fails

First, Ariosa did not ask the Court to perform additional contract interpretation or otherwise instruct the jury on the meaning of "pertains."  It then argued to the jury that the '794 patent was Core IP.  Trial Tr. (1/08/18) at 162:21-163:10 ("We have a license to the '794 patent, and that is why we're here in a breach-of-contract case. They had no right to sue us on the '794 patent. It's covered under Core IP Rights and Goods."); *id.* at 141:5-25, 143:3-18 ("We think the evidence is not going to support the contention that somehow when you buy the sequencer and not the assay, that you've gotten Core IP Rights in the sequencers [sic] – I mean, excuse me – rights first in the assay. We don't think that. But that's your decision to make after you've heard all of the evidence.").  It waived any objections to the jury instructions and waived any right to obtain further contractual interpretation.  *See FN Enterprises, Inc. v. Callahan Mining Corp.*, No. C-92-1420 LCB, 1995 WL 509459, at *6 (N.D. Cal. Aug. 18, 1995).

Second, the evidence provided to the jury was that the '794 patent relates to library prep, not sequencers, and that all parties understood that Illumina was not granting a license for Ariosa to use its "homebrew" library prep.  That factual testimony was properly received and properly relied on by the jury in answering the questions on the verdict form.  Ariosa did not object to it.

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

14

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1    Third, generalized definitions of terms cannot, by themselves, be used to overcome

2    evidence of the relevant meaning given to those terms by the parties.  *See* Cal. Civ. Code § 1644

3    ("The words of a contract are to be understood in their ordinary and popular sense, rather than

4    according to their strict legal meaning; unless used by the parties in a technical sense, or unless a

5    special meaning is given to them by usage, in which case the latter must be followed"); *Sony*

6    *Computer Entm't Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1013 (9th Cir. 2008) (noting

7    that dictionary definitions must be considered in context with the particular contract at issue); *see*

8    *also Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 38, 69

9    Cal.Rptr. 561, 442 P.2d 641 (1968) (noting that terms do not have a "fixed" or "objective"

10   meaning and must be interpreted in light of the specific circumstances and purposes of the parties

11   in the particular contract at issue).  As Mr. Naclerio's testimony shows, the license to Core IP gave

12   Ariosa "the right to use the sequencer to sequence" and not the right to use Illumina's IP in

13   connection with products not purchased from Illumina.[4]  *See* Trial Tr. (1/10/18) at 445:1-13.

14   Ariosa also contends that Illumina's definition of Core IP must be rejected because it

15   renders the license grant meaningless in light of the doctrine of patent exhaustion.  But that is

16   simply not true.  When read together with Section 3(a), it is apparent that the parties'

17   understanding of Core IP rights does not render the license grant "nugatory."  *See Pinel v. Aurora*

18   *Loan Servs.*, LLC, 814 F. Supp. 2d 930, 943 (N.D. Cal. 2011) ("The whole of a contract must be

19   construed together in order 'to give effect to every part, if reasonably practicable, each clause

20   helping to interpret the other.'") (citing Cal Civ Code § 1641).  Section 3(a) grants Ariosa Core IP

21   to use the goods–sequencers not library prep–"***in the Customer Field of Use.***"  *See* Dkt. No. 651-

22   11 § 3(a).  The SSA expressly explains that "Section 3(a) is designed to and does alter the effect of

23   the exhaustion of patent rights that would otherwise result if the sale of Goods was made without

24   restriction . . . ."  *See id*. at § 3(c).  Thus, rather than granting a meaningless license as Ariosa

25

26

27   ───────────────────
[4] Even if the '794 patent did pertain to the sequencers, Ariosa still would not have rights to the
'794 patent for library prep because Ariosa did not purchase library prep kits from Illumina—
28   Ariosa instead made the homebrew kits on its own.  *See* Trial Tr. (1/10/18) at 534:15-535:4.

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF                              15

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1    contends, the express license to Core IP in Section 3(a) operates to further limit Ariosa's right to

2    practice any patents supposedly exhausted by the sale of the goods.

3        Finally, Ariosa argues the '794 patent necessarily "pertains to" the sequencers it purchased

4    because Illumina's infringement theory involves a final sequencing step.  That argument was also

5    made to the jury and rejected.  Further, Ariosa's argument falls flat as a matter of logic.  Simply

6    because it was possible for Ariosa to use an Illumina sequencer to perform a generic "detection"

7    step of the '794 patent does not mean that this patent "pertains" to the goods such that it gets a

8    express license for its home brew.  The evidence was that the '794 patent is agnostic as to the

9    method of performing the detection steps—and does not include sequencing as a claim step.  Trial

10   Tr. (1/18/18) at 1450: 2-16.

11       As described above, Ariosa's own expert confirmed for the jury that the '794 patent is not

12   necessary to use an Illumina sequencer and that it does not "pertain" to goods that Ariosa

13   purchased.  Trial Tr. (1/18/18) at 1448:25-1449:5; *id.* at 1450: 12-16 ("**Q.** Have you ever used an

14   Illumina sequencer? **A.** Yes, I have. **Q.** Have you done it without using the Golden Gate approach?

15   **A.** Golden Gate is a different assay than what's involved in sequencing.").  Simply put, the jury

16   found that the '794 patent was not Core IP to Illumina's sequencers merely because one step of the

17   patent could be satisfied by using the sequencer.  The jury was asked to decide if the '794 patent

18   was licensed; its determination that it was not was based on more than ample evidence and should

19   not be disturbed.

20           **2.      If The '794 Patent Were Somehow To "Pertain" To The Goods, The
                        Evidence Fully Supports It Could Only Be Secondary IP**

21

22       There was ample evidence presented at trial for a reasonable jury to find that Ariosa does

23   not have an express license, even if the '794 patent were somehow to "pertain" to the goods, for

24   the additional reason that the '794 patent would be "Secondary IP," which the Agreement

25   expressly excluded.

26       Core IP is expressly defined in the SSA to exclude "Secondary Illumina IP Rights in

27   Goods."  *See* Dkt. No. 651-11 § 1.  Secondary IP is defined as "the secondary Illumina Intellectual

28   Property Rights that pertain to the Goods (and use thereof) only with regard to particular field(s)

---

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**

16

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

or application(s), and *are not common to the Goods in all applications and fields*." *See id.* (emphasis added). The '794 patent is—most definitely—not common to the Illumina sequencers in *all* applications and fields. As just one example, it is undisputed that Illumina and virtually every other provider of DNA sequencing-based non-invasive prenatal testing uses random sequencing techniques that, unlike Ariosa's DANSR technique and the '794 patent, do not target specific sequences. *See, e.g.*, Dkt. No. 663-2 (describing sequencing approaches). Thus, the 794 patent would need to be licensed as "Secondary IP," if at all.

Ariosa contends, however, that the '794 patent is not Secondary IP because "it is not particular to any one application." Dkt. No. 648 at 3. But this position is backwards and incompatible with the plain language of the Agreement that clearly defines Secondary IP to include patents that are not common in *all* applications (but may have *more than one* application). *See* Dkt. No. 651-11 § 1 ("By way of non-limiting example, [Secondary IP includes] Illumina Intellectual Property Rights for specific diagnostic methods, or for specific nucleic acid biomarkers or combinations of biomarkers…"). Several witnesses at trial also testified how "'794 [patent] can be used in a number of applications" but is not "application-specific." *See, e.g.*, Trial Tr. (1/16/18) at 1039:15-20 (Dr. Cooper testifies that the "'794 can be used in a number of applications, yes.") (Cooper); *see also* Trial Tr. (1/17/18) at 1162:6-8 (testimony of Jeff Eidel: "**Q**. Does Illumina consider the '794 patent to be application-specific? Yes or no? **A**. No."). Thus, there was sufficient evidence presented at trial to support a finding by the jury that the '794 patent was Secondary IP, not Core IP, and thus not licensed.

**D.    The Evidence Fully Supports the Jury's Verdict that Illumina Did Not Breach the Agreement**

Ariosa's JMOL on its breach of contract claim based on Illumina's inclusion of the '794 patent in this case also fails. Ariosa's JMOL rests on the faulty premise that, because it is supposedly entitled to judgment on its license defense, which it is not, it is also entitled to judgment on its breach claim. *See* Dkt. No. 648 at 6-7. Yet, even if its license defense were somehow valid, Ariosa falls far short of carrying its burden here on its breach claim.

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

17

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1    To succeed on its breach of contract claim, Ariosa needed to prove:  (1) Illumina failed to

2  do something the contract required it to do, or (2) did something that the contract prohibited it

3  from doing.  Dkt. 625 (Jury Instructions), No. 23.  Based on the evidence, a reasonable jury could

4  clearly have found that neither element was met.

5          **1.     The Evidence Shows that Illumina Performed Its Contractual**
                 **Obligations**

6
7    Ariosa does not and cannot assert that Illumina failed to perform any contractual

8  obligation.  It is undisputed that Illumina provided the sequencers and reagents it agreed to supply

9  under the SSA for the full three-year term, even after the lawsuit was filed.  Ariosa's Jean Yee

10  admitted at trial that Ariosa fully used the reagents it purchased from Illumina. *See* Trial Tr.

11  (1/18/18) at 1527:25-1528:3.  She also admitted that Ariosa fully depreciated the sequencers it

12  purchased from Illumina and may even still be using them beyond their useful life.  *See id.* at

13  1529:2-10.  Thus, the evidence is that Illumina supplied everything it was supposed to under the

14  SSA and Ariosa used up everything, such that it received the full benefit of its bargain.

15          **2.     There is No Evidence that Illumina Did Anything The 2012 Sale And**
                 **Supply Agreement Prohibited**

16    Ariosa contends that Illumina breached the SSA by adding the '794 patent to this case.  *See*

17  Dkt. No. 648 at 6.  But the Agreement does not contain a covenant not to sue or any other

18  provision prohibiting Illumina from suing Ariosa on any patent.  *See generally* Dkt. No. 651-11.

19  The Agreement does not require a meet and confer between the parties, mediation, or any other

20  pre-condition to filing suit.  *Id.*  Ariosa's Motion identifies no evidence at trial to the contrary.

21  The evidence at trial also did not establish any waiver of the right to sue or any promise not to sue.

22  Thus, even if Ariosa were somehow licensed to the '794 patent through the SSA (which as

23  described above it is not), Ariosa identifies nothing in the SSA prohibiting Illumina from filing

24  suit to enforce the patent or resolve a dispute regarding scope of the license.  Because no provision

25  of the Agreement barred Illumina's lawsuit, Illumina did not breach anything in filing it.

26
27
28

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF

18

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

### 3. Illumina's Lawsuit was a Privileged Act

Ariosa also has not overcome the *Noerr-Pennington* Doctrine that protects Illumina's filing of this lawsuit as a privileged act. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) ("not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected" by the doctrine.) (quoting *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991)). Although the *Noerr-Pennington* doctrine initially developed in the context of antitrust cases, because it "is based on and implements the First Amendment right to petition," the doctrine is not limited to the antitrust context and "applies equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000).

Ariosa's breach of contract claim is based exclusively on Illumina's filing of this patent infringement lawsuit, or pre-filing activity, that is protected under the *Noerr-Pennington* doctrine bars. *See Gen-Probe, Inc. v. Amoco Corp*, 926 F. Supp 948, 956 (S.D. Cal. 1996) (stating *Noerr-Pennington* doctrine "bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity."). The sole exception to the *Noerr-Pennington* doctrine is for "sham litigation." But to invoke that exception, the party seeking to impose liability must show both that the litigation in question is objectively baseless, in that no reasonable litigant could expect success on the merits, and that the litigation was brought for an improper purpose. *See Sosa*, 437 F.3d at 938; *see also Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1008 (9th Cir. 2008).

Of course, this is not sham litigation; Illumina proved it had a reasonable basis to believe Ariosa infringed the '794 patent, and the jury agreed. *See, e.g.*, Trial Tr. (1/10/18) at 448:21-449:8 ("**Q**. Can you explain whether you thought you conveyed the '794 patent as Core IP Rights in this Supply Agreement when you agreed to sell sequencers to Ariosa for the Harmony™ test? **A.** Yeah. And, clearly, that's not the case…"); *id.* at 607:14-25 ("**Q.** Now, did you – at the time that you approved your team entering into the Supply Agreement, did you believe the '794 patent – the Golden Gate patent – was part of the Core IP Rights? **A**. No.").

1    Nor did Illumina assert breach for any improper purpose.  *See, e.g.*, *id*. at 620:6-11 ("**Q.**

2    Was the January 2014 notice of breach sent to Ariosa to try to injure them in any way, or – or to

3    hurt them maliciously, or anything like that? **A.** Not at all. I mean, the only intent of that we

4    thought and hoped was to bring them to the table to complete a negotiation.").  Illumina's lawsuit

5    was a privileged act not subject to any exception under the *Noerr-Pennington* doctrine.

6    Accordingly, the Court should deny Ariosa's motion for judgment as a matter of law on its breach

7    of contract claim and also deny Ariosa a new trial on the issue of contract damages.

8    ### 4.  Ariosa Is Not Entitled To A New Trial On Contract Damages

9    In a single sentence, Ariosa asserts that it should be given a new trial on damages related to

10   its breach of contract claim.  *See* Dkt. No. 648 at 7.  To be clear, Ariosa is not requesting a new

11   trial on whether Illumina breached the SSA; Ariosa does not contend that the jury was improperly

12   instructed or that anything about this aspect of trial was improper or unfair such that a new trial on

13   the issue of breach and/or license is warranted.  Rather, Ariosa's new trial request is solely a

14   contingent request for a new damages trial in the event the Court grants JMOL in its favor on both

15   its license defense and its breach of contract claim.  *Id.*  Under no circumstances is such a new

16   trial warranted.

17   First, Ariosa can only prevail on its request for a new trial on damages if it meets the

18   extraordinarily high burden of showing that the evidence presented at trial permits only one

19   reasonable conclusion as to each and every element of ***both*** its license defense and its breach of

20   contract claim.  *Pena*, 2014 WL 4684800 at *1.  As explained above, that is a burden Ariosa has

21   not and cannot meet.

22   Second, even if this Court granted JMOL, no new trial on damages is warranted because

23   the record shows that Ariosa is not entitled to damages.  In a footnote, Ariosa cites the testimony

24   of its Head of Finance, Ms. Jean Yee, and asserts that it was harmed in the amount of the $14.4

25   million it paid for goods under the SSA.  Dkt. 648 at 7 n.3.   Yet, it was Ms. Yee who confirmed

26   that Ariosa is not entitled to damages.  Ms. Yee admitted at trial that Ariosa used or otherwise

27   depreciated all of the consumables and equipment it bought under the SSA.  *See* Trial. Tr.

28

**PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR**
**JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA**
**BORE THE BURDEN OF PROOF**                    20

**CASE NO. 3:12-CV-05501-SI**
**CASE NO. 3:14-CV-01921-SI**
**CASE NO. 3:15-CV-02216-SI**

(1/18/2018) at 1527:13-1528:3, 1529:2-4.   As a result, Ariosa received the full benefit of the bargain under the SSA and there can be no damages as a matter of law.   Ariosa certainly never proved any amount that was paid that was not fully enjoyed.   Ariosa's request for a new trial on the limited issue of contract damages should be denied.

## IV.    CONCLUSION

The jury verdict on invalidity, express license and breach of contract is supported on ample evidence and entirely reasonable grounds.   The verdict should be upheld and Ariosa's renewed JMOL motion and motion for a new trial should be denied.

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF                                                21

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

1    Dated: April 6, 2018                    WEIL, GOTSHAL & MANGES LLP

2

3                                            By:      */s/ Edward R. Reines*

4                                                    Edward R. Reines
                                             Attorneys for Plaintiffs and
5                                            Counterclaim Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO ARIOSA'S MOTION FOR
JUDGMENT AS A MATTER OF LAW FOR WHICH ARIOSA
BORE THE BURDEN OF PROOF                                    22

CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI