EDWARD R. REINES (Bar No. 135960)
edward.reines@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Attorney for Plaintiffs and
Counterclaim-Defendants
VERINATA HEALTH, INC. and
ILLUMINA, INC.

LISA S. GLASSER (Bar No. 223406)
lglasser@irell.com
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
Attorney for Defendant and
Counterclaim-Plaintiff
ARIOSA DIAGNOSTICS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| VERINATA HEALTH, INC., *et al.*<br><br>    Plaintiffs and<br>    Counterclaim-Defendants,<br><br>    v.<br><br>ARIOSA DIAGNOSTICS, INC., *et al.*<br><br>    Defendants and<br>    Counterclaim-Plaintiffs. | Lead Case No. 3:12-cv-05501 SI<br>Case No. 3:14-cv-01921-SI<br>Case No. 3:15-cv-02216-SI<br><br>**JOINT FURTHER CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Judge:   Hon. Susan Illston<br>Date: September 11, 2020<br>Time: 3:00 PM<br>Location: AT&T Conference Line |

Pursuant to the Clerk's Notice Setting Further Case Management Conference (Dkt. No. 738), plaintiffs Verinata Health, Inc. and Illumina, Inc. ("Plaintiffs") and defendant Ariosa Diagnostics, Inc. ("Ariosa") jointly submit this Joint Further Case Management Conference Statement in anticipation of the Further Case Management Conference scheduled for September 11, 2020 at 3:00 PM via AT&T Conference Line.

## CASE STATUS

The Court held a jury trial from January 8-25, 2018.  Dkt. Nos. 572, 634.  The parties filed various post-trial motions, most of which were resolved in orders dated July 19, 2018 and October 4, 2018.  The Federal Circuit affirmed this Court in all respects in an Opinion issued on April 24, 2020, and issued its mandate on August 14, 2020.  Dkt. Nos. 729, 736.

The parties agree that the jury verdict and costs assessed have been satisfied.  The parties also agree that pre- and post-judgment interest have been awarded (D.I. 721), and that the quantification of the amount of interest should await the resolution of the remaining issues.

## REMAINING ISSUES

### 1. Illumina's Request for Pre-Verdict Supplemental Damages

#### A. Plaintiffs' Position

For its remedy for Ariosa's pre-verdict infringement that were not included within the verdict because Ariosa had not produced the financial information for such sales, Plaintiffs filed a motion requesting this relief that the Court denied without prejudice.  Plaintiffs propose that they refile that motion to update it with current case law and because some of the issues the parties briefed are resolved or moot.  Given that Plaintiffs anticipate filing their motion for post-verdict royalties, the refiling will not create any delay in resolution of this matter.

#### B. Ariosa's Position

Illumina's request for pre-verdict supplemental damages is pending. D.I. 659 at Section III.A.1, 2. Ariosa contends that pre-verdict supplemental damages are improper, D.I. 685 at II.B, II.D, and the parties' positions are fully briefed. Ariosa does not agree that it should be re-briefed, as the facts have not changed and Illumina has not identified any change in the law.

**2.     Post-Verdict Royalty**

   **A.     Plaintiffs' Position**

Because the Court denied Illumina's permanent injunction motion, Illumina plans to seek a royalty for Ariosa's post-verdict infringement from the verdict date forward. Setting that rate will include a host of factors about the post-verdict circumstances. As this Court recognized in *Boston Scientific Corp. v. Johnson & Johnson*, in "light of the 'fundamental difference' between 'a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement,'" the post-verdict royalty analysis should take into account the change in the parties' bargaining power after liability has been determined. No. 3:02-cv-0790-SI, 2008 WL 5054955, *3 (N.D. Cal. Nov. 25, 2008) (*quoting Amado v. Microsoft Corp.,* 517 F.3d 1353, 1361-62 (Fed. Cir. 2008)).

Ariosa appears to argue that Illumina should be bound to the royalty rate based on the verdict (which rate the parties' dispute). But the royalty for post-verdict infringement is based on the circumstances *post*-verdict that are fundamentally different and normally higher than the royalty for pre-verdict sales. *XY, LLC v. Trans Ova Genetics, L.C.,* 890 F.3d 1282, 1297 (Fed. Cir. 2018) ("[P]ost-verdict factors should drive the ongoing royalty rate calculation in determining whether such a rate should be different from the jury's rate."); *ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*, 827 F. Supp.2d 641 (E.D. Va. 2011), *aff'd in relevant part, vacated in part on other grounds*, 694 F.3d 1312, 1342 (Fed. Cir. 2012) ("Verizon has been adjudicated to infringe and the patent has been held not invalid after a substantial challenge by Verizon…The district court is correct; there has been a substantial shift in the bargaining position of the parties.") (internal citations omitted); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,* 876 F.3d 1350, 1370 (Fed. Cir. 2017) ("The district court weighed the relevant Georgia-Pacific factors and determined that Arctic Cat is entitled to an ongoing royalty amount higher than the jury rate."); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.,* 670 F.3d 1171, 1192-93 (Fed. Cir. 2012) (affirming district court's award of a higher ongoing royalty rate than the reasonable royalty rate set by the jury). Any argument from Ariosa that the royalty should be the same should be rejected.

1    Here, Ariosa convinced this Court that a permanent injunction was improper because the
2    payments made by Illumina's licensees that compete with Ariosa meant that Illumina's losses
3    from Ariosa's Harmony sales were straightforward to calculate. Dkt. No. 705 at 59:13-17 (As "in
4    *ActiveVideo*, where the plaintiff received a licensing fee per subscriber, here Illumina receives
5    payment from every company that obtains a license to its patent pool.  In the same way that
6    Verizon's use of infringing technology to obtain a subscriber would cause quantifiable harm to
7    ActiveVideo, Ariosa's use of Harmony V2 causes quantifiable harm to Illumina by taking away a
8    potential licensee.").

9    On appeal, Ariosa insisted that this Court was correct in concluding that Illumina's lost
10   revenue from its licensees was readily calculable and would compensate it for post-verdict sales of
11   Harmony. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 18-2198, 2019 WL 2462735, *64
12   (Fed. Cir. Feb. 28, 2019) (Ariosa's App. Br.) ("Accordingly, as the district court held, monetary
13   damages sufficed to remedy whatever lost license fees Illumina might suffer due to Ariosa's
14   Harmony V2 sales.");  *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 18-2198, Dkt. No.
15   101, at 6 (Fed. Cir. July 22, 2020) (Ariosa's Resp. to Petition For Rehearing) (explaining that this
16   Court "further found that 'Ariosa's use of Harmony V2 causes quantifiable harm to Illumina by
17   taking away' Illumina's revenue from its licensees; accordingly, it concluded that the 'harm to
18   Illumina is not irreparable.'"); *id.* at 15 ("The district court found that Illumina did not identify any
19   harm from Ariosa's sales other than potentially losing fees that Illumina's licensees might have
20   otherwise paid it.  Such fees are quantifiable.").

21   The Federal Circuit agreed that Illumina's lost revenue from its licensees was the
22   quantifiable recovery to which Illumina was entitled. *Verinata Health, Inc. v. Ariosa Diagnostics,*
23   *Inc.,* No. 2018-2198 at *20-21 (Fed. Cir. Apr. 24, 2020) ("The district court concluded that
24   defendants' losses would be quantifiable based at least on licensing fees per lost subscriber" and
25   "Illumina reasserts that the district court erred in its reliance on *ActiveVideo* and its reasoning that,
26   where licensees compete with the infringer, royalties are adequate forms of compensation. *See*
27   *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,* No. 2018-2198, J.A. 60 (citing *ActiveVideo*, 694
28

1  F.3d at 1338). As noted above, the district court's reliance on ActiveVideo does not constitute an
2  abuse of discretion.").

3  In Illumina's original motion for relief based upon Ariosa's post-verdict infringement for
4  what it anticipated was the time until a permanent injunction was entered, Illumina did ***not*** seek a
5  particular royalty amount per unit for post-verdict sales. *See* Dkt. No. 659-8 at 8:6-18 (requesting
6  "an amount to be later determined subject to an accounting"). Ariosa's argument to the contrary
7  is baseless. Illumina never identifies a specific royalty rate in its motion for ***post-***verdict sales.
8  Moreover, Ariosa's statement that there is no basis for an updated motion for post-verdict royalties
9  to be filed after a remand is likewise baseless. Illumina brought a motion for relief for the on-
10 going infringement post-verdict and the Federal Circuit held that this Court "deferred" the issue
11 and made clear that in the first instance this Court should consider recovery for supplemental
12 damages and on accounting on remand. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,* No.
13 2018-2198 at *20-21 (Fed. Cir. Apr. 24, 2020) ("Regarding Illumina's request for supplemental
14 damages, and an accounting, Illumina argues that the district court's order deferring its request
15 until after the resolution of this appeal created confusion regarding whether it is entitled to
16 supplemental damages and an accounting. We decline to decide, in the first instance, whether
17 Illumina is entitled to the supplemental damages it seeks."); *see also Apple, Inc. v. Samsung Elecs.*
18 *Co.*, No. 5:12–CV–00630–LHK, 2014 WL 6687122, *4 (N.D. Cal. Nov. 25, 2014) (refusing to
19 find the right to on-going royalties waived).

20 Regardless, given the basis for this Court's denial of a permanent injunction and Ariosa's
21 arguments that Illumina's losses for post-verdict sales could be quantified based on Illumina's lost
22 revenue from its licensees, such lost revenue is the proper measure for the royalty for post-verdict
23 sales. Because of this, Illumina plans to file an updated motion for a royalty for post-verdict sales
24 by October 2. Illumina proposes that Ariosa respond by October 23 with a reply by November 6.

25 Below, Ariosa asserts that the Court cannot exercise jurisdiction over such a motion
26 because it would reflect a request for a "new remedy" beyond what Illumina requested in its
27 original supplemental damages motion. According to Ariosa, Illumina's original motion only
28

sought an "accounting," which Ariosa says is merely the tabulation of a new "number of units." Ariosa is wrong on multiple levels.

First, the Court undoubtedly retains jurisdiction to conduct new proceedings regarding an ongoing royalty rate following denial of a request for injunctive relief.  *See, e.g.*, *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) (upon affirming the denial of a post-verdict injunction request, remanding and instructing that if the parties' royalty negotiations fail, "the district court should step in and assist or calculate on its own the appropriate rate").  Second, the term "accounting" does not merely refer to a rote tabulation of a "number of units."  In the context of patent law damages, "accounting" is a broad term that may even encompass a new trial on damages.  *See, e.g.*, *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F. 3d 1305, 1309 (Fed. Cir. 2013) ("Bosch also argues that whatever an accounting is, it cannot be a trial on damages. Again, we disagree. We find that neither the text nor the history of the statute supports this narrow interpretation. Rather, an 'accounting' within the meaning of § 1292(c)(2) may include a trial on damages.").

If anything, Illumina's request for "accounting" establishes that it was not merely seeking a new tabulation of units, but rather a proceeding sufficient to establish a fair royalty rate in view of its enhanced bargaining position.  Below, Ariosa asserts that "Illumina's motion did not identify or suggest any rate other than $22.83 per unit" determined by the jury.  But the reality is that Illumina's supplemental damages motion did not mention any particular royalty rate, as the Court can confirm for itself.  *See* D.I. 659-8 at 3-4.  Beyond that, as explained above, Illumina's motion sought supplemental damages in an amount to be later determined and this Court deferred that issue for remand.  Ariosa's argument is procedural gamesmanship that seeks an undue windfall of cut-rate infringement.

**B.     Ariosa's Position**

Illumina indicates its intention to file a motion for post-verdict damages based on "Illumina's lost revenues from its licensees." In addition to its lack of substantive merit, this proposed motion is procedurally impermissible. Illumina identifies no basis for this Court to exercise jurisdiction over a motion for a new remedy that Illumina did not seek before entry of

JOINT FURTHER CASE MANAGEMENT
CONFERENCE STATEMENT                                        5

LEAD CASE NO. 3:12-CV-05501-SI
CASE NO. 3:14-CV-01921-SI
CASE NO. 3:15-CV-02216-SI

final judgment, and none exists. The deadlines for bringing post-trial motions under Rules 59 and 60 have passed.

Illumina's first cited case, *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:12–CV–00630–LHK, 2014 WL 6687122, *4 (N.D. Cal. Nov. 25, 2014), provides no support to Illumina's position including because the motion in that case was filed ***before*** judgment and appeal and "only one week after the Court denied a permanent injunction." *Id*. at *5. Illumina's second cited case, *Telcordia*, similarly does not involve a new remedy requested after judgment and appeal. Contrary to Illumina's suggestion that the ongoing royalty issue in *Telcordia* first arose on remand, in fact the plaintiff had timely filed in the district court a post-trial motion for ongoing royalties (in the alternative to its motion for injunction), identifying the specific ongoing rate that it sought and its basis. *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 734 (D. Del. 2009), Civ. Action No. 04-876-GMS, D.I. 383 at 11 (public version of the plaintiff's motion with the specific royalty rate (redacted) and its basis). As Illumina implicitly acknowledges, there are no cases in which a party was permitted to request after appeal a new remedy after failing to request it before judgment. The Federal Rules do not permit that.

Illumina's phrasing (that it seeks to file an "updated motion") aside, let there be no confusion: Illumina never filed any motion seeking lost revenues from its licensees. The only motion filed regarding post-verdict damages was Illumina's motion for ***supplemental damages***, which was filed before judgment and deferred pending appeal. That motion sought royalties at the rate found by the jury (which Illumina contends is $22.83 per unit). D.I. 659; D.I. 659-10.[1]

There is no credible basis for Illumina's suggestion that the motion contemplates a higher rate than $22.83 per unit for the post-verdict time period. Illumina points to the phrase "an amount to be later determined subject to an accounting," but that merely acknowledges that an accounting post-appeal is needed (i.e., to determine the number of units). Illumina's motion did not identify or suggest any rate other than $22.83 per unit. Nor did Illumina propose any approach other than

---

[1] Ariosa disagrees that this is the rate awarded by the jury and explained in its opposition that the per unit rate awarded by the jury is no higher than $18.74. D.I. 685 at 7. That dispute remains for the Court's resolution.

1 using the jury's royalty rate. Further, the parties specifically referred to the post-verdict time
2 period in briefing whether $22.83 per unit overstates the jury's royalty rate. *See, e.g.,* D.I. 685
3 (Ariosa Opp.) at 6 ("Plaintiffs' Post-Verdict Supplemental Damages Rate Is Overstated"); D.I.
4 (Illumina Reply) at 9 ("The Post-Verdict Supplemental Damages Rate is Appropriate"). The
5 parties also both cited cases recognizing that supplemental damages, as opposed to other potential
6 post-trial remedies, must be calculated based on the jury's effective rate. *See, e.g., Presidio*
7 *Components, Inc. v. Am. Tech. Ceramics Corp.*, 2013 WL 4068833, at *10 (S.D. Cal. Aug. 12,
8 2013) (quoting *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*,, 2009 WL
9 920300, at *3 (D. Ariz.)) ("Supplemental damages are calculated consistent with the damages
10 awarded in the jury verdict.") (cited by Ariosa); *ActiveVideo Networks, Inc. v. Verizon Comm'ns,*
11 *Inc.,* Civ. A. No. 10-cv-00248, 2011 WL 4899922, at *1 (E.D. Va. Oct. 14, 2011) (Supplemental
12 damages are "calculated in accordance with the damages awarded in the jury verdict.") (cited by
13 Illumina, D.I. 659 at 4).

14 Illumina's suggestion that the Court's denial of its motion for injunction somehow opened
15 up new remedies is unavailing.[2] After the injunction was denied, Illumina did not seek any new
16 remedies. To the contrary, Illumina reiterated to the Federal Circuit that its desired remedy was its
17 pending motion for supplemental damages. *See, e.g.,* Illumina Appellants' Br. at 46 ("Illumina is
18 entitled to supplemental damages for infringing Harmony test sales the jury did not consider at
19 trial… through the date Roche[3] ceases infringement."). In any event, Illumina's suggestion that
20 post-verdict royalties are typically higher than the jury's rate is incorrect. Many plaintiffs (as
21 Illumina did here) simply seek the jury's rate. And even when a plaintiff instead timely reopens
22 the question of the rate as part of an equitable motion for ongoing royalty (which Illumina did not

---

[2] Illumina statement also mischaracterizes the basis on which Ariosa opposed the injunction and mistakenly suggests that the Court or the Federal Circuit found Illumina entitled to something more than a reasonable royalty. Rather, Ariosa argued, and the Court found, that based on numerous factors including Illumina's express willingness to license Ariosa and the fact that the parties are not direct competitors, "royalties are adequate forms of compensation." D.I. 705 at 60.

[3] Illumina's briefs erroneously refer to Ariosa as "Roche."

do), the analysis starts from the rate found by the jury and courts often ultimately apply the same rate, especially where no injunction is entered and the jury did not find willfulness.

Here, moreover, Illumina's description of its theory as based on "lost revenue from its licensees," sounds very similar to the lost profits theory that Illumina presented to the jury and the jury rejected. If so, in addition to the procedural and jurisdiction barriers discussed above, it also would be barred by the verdict and by res judicata/collateral estoppel.

### 3. Briefing and Hearing Schedules For Any Additional Filings

To the extent there is any additional briefing or motion practice, the parties will need to meet and confer and determine a briefing schedule. Counsel for Ariosa has a trial scheduled for early November, and as such respectfully requests that the briefing be completed in October and that the hearing take place after November.

### 4. Other Issues

#### A. Plaintiffs' Position

**Alleged Design Around**

The evening before this submission was due, Ariosa[4] revealed that it has modified the infringing Harmony protocol to again try to design around the '794 Patent and supposedly implemented it this week. Ariosa's disclosure was cryptic and unsupported by expert or legal analysis. Based on what Illumina has seen so far, the Harmony protocol still infringes for the same reasons. Illumina has requested discovery from Ariosa on this issue. So far it has received one document unaccompanied by attorney explanation, a legal opinion or expert analysis. Of course, Ariosa purported to redesign the Harmony protocol to avoid the '794 Patent and the jury found it nevertheless infringed.

Because Ariosa did not provide any notice of this until last evening, the parties should continue to meet and confer regarding the appropriate discovery. Oddly, the parties had been discussing the issues remaining for weeks and discussed by telephone on-going royalties without

---

[4] Ariosa is really Roche because Roche has integrated the infringing Harmony business into its organization. A simple internet search for Roche Harmony will confirm that. That is why Roche paid the $27 million verdict. Because Roche is bound to the outcome, its insistence on still using the name Ariosa is irrelevant. See Dkt. No. 375, ¶ 3.

Ariosa revealing that it had implemented a design around, Ariosa has never explained why it waited until last evening to disclose this, but presumably it had some reason.

**B.     Ariosa's Position**

Plaintiffs' description of the meet-and-confer process and Ariosa's cessation of the allegedly infringing method is inaccurate. First, the parties did not engage in any live meet-and-confer about any issues post-appeal or have any other substantive discussions until a short call two days before this statement was due. Ariosa promptly identified its design-around that was implemented in mid-August and produced the new protocol. Illumina has not yet provided Ariosa with its substantive position regarding the design-around, but Ariosa does not currently anticipate that any involvement from the Court will be appropriate or necessary.

Respectfully submitted,

Dated: September 4, 2020          WEIL, GOTSHAL & MANGES LLP

By: */s/ Edward R. Reines*
        EDWARD R. REINES

ATTORNEY FOR PLAINTIFFS AND
COUNTERCLAIM-DEFENDANTS
VERINATA HEALTH, INC., *ET AL.*

Dated: September 4, 2020          IRELL & MANELLA LLP

By: */s/ Lisa S. Glasser*
        LISA S. GLASSER

ATTORNEY FOR DEFENDANT AND
COUNTERCLAIM-PLAINTIFF
ARIOSA DIAGNOSTICS, INC.

1  I, Edward R. Reines, am the ECF user whose identification and password are being used to
2  file this Joint Further Case Management Conference Statement.  In compliance with N.D. Cal.
3  Civil L.R. 5-1(i)(3), I hereby attest that Lisa S. Glasser has concurred in this filing.

4

5  Dated: September 4, 2020                         By: */s/ Edward R. Reines*
                                                         EDWARD R. REINES
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28